Adam M. Apton (SBN 316506)
**LEVI & KORSINSKY, LLP**
aapton@zlk.com
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Tel: 415-373-1671

*Attorneys for Plaintiff Myo Thant*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYO THANT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RAIN ONCOLOGY INC., AVANISH VELLANKI, and RICHARD BRYCE,<br><br>Defendants. | Case No.  3:23-cv-03518<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>Demand for Jury Trial</u> |

Plaintiff Dr. Myo Thant ("Plaintiff") alleges the following upon information and belief, except as to those allegations concerning himself, which are alleged upon personal knowledge. Plaintiff's information and belief is based on the investigation of his undersigned counsel, which included, among other things, review and analysis of: (a) public statements made by or on behalf of Rain Oncology Inc. ("Rain" or the "Company"), including public filings with the U.S. Securities and Exchange Commission ("SEC"); (b) press releases; (c) reports of securities and financial analysts; (d) news articles; and (e) industry reports. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE CLAIM**

1.      Plaintiff brings this action pursuant to of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78a, et seq., and Rule 10b-5 promulgated thereunder, on behalf of

himself and all persons similarly situated who purchased or otherwise acquired Rain securities between July 20, 2021 to May 19, 2023, inclusive (the "Class Period").

2.      Rain's lead drug candidate was milademetan, a drug designed to treat dedifferentiated liposarcoma ("DD LPS"). Rain first licensed milademetan from Daiichi Sankyo Company, Limited, in September 2020 based on positive results from a Phase 1 clinical trial. Instead of conducting additional trials to test the safety and dosing of milademetan, Rain proceeded straight to a Phase 3 clinical trial. Rain referred to the Phase 3 trial as the "MANTRA" trial.

3.      Rain commenced the MANTRA trial in July 2021. For nearly two years, Rain provided the market with false and misleading information about the trial's design quality and approval risks for milademetan related to its clinical development strategy. Then, on Monday, May 22, 2023, Defendants announced topline data from the MANTRA trial, revealing that milademetan had failed to show statistical significance on the trial's primary endpoint and that the Company was abandoning further pursuit of milademetan for treating DD LPS.

4.      During the Class Period, Plaintiff and other similarly situated investors bought Rain securities at artificially inflated prices due to Defendants' false and/or materially misleading statements. When the truth concerning the MANTRA trial emerged, Rain's stock price decreased resulting in significant losses to investors. This action seeks to compensate those investors and recover the damages they sustained because of Defendants' fraudulent conduct.

**JURISDICTION AND VENUE**

5.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

6.      This Court has subject matter jurisdiction over this action under Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

7.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly and/or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

8.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in this District.

**PARTIES**

9.      Plaintiff purchased Rain securities at artificially inflated prices during the Class Period and was damaged upon the revelation of Defendants' fraud. Plaintiff's certification evidencing his transaction(s) in Rain is attached hereto.

10.     Defendant Rain was founded in 2017 and is incorporated in the State of Delaware. Its principal executive offices are located at 8000 Jarvis Avenue, Suite 204, in Newark, California 94560. During the Class Period, Rain's securities traded in an efficient market on the Nasdaq under the symbol "RAIN".

11.     Defendant Avanish Vellanki ("Vellanki") is the Company's Chairman and Chief Executive Officer. Vellanki has 20 years of experience across the healthcare and investment banking sectors. After his start at Bear, Stearns & Co. in 2004 in equity research, Vellanki transitioned to Global Healthcare Investment Banking at Citigroup where he focused on large-cap global biopharmaceutical companies. He subsequently moved to the healthcare industry, joining Proteolix in 2009 prior to its acquisition by Onyx Pharmaceuticals, where he helped develop carfilzomib (Kyprolis(R)) for patients with multiple myeloma. Prior to founding Rain, Avanish was senior vice president and chief business officer at Aptose Biosciences.

12.     Defendant Richard Bryce, M.B.Ch.B. ("Bryce"), is the Company's Executive Vice President and Chief Medical Officer. Prior to joining Rain in April 2021, Dr. Bryce served as Chief Medical and Scientific Officer at Puma Biotechnology, Inc., a biopharmaceutical company, from June 2012 to April 2021. Prior to that, he had served as the Executive Vice President of Medical Affairs at clinical research organizations Ergomed PLC and ICON plc (as Senior Director of Medical Affairs and Oncology). He also served as Senior Medical Director of Clinical Science at biopharmaceutical company Onyx Pharmaceuticals, Inc. Earlier in his career, Dr. Bryce held a variety of senior clinical and medical roles at F. Hoffmann-La Roche AG (OTCMKTS: RHHBY), a pharmaceutical company, ILEX Oncology, Inc., a biopharmaceutical company, Scotia

Pharmaceuticals Ltd., a pharmaceutical company, and Servier Laboratories, a pharmaceutical company.

13.     Defendants Vellanki and Bryce are collectively referred to herein as the "Individual Defendants."

14.     Each of the Individual Defendants:

      (a)     directly participated in the management of Rain;

      (b)     was directly involved in the day-to-day operations of Rain at the highest levels;

      (c)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

      (d)     was directly or indirectly involved in the oversight or implementation of Rain's business and/or finances, medical, or scientific research;

      (e)     was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning Rain; and/or

      (f)     approved or ratified these statements in violation of the federal securities laws.

15.     Because of the Individual Defendants' positions within Rain, they had access to undisclosed information about the true nature of and risks inherent in the Company's Phase 3 MANTRA study.

16.     As officers of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's scientific study evaluating the use of milademetan and to correct any previously-issued statements that had become materially misleading or untrue.

17.     The Individual Defendants, because of their positions with Rain, possessed the power and authority to control the contents of Rain's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*,

the market. Each Individual Defendant had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

18.     Each of the Individual Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Rain's securities by disseminating materially false and misleading statements and/or concealing material adverse facts. This scheme caused Plaintiff and other shareholders to purchase Rain's securities at artificially inflated prices.

## FACTUAL BACKGROUND

19.     Rain is a biopharmaceutical company that develops oncology therapeutics. Rain's lead product candidate, milademetan, is an oral, small molecule inhibitor of the MDM2-p53 complex that reactivates p53. Milademetan (also known as RAIN-32) is an oral small molecule inhibitor of the MDM2-p53 complex that reactivates p53.

20.     Rain first in-licensed milademetan in September 2020 based on the results of a Phase 1 clinical trial. These results, according to RAIN, demonstrated meaningful antitumor activity in an MDM2-amplified subtype of liposarcoma (LPS) and other solid tumors. Rain further represented that the Phase 1 trial results "validated a rationally-designed dosing schedule that ha[d] been shown to mitigate safety concerns and widen the therapeutic window of MDM2 inhibition, unlocking the potential for RAIN-32 in a broad range of MDM2-dependent cancers." Based on the Phase 1 data, Rain skipped additional clinical testing and proceeded straight to a pivotal Phase 3 trial (*i.e.*, the MANTRA trial), meaning that it would use the results of the Phase 3 trial to support any New Drug Application filed on behalf of milademetan.

21.     On July 20, 2021, Rain commenced the MANTRA trial. Over the course of the following two years, Defendants repeatedly emphasized the benefits of proceeding directly to a Phase 3 trial in a relatively short amount of time after licensing milademetan. For example, in its press release announcing the initiation of the MANTRA trial, Defendants congratulated themselves for having "advanced milademetan into a pivotal study less than 12 months after acquiring the program."

22.     Contrary to these statements during the Class Period, Rain's clinical development strategy was in fact highly risky and ultimately proved harmful to the Company. On May 22, 2023, the Company announced that milademetan failed to meet its primary endpoint of progression free survival in the MANTRA study. Moreover, the Company announced adverse event findings that, according to analysts, indicated that the dosing schedule had not been optimized prior to commencing the study.

23.     In response to the announcement, Rain's stock price plummeted as investors and analysts reevaluated the Company's future testing and drug development. Throughout the Class Period, Rain's stock price slowly lost value, but when the truth finally was revealed, the bottom fell out. In the span of just a day, Rain's stock price substantially dropped from $9.93 per share to $1.22 per share, eliminating approximately $316 million in market capitalization in one day.

## SUBSTANTIVE ALLEGATIONS

**A.    *False and/or Materially Misleading Statements***

*July 20, 2021*

24.     On July 20, 2021, the Company issued a press release in which it announced the start of its Phase 3 MANTRA clinical study. The title of the press release is is: "Rain therapeutics Initiates Phase 3 MANTRA Clinical Trial of Milademetan for De-differentiated Liposarcoma and Provides Patient Update from Prior Clinical Program."   In the announcement, the Company highlighted the fact that instead of subjecting the drug to a phase 2 trial, it would be proceeding directly to a Phase 3 trial. As Rain explained in its SEC filings and elsewhere:

> The MANTRA trial, a randomized, multicenter, open-label, Phase 3
> registration study, was designed to evaluate the safety and efficacy
> of milademetan compared to trabectedin, a current standard of care,

in patients with unresectable or metastatic DD LPS with or without a WD LPS component that has progressed on one or more prior systemic therapies, including at least one anthracycline-based therapy. 175 patients were enrolled and randomized in a 1:1 ratio to receive milademetan or trabectedin. The primary objective of the trial was to compare PFS by blinded independent central review between the milademetan treatment arm and the trabectedin control arm. Secondary endpoints included overall survival, PFS by investigator assessment, objective response rate, duration of response, disease control rate, safety and patient reported outcomes.

25.     Commenting on the announcement, Dr. Bryce said: "The start of our Phase 3 MANTRA study evaluating milademetan marks an important step forward in addressing a high unmet need for patients with DD LPS [and that the Company was] proud to have advanced milademetan into a pivotal study less than 12 months after acquiring the program, and believe it has the potential to be the best-in-class MDM2 inhibitor."

*August 10, 2021*

26.     On August 10, 2021, Rain released its financial results, key developments, business operations, and upcoming milestones for the quarter ended June 30, 2021, by submitting them in Form 10-Q with the SEC. In a press release issued simultaneously with the Form 10-Q (and filed with the SEC with an 8-K), the Company highlighted some of its key developments, including:

> First Patient Dosed in Phase 3 MANTRA Clinical Trial of Milademetan (RAIN-32) for DD LPS. In July 2021, Rain announced that the first patient was randomized in the multicenter, open-label, Phase 3 registrational trial (MANTRA) evaluating milademetan, an oral mouse double minute 2 ("MDM2") inhibitor, for the treatment of DD LPS. Rain anticipates data from this trial in 2023.

27.     Vellanki summarized the Company's the quarterly results as: "Rain has made strong progress in the second quarter and six months ended 2021," highlighting that "Patients with dedifferentiated liposarcoma are in desperate need of new therapies, and we are proud to have been able to dose the first patient in a pivotal Phase 3 trial in under 12 months from acquiring the program.

*March 3, 2022*

28.     On March 3, 2022, Rain released its financial results, key developments, business operations, and upcoming milestones for the quarter ended December 31 and full year 2021, by submitting them in Form 10-K with the SEC. In a press release issued simultaneously with the Form 10-K (and filed with the SEC with an 8-K), the Company listed some of its milestones successfully reached. For instance, Vellanki noted that in 2021:

> Rain ha[d] achieved a number of important clinical milestones for milademetan including commencing two of the four planned trials in MDM2-dependent cancers. Rain dosed the first patient in the third quarter of last year and exceeded year-end 2021 targets for site activations for the pivotal, Phase 3 MANTRA trial in patients with liposarcoma.

29.     Key developments continued to include highlights that the Phase 3 MANTRA was enrolling on schedule and that "Global site activations exceeded the target for year-end 2021, and all sites anticipated to be activated by the end of the first quarter of 2022. Enrollment in MANTRA trial on schedule."

30.     Vellanki summarized the Company's the quarterly results as: "Rain has made strong progress in the second quarter and six months ended 2021," highlighting that "Patients with dedifferentiated liposarcoma are in desperate need of new therapies, and we are proud to have been able to dose the first patient in a pivotal Phase 3 trial in under 12 months from acquiring the program."

*May 4, 2022*

31.     On May 4, 2022, Rain released its financial results, key developments, business operations, and upcoming milestones for the quarter ended March 31, 2022, by submitting them in Form 10-Q with the SEC. In a press release issued simultaneously with the Form 10-Q (and filed with the SEC with an 8-K), the Company updated its forecasts relating to Phase 3 of the MANTRA study, noting that enrollment was anticipated to be completed by the end of 2022, earlier than expected, and, thus, "top-line data were also anticipated to be earlier than previously guide, now in the first half of 2023."

32.     Vellanki characterized these developments very positively, noting that:

> Rain continues to make strong progress in its ongoing milademetan trials, with topline data from the Phase 3 MANTRA liposarcoma trial now anticipated in the first half of 2023. With a cash runway into the first half of 2024, we expect the milademetan clinical program to be well-funded. Additionally, we continue to anticipate interim data for the MANTRA-2 basket trial in MDM2-amplified advanced cancers in the fourth quarter of this year, and reporting patient responses, duration of response and safety in approximately 10 evaluable patients. Based upon our enrollment progress for MANTRA and MANTRA-2 thus far, we expect to commence the MANTRA-3 and MANTRA-4 studies in the fourth quarter of this year.

*August 4, 2022*

33.     On August 4, 2022, Rain issued a press release announcing that enrollment in Phase 3 MANTRA Trial for Milademetan had been completed. As the press release notes, the trial targeted an enrollment of 160 patients and completed enrollment five months ahead of schedule with 175 patients. Vellanki said that the Company was "excited to have achieved a milestone in our milademetan clinical program. [They believed] the rapid enrollment in MANTRA reflects a patient population in LPS that may be larger than expected, and that exhibits a significant unmet medical need."

34.     Defendant Bryce continued, "The rapid enrollment five months ahead of schedule, across 70 international sites, also reflects the ability of the Rain team to expedite milademetan development for patients in significant need."

35.     That same day, Rain released its financial results, key developments, business operations, and upcoming milestones for the quarter ended June 30, 2022, by submitting them in Form 10-Q with the SEC. In a press release issued simultaneously with the Form 10-Q (and filed with the SEC with an 8-K), the Company highlighted key developments it had announced in the separate press release noted above, including that enrollment in Phase 3 MANTRA Trial for Milademetan had been completed ahead of schedule.

36.     Defendants' statements referenced in ¶¶ 24 – 35 constituted violations of the securities laws because the statements were false and/or misleading as well as failed to disclose

material adverse facts about one of the Company's pivotal scientific studies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company concealed risks inherent in the design of its Phase 3 MANTRA study particularly with regard to proceeding directly to Phase 3 from Phase 1; and, (ii) as a result, the Company's statements about the trial and the likelihood of FDA approval were materially misleading during the Class Period.

**B.**     ***The Truth Emerges***

<u>*May 22, 2023*</u>

37.     On May 22, 2023, Rain presented the long-anticipated results of its Phase 3 MANTRA trial. In its press release, Rain admitted that:

> [t]he trial, evaluating the efficacy, safety, and tolerability of milademetan in patients with dedifferentiated (DD) liposarcoma (LPS), ***did not meet its primary endpoint*** of progression free survival (PFS) by blinded independent central review compared to the standard of care, trabectedin.
>
> The median PFS for milademetan was 3.6 months vs 2.2 months for trabectedin, with a hazard ratio of 0.89, p=0.53. The most common treatment emergent adverse events (TEAEs) in the milademetan arm included nausea, thrombocytopenia, anemia, vomiting and neutropenia. The most common Grade 3/4 TEAEs were thrombocytopenia (39.5%), neutropenia (25.5%) and anemia (18.6%). Dose reductions in the milademetan arm were 44.2% vs 29.1% in the trabectedin arm. Discontinuation in the milademetan arm due to AEs were 11.6% vs 19.0% for trabectedin. Based upon these topline data, Rain does not expect to pursue further development of milademetan in DD LPS. Rain hopes to present the MANTRA data in an upcoming medical conference.

38.     Rain Co-founder and CEO Vellanki characterized Rain's reaction to the study's results by admitting that they:

> [were] very disappointed in the outcome of the MANTRA trial, as the results did not closely mirror prior clinical results in patients with DD LPS. We are truly saddened we will not likely be able to offer patients new treatment options for this challenging disease. However, the quality and robustness of the global MANTRA trial reflects an unambiguous data set. … Based on the MANTRA topline results, we will also re-evaluate the path forward for milademetan.

39.     Analysts quickly understood that the problems underlying the clinical trial's design affected the Phase 3 MANTRA study's topline data readout. Later in the afternoon of May 22, Citi Research explained:

> The Ph3 MANTRA failure has unfortunately disproven the milademetan hypothesis in DD LPS, highlighting the risks of proceeding directly to Ph3 even when equipped with an unusually compelling clinical hypothesis anchored on Ph1 data. We had expected degradation of PFS, however the high ~50% erosion (7.4 months Ph1 to 3.6 months Ph3) was surprising given the trabectedin control performed directly in line with expectations (2.2 months) and we felt the greater PFS risk was inflation of control. Enrollment of patients with more aggressive disease vs. Ph1 may have contributed to the milademetan underperformance. Gr3/4 hematologic AEs (thrombocytopenia/anemia/neutropenia) were much greater than expected (39.5%/25.5%/18.6% vs. 15%/0%/5% in Ph1), which raises questions about the robustness of the dose/schedule optimization established in Ph1 to manage hematologic AEs.

40.     Oppenheimer's Equity Research reported that they were downgrading RAIN shares to "Perform" from "Outperform" and concluded that the take-away from Rain's report included that the

- The Pivotal readout was negative and held other surprises;

- The Fate of milademetan in DD LPS was definitive and the Company was not anticipated to be conducting its MANTRA 4 study in CDKN2A amplified tumors;

- Given Rain's cash assets, the Company's strategic options included M&A activity even though the market had basically written off the Company; and

- Oppenheimer had rescinded its price target and revised its model to remove milademetan value for DD LPS tumors.

41.     When the smoke cleared at the end of the trading day, Rain's stock price had dropped from Friday, May 19th's closing price of $9.93 to Monday, May 22nd's closing price of $1.22—*a staggering loss of $8.71 per share representing nearly 88% of its value*. The volume of shares traded that day was more than 100 times as high as the daily average volume during the Class Period.

**C.** *Loss Causation*

42.     The market for Rain common stock was open, well-developed, and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Rain stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Rain stock relying upon the integrity of the market of Rain, and market information related to the Company and have been damaged thereby.

43.     During the Class Period, Defendants named in this Action materially misled the investing public, thereby inflating the price of Rain stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make their own statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Rain's business, operations, and prospects as alleged herein.

44.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Rain's clinical prospects. These material misstatements and/or omissions had the cause and effect of creating and/or maintaining in the market an unrealistically positive assessment of the Company and its operations, thus causing the Company's stock to be overvalued and artificially inflated at all relevant times. The materially false and/or misleading statements made by Defendants named in this Action during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

45.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that caused the price of Rain stock to be artificially inflated by failing to disclose and/or misrepresenting the adverse facts detailed herein. As Defendants' misrepresentations and fraudulent conduct were gradually disclosed and became

apparent to the market, the artificial inflation in the price of Rain's stock was removed, and the price of Rain stock fell.

46.     As a result of their purchases of Rain stock during the Class Period at artificially inflated prices, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

47.     The timing and magnitude of the price decline in Rain stock negate any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Rain Defendants' fraudulent conduct.

**D.     *Presumption Of Reliance; Fraud-On-The-Market***

48.     At all relevant times, the market for Rain stock was an efficient market for the following reasons:

> (a)     Rain stock met the requirements for listing, and was listed and actively traded on the Nasdaq, a highly efficient and automated market;
>
> (b)     As a regulated issuer, Rain filed periodic public reports with the SEC and the Nasdaq;
>
> (c)     Rain communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and
>
> (d)     During the Class Period, on average, millions of Rain shares were traded on a weekly basis. On news days, the Company's trading volume increased into the millions, reflecting an active trading market for Rain stock and investors' expectations being impounded into the stock price.

49.     As a result of the foregoing, the market for Rain's securities promptly digested current information regarding Rain from all publicly available sources and reflected such information in Rain's stock price. Under these circumstances, all purchasers of Rain securities

during the Class Period suffered similar injury through their purchase of Rain securities at artificially inflated prices, and a presumption of reliance applies.

50.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

**E.     *No Safe Harbor; Inapplicability of Bespeaks Caution Doctrine***

51.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

52.     To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

53.     Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Rain who knew that the "forward-looking statement" was false. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.

54.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Class Action Complaint. The statements alleged to be false and misleading herein all relate to then- existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when

made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Rain who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

55.    Plaintiff brings this action on behalf of all individuals and entities who purchased acquired Rain securities on the public market during the Class Period, and were damaged, excluding Rain, the Individual Defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the Defendants have or had a controlling interest (the "Class").

56.    The Class members are so numerous that joinder of all members is impracticable. Throughout the Class Period, shares of Rain common stock were actively traded on the Nasdaq. While the exact number of Class members is unknown at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other Class members may be identified from records maintained by Rain or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of the filings of its most recent quarterly report—May 11, 2023, Rain had over 36 million shares of common stock outstanding. Upon information and belief, these shares are held by thousands of individuals located throughout the entire world. Joinder would be highly impracticable.

57.    Plaintiff's claims are typical of the claims of the Class members as all Class members are similarly affected by the Defendants' respective wrongful conduct in violation of the federal laws complained of herein.

58. Plaintiff has and will continue to fairly and adequately protect the interests of the Class members and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

59. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by the Defendants' respective acts as alleged herein;

(b) whether the Defendants acted knowingly or with deliberate recklessness in issuing false and misleading statements concerning the results of Rain's Phase 3 MANTRA study;

(c) whether the price of Rain's securities during the Class Period was artificially inflated because of the Defendants' conduct complained of herein; and

(d) whether the Class members have sustained damages and, if so, what is the proper measure of damages.

60. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### Violation of Section 10(b) and Rule 10b-5 Against All Defendants

61. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and

other Class members to purchase Rain securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

63.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of Rain securities in an effort to maintain artificially high market prices for Rain securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

64.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's Phase 3 MANTRA study results as specified herein.

65.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Rain's value, performance, and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Rain's Phase 3 MANTRA study results of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Rain securities during the Class Period.

66.     Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at Rain during the Class Period and members of Rain's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of Rain, was privy to and participated in the creation, development and

17

reporting of Rain's SEC filings and public statements concerning Rain's Phase 3 MANTRA study results; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendants and was advised of and had access to other members of Rain's management team, internal reports, and other data and information about Rain's Phase 3 MANTRA study results, at all relevant times; and (4) each Individual Defendant was aware of Rain's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

67.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing fundamental problems with Rain's Phase 3 MANTRA study that led to disappointing results from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' misrepresentations concerning the fundamental problems and risks inherent in Rain's Phase 3 MANTRA study throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

68.     As a result of the dissemination of materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Rain securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Rain securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other Class members acquired Rain securities during the Class Period at artificially high prices and were or will be damaged thereby.

69.     At the time of said misrepresentations and omissions, Plaintiff and other Class members were ignorant of their falsity and believed them to be true. Had Plaintiff and the other Class members and the marketplace known the truth regarding the risks and flaws inherent in Rain's Phase 3 MANTRA study that led to its disappointing results, which was not disclosed by Defendants, Plaintiff and other Class members would not have purchased or otherwise acquired their Rain securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

70.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

71.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other Class members suffered damages in connection with their respective purchases and sales of Rain securities during the Class Period.

72.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of common stock giving rise to the cause of action.

<u>**COUNT II**</u>

<u>**The Individual Defendants Violated Section 20(a) of the Exchange Act**</u>

73.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

74.     The Individual Defendants acted as controlling persons of Rain within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of Rain's operations and/or intimate knowledge of the false information filed by Rain with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of Rain, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of Rain's clinical test criteria, results, reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were

1  issued and had the ability to prevent the issuance of the statements or to cause the statements to be

2  corrected.

3      75.    In particular, each of the Individual Defendants had direct and supervisory

4  involvement in the day-to-day operations of Rain and, therefore, is presumed to have had the power

5  to control or influence the particular transactions giving rise to the securities violations as alleged

6  herein and exercised the same.

7      76.    As set forth above, Rain and the Individual Defendants each violated Section 10(b),

8  and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

9      77.    By virtue of their positions as controlling persons, the Individual Defendants are

10 liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of

11 Defendants' wrongful conduct, Plaintiff and other Class members suffered damages in connection

12 with their purchases of Rain's common stock during the Class Period.

13     78.    This action was filed within two years of discovery of the fraud and within five

14 years of each Plaintiff's purchases of common stock giving rise to the cause of action.

15 **PRAYER FOR RELIEF**

16     WHEREFORE, Plaintiff prays for relief and judgment as follows:

17     (a)    Determining that this action is a proper class action, certifying Plaintiff as class

18 representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

19     (b)    Awarding compensatory damages in favor of Plaintiff and the other Class members

20 against all Defendants, jointly and severally, for all damages sustained as a result of the

21 Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

22     (c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this

23 action, including counsel fees and expert fees; and

24     (d)    Such other and further relief as the Court may deem just and proper.

25 **JURY TRIAL DEMANDED**

26     In accordance with Fed. R. Civ. P. 38(b), Plaintiff demands a jury trial of all issues

27 involved, now, or in the future, in this action.

28

Dated: July 14, 2023                          Respectfully submitted,

                                              **LEVI & KORSINSKY, LLP**


                                              */s/ Adam M. Apton*             _
                                              Adam M. Apton (SBN 316506)
                                              Email: aapton@zlk.com
                                              1160 Battery Street East, Suite 100
                                              San Francisco, CA 9411

                                              *Attorneys for Plaintiff Myo Thant*