Adam M. Apton (SBN 316506)
LEVI & KORSINSKY, LLP
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Telephone: (415) 373-1671
aapton@zlk.com

*Lead Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

MYO THANT, Individually and On Behalf of All Others Similarly Situated,

                Plaintiff,

    v.

RAIN ONCOLOGY INC., AVANISH VELLANKI, RICHARD BRYCE, FRANKLIN BERGER, AARON DAVIS, GORJAN HRUSTANOVIC, TRAN NGUYEN, PETER RADOVICH, and STEFANI WOLFF,

                Defendants.

No. 5:23-cv-03518-EJD

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: April 2, 2026
Time: 9:00 a.m.
Courtroom 4
Judge: Hon. Edward J. Davila

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES
Case No. 5:23-cv-03518-EJD

## **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 2

     I.      INTRODUCTION ................................................................................................ 2

     II.     PROCEDURAL AND FACTUAL BACKGROUND ................................................ 3

     III.    THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE .......... 4

          A.     A Reasonable Percentage of the Fund is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases .......................................... 4

          B.     The Requested Fee is Fair and Reasonable .......................................................... 6

     IV.    CLASS COUNSEL'S LITIGATION EXPENSES ARE REASONABLE ................ 15

     V.     PLAINTIFFS' REQUESTED PSLRA AWARDS ARE REASONABLE ................ 16

     VI.    CONCLUSION ................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,

    572 F.3d 221 (5th Cir. 2009) ........................................................................................ 8

*Andrews v. Plains All Am. Pipeline L.P.*,

    2022 WL 4453864 (C.D. Cal. Sep. 20, 2022).............................................................. 12

*Azar v. Blount Int'l, Inc.*,

    2019 WL 7372658 (D. Or. Dec. 31, 2019) ................................................................... 8

*Baird v. BlackRock Institutional Tr. Co., N.A.*,

    2021 WL 5113030 (N.D. Cal. Nov. 3, 2021) ................................................................ 5

*Barbosa v. Cargill Meat Sols. Corp.*,

    297 F.R.D. 431 (E.D. Cal. 2013) ............................................................................... 16

*Boeing Co. v. Van Gemert*,

    444 U.S. 472 (1980)................................................................................................ 4, 16

*Brown v. China Integrated Energy, Inc.*,

    2016 WL 11757878 (C.D. Cal. July 22, 2016)........................................................... 17

*Buccellato v. AT&T Operations, Inc.*,

    2011 WL 4526673 (N.D. Cal. June 30, 2011) ............................................................ 18

*Chen v. Chase Bank USA, N.A.*,

    2020 WL 3432644 (N.D. Cal. June 23, 2020)............................................................ 17

*Destefano v. Zynga Inc.*,

    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .......................................................... 5, 10

*Farrell v. Bank of Am. Corp., N.A.*,

    827 F. App'x 628 (9th Cir. 2020) ............................................................................... 13

*Figueroa v. Allied Bldg. Prods. Corp.*,

    2018 WL 4860034 (C.D. Cal. Sept. 24, 2018) ............................................................. 7

*Fleming v. Impax Lab'ys Inc.*,

    2022 WL 2789496 (N.D. Cal. July 15, 2022)................................................................ 6, 7, 14

*Franco v. Ruiz Food Prods., Inc.*,

    2012 WL 5941801 (E.D. Cal. Nov. 27, 2012)............................................................... 16

*Glass v. UBS Fin. Servs., Inc.*,

    331 F. App'x. 452 (9th Cir. 2009) ............................................................................... 4

*Glickenhaus & Co. v. Household Int'l, Inc.*,

    787 F.3d 408 (7th Cir. 2015) ....................................................................................... 9

*Hanlon v. Chrysler Corp.*,

    150 F. 3d 1011 (9th Cir. 1998) ................................................................................... 6

*Harris v. Vector Mktg. Corp.*,

    2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ............................................................... 17

*Hatamian v. Advanced Micro Devices, Inc.*,

    2018 WL 8950656 (N.D. Cal. Mar. 2, 2018)........................................................... 13, 18

*Hefler v. Pekoc*,

    802 F. App'x 285 (9th Cir. 2020) ............................................................................... 7

*Hefler v. Wells Fargo & Co.*,

    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)........................................................ passim

*Hensley v. Eckerhart*,

    461 U.S. 424 (1983)..................................................................................................... 7

*IBEW Local 697 v. Int'l Game Tech.*,

    2012 WL 5199742 (D. Nev. Oct. 19, 2012) ............................................................... 8

*In re Am. Apparel, Inc. S'holder Litig.*,

    2014 WL 10212865 (C.D. Cal. July 28, 2014)........................................................... 5

*In re Amgen Inc. Sec. Litig.*,

    2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)........................................................ 13, 19

*In re Amkor Tech. Inc. Sec. Litig.*,

    2009 WL 10708030 (D. Ariz. Nov. 19, 2009)................................................................. 5

*In re Apollo Grp., Inc. Sec. Litig.*,

    2008 WL 3072731 (D. Ariz. Aug. 4, 2008).................................................................... 9

*In re Apple Inc. Device Performance Litig.*,

    2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) ............................................................... 4

*In re Aqua Metals, Inc. Sec. Litig.*,

    2022 WL 612804 (N.D. Cal. Mar. 2, 2022).................................................................. 14

*In re Banc of Cal. Sec. Litig.*,

    2020 WL 1283486 (C.D. Cal. Mar. 16, 2020)............................................................... 6

*In re Bluetooth Headset Prods. Liab. Litig.*,

    654 F.3d 935 (9th Cir. 2011) ........................................................................... 4, 5, 6

*In re BofI Holding, Inc. Sec. Litig.*,

    2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) ............................................................. 17

*In re Broiler Chicken Antitrust Litig.*,

    2021 WL 5709250 (N.D. Ill. Dec. 1, 2021).................................................................. 7

*In re Capacitors Antitrust Litig.*,

    2017 WL 9613950 (N.D. Cal. June 27, 2017)......................................................... 4, 15

*In re Celera Corp. Sec. Litig.*,

    2015 WL 1482303 (N.D. Cal. Mar. 31, 2015)............................................................... 9

*In re CenturyLink Sales Pracs. & Sec. Litig.*,

    2020 WL 7133805 (D. Minn. Dec. 4, 2020)............................................................... 18

*In re ECOtality, Inc. Sec. Litig.*,

    2015 WL 5117618 (N.D. Cal. Aug. 28, 2015) ........................................................... 19

*In re Equity Funding Corp. of Am. Sec. Litig.*,

    438 F. Supp. 1303 (C.D. Cal. 1977) ....................................................................... 10

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019)...................................................................... 8

*In re Facebook Biometric Info. Priv. Litig.*,
  522 F. Supp. 3d 617 (N.D. Cal. 2021) ......................................................................... 15

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................................. 10

*In re HP Inkjet Printer Litig.*,
  716 F.3d 1173 (9th Cir. 2013) ..................................................................................... 5

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007)............................................................... 9, 10, 19

*In re JDS Uniphase Corp. Sec. Litig.*,
  2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ............................................................ 11

*In re Lidoderm Antitrust Litig.*,
  2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ............................................................ 15

*In re Lyft Inc. Sec. Litig.*,
  2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) .............................................................. 14

*In re MacBook Keyboard Litig.*,
  2023 WL 3688452 (N.D. Cal. May 25, 2023) .............................................................. 6

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............................................................. 19

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
  768 F. App'x. 651 (9th Cir. 2019) .......................................................................... 4, 15

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008)..................................................................... 4, 8

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ..................................................................................... 6

*In re Oracle Corp. Sec. Litig.,*
   2009 WL 1709050 (N.D. Cal. June 19, 2009) ................................................................ 11

*In re Pac. Enters. Sec. Litig.,*
   47 F.3d 373 (9th Cir. 1995) ................................................................................................ 8

*In re Rite Aid Corp. Sec. Litig.,*
   396 F.3d 294 (3d Cir. 2005) ................................................................................................ 5

*In re Stable Rd. Acquisition Corp.,*
   2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) ............................................................... 18

*In re Tesla, Inc. Sec. Litig.,*
   2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) ................................................................. 11

*In re Tezos Sec. Litig.,*
   2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) ............................................................. 6

*In re Twitter Inc. Sec. Litig.,*
   2022 WL 17248115 (N.D. Cal. Nov. 21, 2022) ........................................................... 15

*In re Tyco Int'l, Ltd. Multidistrict Litig.,*
   535 F. Supp. 2d 249 (D.N.H. 2007) ............................................................................... 13

*In re Verifone Holdings, Inc. Sec. Litig.,*
   2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) ........................................................... 15

*In re Volkswagen "Clean Diesel" Mgmt., Sales Pracs., & Prod. Liab. Litig.,*
   2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ..................................................... passim

*In re Washington Mut., Inc. Sec. Litig,*
   2011 WL 8190466 (W.D. Wash. Nov. 4, 2011) ........................................................... 12

*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
   19 F.3d 1291 (9th Cir. 1994) ........................................................................................... 11

*In re Xcel Energy, Inc., Sec., Derivative, & "ERISA" Litig.,*
   364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................................... 17

*Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau,*

    2009 WL 3562871 (N.D. Cal. Oct. 27, 2009)................................................................ 17

*Jenson, v. First Tr. Corp.,*

    2008 WL 11338161 (C.D. Cal. June 9, 2008) ............................................................... 19

*Jiangchen v. Rentech, Inc.,*

    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)................................................................. 8

*Jimenez v. O'Reilly Auto. Inc.,*

    2018 WL 6137591 (C.D. Cal. June 18, 2018) ............................................................... 7

*Johnson v. US Auto Parts Network, Inc.,*

    2008 WL 11343481 (C.D. Cal. Oct. 9, 2008)................................................................. 9

*Kanawi v. Bechtel Corp.,*

    2011 WL 782244 (N.D. Cal. Mar. 1, 2011).................................................................. 18

*Larsen v. Trader Joe's Co.,*

    2014 WL 3404531 (N.D. Cal. July 11, 2014)........................................................... 6, 11

*Lopez v. Youngblood,*

    2011 WL 10483569 (E.D. Cal. Sept. 2, 2011)............................................................... 6

*Lowery v. Rhapsody Int'l, Inc.,*

    69 F.4th 994 (9th Cir. 2023) ......................................................................................... 5

*Luna v. Marvell Tech. Grp.,*

    2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ............................................................... 9

*McDermid v. Inovio Pharms., Inc.,*

    2023 WL 227355 (E.D. Pa. Jan. 18, 2023).................................................................. 19

*McPhail v. First Command Fin. Plan., Inc.,*

    2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ............................................................... 19

*Morgan v. Childtime Childcare, Inc.,*

    2020 WL 218515 (C.D. Cal. Jan. 6, 2020) .................................................................... 6

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................ 13

*Nguyen v. Radient Pharms. Corp.*,

    2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................................................ 5, 9

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,

    292 F. Supp. 3d 1018 (S.D. Cal. 2017)................................................................... 19

*Ontiveros v. Zamora*,

    303 F.R.D. 356 (E.D. Cal. 2014) ............................................................................ 16

*Redwen v. Sino Clean Energy, Inc.*,

    2013 WL 12303367 (C.D. Cal. July 9, 2013)......................................................... 16

*Rieckborn v. Velti PLC*,

    2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ............................................................ 10

*Rodriguez v. W. Publ'g Corp.*,

    563 F.3d 948 (9th Cir. 2009) .................................................................................. 17

*Savani v. URS Pro. Sols. LLC*,

    2014 WL 172503 (D.S.C. Jan. 15, 2014) ............................................................... 11

*Schulein v. Petroleum Dev. Corp.*,

    2015 WL 12698312 (C.D. Cal. Mar. 16, 2015)...................................................... 19

*Stanger v. China Elec. Motor, Inc.*,

    812 F.3d 734 (9th Cir. 2016) .................................................................................. 11

*Stetson v. Grissom*,

    821 F.3d 1157 (9th Cir. 2016) .................................................................................. 4

*Thomas v. MagnaChip Semiconductor Corp.*,

    2018 WL 2234598 (N.D. Cal. May 15, 2018)........................................................ 17

*Todd v. STAAR Surgical Co.*,

    2017 WL 4877417 (C.D. Cal. Oct. 24, 2017).......................................................... 19

*Vataj v. Johnson,*

  2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ................................................................................ 8

*Vincent v. Hughes Air W., Inc.,*

  557 F.2d 759 (9th Cir. 1977) ........................................................................................... 4, 15, 16

*Vizcaino v. Microsoft Corp.,*

  290 F.3d 1043 (9th Cir. 2002) ................................................................................................ passim

*Wehlage v. Evergreen at Arvin LLC,*

  2012 WL 4755371 (N.D. Cal. Oct. 4, 2012) ............................................................................... 18

*Wing v. Asarco Inc.,*

  114 F.3d 986 (9th Cir. 1997) ..................................................................................................... 10

*Zaidi v. Adamas Pharma., Inc.,*

  2024 WL 4342186 (N.D. Cal. Sept. 27, 2024) ........................................................................... 18

**STATUTES**

15 U.S.C. § 77z-1 .......................................................................................................................... 6, 18

15 U.S.C. § 78u-4 .......................................................................................................................... 6, 18

**OTHER AUTHORITIES**

*Manual for Complex Litigation (Fourth)* §14.121 (2004) .................................................................. 7

## <u>NOTICE OF MOTION AND MOTION</u>

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on April 2, 2026, in Courtroom 4, the courtroom of the Honorable Edward J. Davila, at the United States District Court for the Northern District of California, San Jose Courthouse, 5th Floor, 280 South First Street, San Jose, CA 95113, or remotely via Zoom or telephone as the Court may direct, Lead Counsel Levi & Korsinsky, LLP ("Levi & Korsinsky," "L&K" or "Class Counsel") will and hereby do respectfully move the Court for an order awarding attorneys' fees and providing for payment of litigation expenses, and an award to Lead Plaintiff Myo Thant and additional Plaintiff Branden Schenkhuizen (collectively, "Plaintiffs"), pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

This Motion is based on the following Memorandum of Points and Authorities, as well as the accompanying Declaration of Adam M. Apton in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Apton Declaration" or "Apton Decl.") and its exhibits, all prior pleadings and papers in this Action, the arguments of counsel, and such additional information or argument as may be required by the Court.

The proposed Final Judgment and Order of Dismissal with Prejudice contains a provision for the approval of the relief requested herein. *See* Proposed Order at ¶11.

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

1.      Whether the Court should approve as fair and reasonable an award of attorneys' fees in the amount of 25% of the Settlement Amount, plus all interest accrued thereon.

2.      Whether the Court should approve as reasonable repayment of $72,819.51 in litigation expenses incurred by Class Counsel in the Action, plus all interest accrued thereon.

3.      Whether the Court should approve as reasonable an award of $10,000 to Lead Plaintiff and $5,000 to additional named plaintiff Schenkhuizen for reimbursement of litigation expenses and costs in connection with their representation of the Class, pursuant to the PSLRA, 15 U.S.C. §§ 77z-1(a)(4) and 78u-4(a)(4).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

After over two years of navigating a risky and complex litigation, Class Counsel secured a $7,250,000 settlement for the Class.[1] In awarding fees, courts consider several factors, the most important of which is the result achieved for the Class. The all-cash Settlement represents a 13% recovery of estimated aggregate damages, substantially greater than the 8.8% median recovery for similar securities class action cases.

As compensation for their efforts in prosecuting and resolving this Action, Class Counsel request that the Court award benchmark attorneys' fees of 25% of the Settlement Amount, in addition to repayment of their related expenses or charges incurred in the amount of $72,819.51, plus the interest earned thereon. The fee request is supported by Plaintiffs and it is consistent with fees awarded in comparable class action settlements in this District. Class Counsel's fee request is further supported by the extent of their efforts and the *ex-ante* risks of the Action. *See generally*, Apton Decl. Class Counsel, among other things, conducted a thorough investigation, drafted complaints, consulted with a damages expert, defeated Defendants' motions to dismiss, reviewed and analyzed documents exchanged by/between the Parties in discovery and mediation, and participated in a mediation session with Jed Melnick, a mediator with extensive experience in resolving securities class action cases.

A lodestar cross-check also confirms the reasonableness of the requested fee. In litigating this case, Class Counsel expended substantial resources – 1,582.10 hours in professional time – for a lodestar multiplier of approximately 1.75x of Class Counsel's time which falls well within the range of multipliers awarded in the Ninth Circuit.

Moreover, the response of the Class confirms that they approve of Class Counsel's benchmark request. An estimated 15,691 Postcard Notices were provided to potential Class Members in accordance with the Preliminary Approval Order. *See* Declaration of Sarah Evans ("Evans Decl."),

---

[1] All capitalized terms not defined herein shall have the same meaning set forth in the Stipulation of Settlement dated October 22, 2025 (ECF No. 83) and in Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Final Approval Memorandum"), filed herewith.

¶8. The Postcard Notice advised potential Class Members that Class Counsel would apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Amount and payment of litigation expenses in an amount not to exceed $75,000. *See* Evans Decl., Ex. A. The deadline set by the Court to object to the requested attorneys' fees and expenses has not yet passed, but, to date, no objections have been received. *See* Apton Decl., ¶67, 70.[2]

Finally, in connection with their efforts to oversee and lead this Action and their significant contribution to the excellent result achieved for the Class, Plaintiffs respectfully request an award of $10,000 to Lead Plaintiff and $5,000 for each additional named Plaintiff pursuant to the PSLRA, 15 U.S.C. §§ 77z-1(a)(4) and 78u-4(a)(4). As detailed herein, Plaintiffs believe this is a modest request in light of the risks they undertook in participating as the Court appointed Lead Plaintiff or as a named Additional Plaintiff, in addition to the time they spent on the litigation, and the award requested is consistent with awards granted in comparable class action settlements, *see* Section V, *infra*.

Accordingly, Class Counsel respectfully submit that the requested attorneys' fees and payment of litigation expenses are fair and reasonable and should, therefore, be granted.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

Class Counsel has invested substantial time and resources in the prosecution of the Action, including investigating background facts, interviewing witnesses, drafting the complaints, briefing Defendants' motions to dismiss, preparing Plaintiffs for discovery, reviewing documents, and working with experts, all in furtherance of, and resulting in, the Settlement now before this Court. Consistent with this District's Procedural Guidance for Class Action Settlements (the "Northern District Settlement Guidance"), relevant history and facts are set out in Plaintiffs' Final Approval Memorandum and the Apton Declaration and are not repeated here. *See id.* at Final Approval, §2 ("If the plaintiffs choose to file two separate motions, they should not repeat the case history and

---

[2] Pursuant to the Court's Preliminary Approval Order (ECF No. 87), the deadline for the filing of objections is March 5, 2026. Should any objections be filed, Class Counsel will address them in their reply papers due on March 19, 2026.

background facts in both motions.").[3]

## III.    THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE

### A.    A Reasonable Percentage of the Fund is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ("a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees."); *accord In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x. 651, 653 (9th Cir. 2019); *see also Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016).

Although courts have discretion to employ either the percentage-of-the-fund or lodestar method for calculating fees, *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011), the Ninth Circuit has expressly and consistently approved the use of the percentage method in common fund cases. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x. 452, 456-57 (9th Cir. 2009) (affirming district court's use of percentage of recovery method to award fee). Indeed, "'[t]he use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel.'" *In re Apple Inc. Device Performance Litig.*, 2023 WL 2090981, at *12 (N.D. Cal. Feb. 17, 2023); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (noting the "use of the percentage method in common fund cases appears to be dominant"); *In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *2 (N.D. Cal. June 27, 2017)

---

[3] United States District Court for the Northern District of California Procedural Guidance for Class Action Settlements (last modified September 5, 2024), https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

("The percentage-of-the-fund method is preferred when counsel's efforts have created a common fund for the benefit of the class."); *In re Amkor Tech. Inc. Sec. Litig.*, 2009 WL 10708030, at *1 (D. Ariz. Nov. 19, 2009) (stating percentage-of-recovery method most appropriate to award attorneys' fees in securities class action).

The PSLRA also contemplates that fees be awarded on a percentage basis, authorizing "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §§ 77z-1(a)(6) and 78u-4(a)(6); *see also In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *20 (C.D. Cal. July 28, 2014) ("'Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.'"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("[T]he percentage-of-recovery method was incorporated in the [PSLRA]."), *amended* (Feb. 25, 2005); *Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (same).

Further, use of the percentage-of-recovery method is particularly appropriate in common fund cases like this because "the benefit to the class is easily quantified." *Bluetooth*, 654 F.3d at 942; *see, e.g., Destefano v. Zynga Inc.,* 2016 WL 537946, at *16 (N.D. Cal. Feb. 11, 2016) ("Because this case involves a common settlement fund with an easily quantifiable benefit to the Class, the Court will primarily determine attorneys' fees using the percentage method. . ."); *see also Baird v. BlackRock Institutional Tr. Co., N.A.*, 2021 WL 5113030, at *6-*7 (N.D. Cal. Nov. 3, 2021) (applying percentage of the fund method and lodestar crosscheck). "[C]ourts try to . . . [tie] together the interests of class members and class counsel" by "tether[ing] the value of an attorneys' fees award to the value of the class recovery . . . [t]he more valuable the class recovery, the greater the fees award . . . [a]nd vice versa." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178-79 (9th Cir. 2013); *see Lowery v. Rhapsody Int'l, Inc.*, 69 F.4th 994, 997 (9th Cir. 2023) ("The touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class.").

Conversely, the Ninth Circuit has recognized that the lodestar method creates the perverse incentive for counsel to "expend more hours than may be necessary on litigating a case." *Vizcaino*,

290 F.3d at 1050 n.5; *see also Bluetooth*, 654 F.3d at 942; *Lopez v. Youngblood*, 2011 WL 10483569, at *4 (E.D. Cal. Sept. 2, 2011) ("'[I]n practice, the lodestar method is difficult to apply [and] time consuming to administer.'") (quoting *Manual for Complex Litigation (Fourth)* §14.121 (2004)).

## B.     The Requested Fee is Fair and Reasonable

Class Counsel seeks the Ninth Circuit's established benchmark fee of 25%. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("Under the percentage of recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark is 25%.); *accord Bluetooth*, 654 F.3d at 942 ("courts typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure"); *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark for attorneys' fees."). Adjustments to the Ninth Circuit benchmark may be made upon consideration of the following factors: "(1) the result achieved; (2) the risk involved in the litigation; (3) the skill required and quality of work by counsel; (4) the contingent nature of the fee; and (5) awards made in similar cases." *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *9 (N.D. Cal. July 11, 2014) (citing *Vizcaino*, 290 F.3d at 1048-50); *see also In re Volkswagen "Clean Diesel" Mgmt., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 1047834, at *1 (N.D. Cal. Mar. 17, 2017). Although these factors would warrant an enhancement here, Class Counsel seeks only the benchmark.

A review of fee awards in district courts within the Ninth Circuit shows that an award of 25% is on the lower end of percentage fees awarded in securities and other complex common fund cases with comparable settlements. *See, e.g., In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *13-14 (N.D. Cal. May 25, 2023) (awarding 30% of $50 million settlement); *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *8 (N.D. Cal. July 15, 2022) (awarding 30% of $33 million settlement); *Morgan v. Childtime Childcare, Inc.*, 2020 WL 218515, at *4 (C.D. Cal. Jan. 6, 2020) (adjusting fee award to "just under 33.3% of the total settlement amount"); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (awarding one-third of $25 million recovery); *In re Banc of Cal. Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% of $19.75 million recovery);

*Jimenez v. O'Reilly Auto. Inc.*, 2018 WL 6137591, at *3 (C.D. Cal. June 18, 2018) (finding a 33.33% award was justified because of "complicated nature" of the case); *Figueroa v. Allied Bldg. Prods. Corp.*, 2018 WL 4860034, at *3 (C.D. Cal. Sept. 24, 2018) (awarding 33% fee award in complex class action wage and hour case).

Moreover, as discussed below, application of each of the enumerated factors confirms that the requested benchmark 25% fee is fair and reasonable.

**1.      Class Counsel Achieved an Exceptional Result for the Class**

"The first and 'most critical factor [in determining an attorneys' fee] is the degree of success obtained.'" *Impax*, 2022 WL 2789496, at *8 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)); *see Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). In fact, clients care most about results and would willingly pay, and are financially better off paying, a larger fee for a great result than a lower fee for a poor outcome. *See In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *3 (N.D. Ill. Dec. 1, 2021) ("Clients generally want to incentivize their counsel to pursue every last settlement dollar.").

Here, against substantial risks, Class Counsel obtained an exceptional recovery for the Class, both in terms of overall amount ($7.25 million) and as a percentage of the estimated aggregate damages (13%). Had the case proceeded to trial, the recovery may have been much less, or nothing. At every turn Defendants took the position that damages were significantly lower than the $55 million that Plaintiffs' expert estimated, and there existed a significant risk that class-wide aggregate damages would have been far less. Indeed, aggregate damages could have been lower than the $7.25 million recovery, including the risk of ***no*** damages at all. *Volkswagen*, 2017 WL 1047834, at *2 ("Class Counsel 'recognize there are always uncertainties in litigation[.]' It is possible that 'a litigation Class would receive less or nothing at all, despite the compelling merit of its claims . . . .'") (alteration in original). This risk was particularly acute given the bankruptcy of the corporate defendant.

The recovery of 13% of estimated aggregate damages is substantially greater than the 8.8% median percentage recovery for all securities class action cases settled in 2023. *See* Cornerstone Research, *2024 Review & Analysis: Securities Class Action Settlements*, pp. 7-8 & Figures 5-6 (2025),

attached as Exhibit 2 to the Apton Declaration. And, it is many multiples of recoveries in other securities cases in this District. *See Vataj v. Johnson*, 2021 WL 5161927, at *9 (N.D. Cal. Nov. 5, 2021) (approving recovery of 2% of estimated damages finding it "consistent with the 2-3% average recovery that the parties identified in other securities class action settlements"); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (approving settlement representing between 5% and 9.5% of maximum potential damages); *Azar v. Blount Int'l, Inc.*, 2019 WL 7372658, at *7 (D. Or. Dec. 31, 2019) (approving settlement recovering 4.63% to 7.65% of the class's total estimated damages); *IBEW Local 697 v. Int'l Game Tech.,* 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement representing "about 3.5% of the maximum damages that Plaintiffs believe[d] could be recovered" and finding it "within the median recovery in securities class actions settled in the last few years").

The outstanding result obtained for the Class here strongly supports Class Counsel's fee request and merits an appropriate fee that encourages counsel to seek excellent results.

### 2.    The Litigation Was Uncertain and Highly Complex

The "complexity of the issues and the risks" undertaken are also important factors in determining a fee award. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *see also Vizcaino*, 290 F.3d at 1048 ("Risk isa relevant circumstance."). "'[I]n general, securities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'" *Hefler*, 2018 WL 6619983, at *13; *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019) (referring to securities cases as "time-consuming and difficult to prove."). Indeed, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). For these reasons, in securities class actions, fee awards often exceed the 25% benchmark recognized in the Ninth Circuit. *Omnivision*, 559 F. Supp. 2d at 1047.

Class Counsel assumed significant risk in this Action. *See* Apton Decl. at ¶¶29-35. This Action was subject to the heightened pleading requirements of the PSLRA. *See Johnson v. US Auto Parts*

*Network, Inc.*, 2008 WL 11343481, at \*3 (C.D. Cal. Oct. 9, 2008) (noting that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"). Defendants sought outright dismissal of the Action, challenging multiple elements necessary to state of claim under Section 11 of the Securities Act and Section 10(b) of the Exchange Act, and were expected to launch substantial challenges at summary judgment and trial. Such challenges can pose serious risks in the litigation of securities class actions. *See*, *e.g.*, *In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at \*5 (N.D. Cal. Mar. 31, 2015); *Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at \*3 (N.D. Cal. Apr. 20, 2018). For example, Defendants did and likely would have continued to argue that any decline in Rain's stock price reflected business and clinical setbacks inherent in drug development, not fraud. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) ("[T]he issue[] of scienter . . . [is] complex and difficult to establish at trial."). Additionally, at trial, the Action would have turned largely on expert testimony concerning highly technical economic issues, including loss causation and the credibility of fact witnesses. Significantly, Defendants would need to defeat only one element of Plaintiffs' claims to prevail, and there was a significant risk the jury would agree with Defendants' experts and find no liability, no damages, or award far less than Plaintiffs sought to recover. *See, e.g.*, *Radient Pharms.*, 2014 WL 1802293, at \*2 (noting, in securities class action, that "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law. The outcome of that analysis is inherently difficult to predict and risky").

And even if Plaintiffs survived dismissal under Rule 12(b)(6), summary judgment, and obtained a favorable verdict at trial, they would ***still*** have faced the risk of partial or complete reversal in post-trial proceedings. *See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd on other grounds*, 2010 WL 5927988 (9th Cir. June 23, 2010) (granting motion for a judgment as a matter of law, overturning $277 million verdict in favor of plaintiffs based on insufficient evidence of loss causation); *see also Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction). And, if a verdict was sustained, collection

might be impossible given the Company's bankruptcy, the limited resources of Individual Defendants, and the eroding insurance policies. *See Rieckborn v. Velti PLC*, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (finding company's "precarious financial condition" "highlights the reasonableness of the settlement amount"); *In re Immune Response*, 497 F. Supp. 2d at 1172 ("significant collectability issues" supported settlement). Accordingly, the $7.25 million Settlement, achieved in the face of these significant risks, amply supports the requested benchmark fee award.

### 3.    Class Counsel Possessed the Skill Required and Produced Quality Work

The quality of Class Counsel's representation further supports the reasonableness of the requested fee. Courts have often recognized that the "'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *Zynga*, 2016 WL 537946, at *17; *see also Vizcaino*, 290 F.3d at 1048. "'This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss.'" *Zynga*, 2016 WL 537946, at *17 (quoting *Omnivision*, 559 F. Supp. 2d at 1047). Class Counsel are nationally recognized leaders in securities class actions and complex litigation. *See* Apton Decl., ¶59. Class Counsel successfully litigated the Action and achieved an exceptional recovery for the Class. Class Counsel's skill and experience supports the requested fee award.

The standing of opposing counsel should also be weighed because such standing reflects the challenge faced by Class Counsel. *See, e.g.*, *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) ("the quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work"); *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly"). Defendants chose well-known and highly capable representation by a team of experienced attorneys from Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), a well-regarded law firm. Gibson Dunn spared no effort or expense on behalf of Defendants in their zealous defense. Class Counsel's ability to obtain a favorable result for the Class while litigating against this formidable

defense firm and its well-financed clients further evidences the quality of Class Counsel's work and weighs in favor of awarding the requested fee.

### 4. Class Counsel Carried the High Financial Burden on Contingency

"It is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all." *Volkswagen*, 2017 WL 1047834, at *3; *see In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) (same); *Larsen*, 2014 WL 3404531, at *9 (same). This "practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney." *Id.* "This incentive is especially important in securities cases." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016).

"The risk of no recovery in complex cases of this sort is not merely hypothetical." *Savani v. URS Pro. Sols. LLC*, 2014 WL 172503, at *5 (D.S.C. Jan. 15, 2014). Not only is the motion to dismiss here undecided, but there have also been many class actions in which counsel for the plaintiffs took on the risk of pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received no remuneration whatsoever despite their diligence and expertise. *See* Section III.B.2, *supra*. For example, in *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010), the court granted summary judgment to defendants after eight years of litigation, during which plaintiff's counsel incurred over $7 million in out-of-pocket expenses and worked over 100,000 hours, representing a lodestar of approximately $40 million. In another Ninth Circuit PSLRA case, prosecuted by Levi & Korsinsky, after a lengthy trial involving securities claims against Tesla, the jury reached a verdict in defendants' favor – despite the Court previously granting summary judgment on certain elements in the **plaintiff's** favor, evincing the strength of the claims. *See In re Tesla, Inc. Sec. Litig.*, 2022 WL 1497559 (N.D. Cal. Apr. 1, 2022), and *Tesla*, No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023); *see also In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (holding similarly).

Here, Class Counsel have received no compensation during the course of this Action and invested 1,582.10 hours for a total lodestar of $1,040,810 and Class Counsel incurred substantial

expenses in prosecuting this case to a successful resolution. Additional (uncompensated) work in connection with the Settlement and claims administration has already been undertaken and will be required going forward. Any fee award has always been contingent on the result achieved and at this Court's discretion. When undertaking this work, the only certainty was that there would be no fee without a successful result. Class Counsel committed significant resources of both time and money to vigorously prosecute this Action and successfully brought it to a highly favorable conclusion for the Class's benefit. *See generally* Apton Decl. The contingent nature of Class Counsel's representation thus further supports approval of the requested fee. *See Andrews v. Plains All Am. Pipeline L.P.*, 2022 WL 4453864, at *3 (C.D. Cal. Sep. 20, 2022) (in awarding 32% fee on $230 million settlement, court found "the substantial risks borne by Class Counsel in pursuing this class action for seven years with no guarantee of recovering fees or litigation expenses also militates in favor of finding the requested fee award reasonable").

### 5.    Awards Made in Similar Cases Support Class Counsel's Fee Requested

Class Counsel's fee request is also supported by awards made in similar cases. As discussed above in Section III.B, the benchmark fee requested here represents a lower percentage than is often awarded in similar cases. As further addressed in Section III.B.7, the resulting multiplier of approximately 1.75x on Class Counsel's lodestar is also withing the range of lodestar multipliers applied in cases of this nature.

### 6.    The Class's Reaction to Date Supports the Fee Requested

Courts within the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee. *Seem e.g.*, *Volkswagen*, 2017 WL 1047834, at *4 (considering that "[o]nly four Class Members out of a class of approximately 475,000 objected to the proposed fee award" to be "a strong, positive response from the class, supporting Class Counsel's requested fees"); *In re Washington Mut., Inc. Sec. Litig*, 2011 WL 8190466, at *2 (W.D. Wash. Nov. 4, 2011) (noting, in approving fee request, that "no substantive objections to the amount of fees and expenses requested were filed"). While a certain number of objections are to be expected in a large class action such as this, "the absence of a large number of objections to a proposed class action settlement raises a strong

presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *Hefler*, 2018 WL 6619983, at *15 ("As with the Settlement itself, the lack of objections from institutional investors 'who presumably had the means, the motive, and the sophistication to raise objections' [to the attorneys' fee] weighs in favor of approval.").

Class Members were informed in the Postcard Notice and Notice that Class Counsel would move the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Amount and for payment of litigation expenses not to exceed $75,000. Class Members were also advised of their right to object to the fee and expense request, and that such objections are to be filed with the Court no later than March 5, 2026. While this deadline has not yet passed, to date, ***not a single objection*** has been received. Should any objections be received, Class Counsel will address them in their reply papers. Finally, Plaintiffs have approved the percentage sought here. *See* Thant Decl., ¶4; Schenkuizen Decl., ¶6. Plaintiffs' approval supports granting the requested fee. *See Hatamian v. Advanced Micro Devices, Inc.*, 2018 WL 8950656, at *2 (N.D. Cal. Mar. 2, 2018) (approving fee where request "reviewed and approved as fair and reasonable by Class Representatives, sophisticated institutional investors").

**7.    A Lodestar Crosscheck Confirms the Reasonableness of the Fee Requested**

To assess the reasonableness of a fee awarded under the percentage-of-the-fraud method, courts are not required to but may cross check the proposed award against counsel's lodestar. *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (refusing to mandate "a [cross-check] requirement"); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (noting that "analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit"). When the lodestar is used as a cross check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *accord Volkswagen*, 2017 WL 1047834, at *5 n.5 (overruling objection that "the information provided in support of Class Counsel's lodestar

amount as inadequate" because "it is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records'") (alterations and ellipsis in original); *Hefler*, 2018 WL 6619983, at \*14 (confirming that "'trial courts need not, and indeed should not, become green-eyeshade accountants'" in context of lodestar cross check, and noting that "the Court seeks to 'do rough justice, not to achieve auditing perfection'").

In this case, the lodestar cross check demonstrates the reasonableness of the requested fee. As detailed here and in the accompanying Apton Declaration, 1,582.10 hours of attorney and paraprofessional time were expended prosecuting the Action for the benefit of the Class. The hours spent to obtain the results are reasonable as detailed in the Apton Declaration.

Class Counsel's hourly rates, too, are reasonable. In fact, Levi & Korsinsky's rates have recent judicial approval in this District. *See In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at \*8 (N.D. Cal. Mar. 2, 2022) (approving Levi & Korsinsky's hourly rates finding that "the billing rates used by Class Counsel to calculate the lodestar are in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation. Other courts in this District have approved similar hourly rates. *See In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at \*12 (N.D. Cal. Aug. 7, 2023) (approving "Lead Counsel's hourly rates rang[ing] from $900 to $1,200 for partners, $375 to $605 for associates, and $250 to $300 for paralegals . . . ."); *Fleming*, 2022 WL 2789496, at \*9 (approving hourly rates of $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates, and finding "billing rates in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation"); *Hefler*, 2018 WL 6619983, at \*14 (finding rates ranging from $650 to $1,250 for partners or senior counsel and from $400 to $650 for associates as reasonable); *Volkswagen*, 2017 WL 1047834, at \*5 (finding rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable). Accordingly, Class Counsel's lodestar, derived by multiplying the hours spent on the Action by each attorney and litigation professional by their current hourly rates, is $1,040,810.

The requested fee of 25% represents a multiplier of approximately 1.75x on Class Counsel's

lodestar, which is comfortably within the range of lodestar multipliers courts in this Circuit regularly approve. *See, e.g.*, *Capacitors Antitrust*, 2017 WL 9613950, at \*6 (noting, "[i]n the Ninth Circuit, a lodestar multiplier of around 4 times has frequently been awarded in common fund cases"); *Hefler*, 2018 WL 6619983, at \*14 (awarding fee representing a 3.22 multiplier); *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633 (N.D. Cal. 2021) (awarding fee in $650 million common fund settlement representing 4.71 multiplier), *aff'd*, 2022 WL 822923 (9th Cir. Mar. 17, 2022); *In re Twitter Inc. Sec. Litig.*, 2022 WL 17248115, at \*2 (N.D. Cal. Nov. 21, 2022) (awarding fee representing 4.14 multiplier); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at \*7-\*9 (awarding fee representing a 3.66 multiplier), *aff'd*, 768 F. App'x 651 (9th Cir. 2019); *see generally Vizcaino*, 290 F.3d at 1050-52, 1051 n.6 (affirming 3.65 multiplier on appeal and finding that multipliers ranged as high as 19.6, with the most common range from 1.0 to 4.0); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at \*3 (N.D. Cal. Sept. 20, 2018) (finding multipliers range from 1.0 to 4.0 in the vast majority of cases, citing *Vizcaino*, 290 F.3d at 1052-54); *In re Verifone Holdings, Inc. Sec. Litig.*, 2014 WL 12646027, at \*2 (N.D. Cal. Feb. 18, 2014) (noting "over 80% of multipliers fall between 1.0 and 4.0" and awarding fee where multiplier was 4.3). As more fully explained in the Apton Declaration, given the risk undertaken by Class Counsel and the result achieved for the Class, a multiplier of approximately 1.75x is reasonable here.

Each of the relevant factors supports the award of attorneys' fees of 25% of the Settlement Amount ($1,812,500). Accordingly, Class Counsel's fee request is reasonable and should be approved.

## IV.    CLASS COUNSEL'S LITIGATION EXPENSES ARE REASONABLE

Class Counsel further requests repayment of litigation expenses in the amount of $72,819.51 from the common fund incurred in connection with their vigorous prosecution and favorable resolution of the Action on behalf of the Class. These include expenses associated with, among other things, experts, investigators, mediations costs, service of process, online legal and factual research, and necessary economy-class travel (including estimated travel costs in the amount of $3,500 for attendance of the final approval hearing). *Vincent v. Reser*, 2013 WL 621865, at \*5 (N.D. Cal. Feb. 19, 2013) ("Attorneys who create a common fund are entitled to the reimbursement of expenses they

advanced for the benefit of the class."). A large component of Class Counsel's expenses is for the costs of experts who were qualified and necessary to litigate the Action. Courts in this Circuit regularly approve reimbursements for expert fees. *See, e.g.*, *Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801, at *22 (E.D. Cal. Nov. 27, 2012) (noting expert fees are among the "types of fees . . . routinely reimbursed"); *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (granting expense reimbursement to class counsel and noting "itemized costs relating to . . . expert fees" were "reasonable litigation expenses").

The expenses here are modest, equivalent to 1% of the Settlement Amount. Additionally, the amount sought, as detailed in Class Counsel's declarations, is less than the $75,000 amount published in the Postcard Notice and Notice, to which no Class Member has objected to date. *See* Evans Decl., Exhibit A. The expenses sought are also of the type that are routinely charged to hourly paying clients and, therefore, are properly paid out of the common fund. *Hefler*, 2018 WL 6619983, at *16 ("An attorney is entitled to 'recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client.'"); *Vincent*, 2013 WL 621865, at *5 (granting award of expenses for "'three experts and the mediator, photocopying and mailing expenses, travel expenses, and other reasonable litigation related expenses'"); *see also Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *9-*10 (C.D. Cal. July 9, 2013); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 454 (E.D. Cal. 2013).

## V.    PLAINTIFFS' REQUESTED PSLRA AWARDS ARE REASONABLE

Pursuant to the PSLRA, a class representative may seek an award of reasonable costs and expenses directly relating to the representation of the class. *See* 15 U.S.C. §§ 77z-1(a)(4) and 78u-4(a)(4); *see also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (holding that named plaintiffs are eligible for "reasonable" payments as part of a class action settlement). Factors to consider include, "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation'" among others. *Id.* (ellipse in original); *see* William B. Rubenstein, *On Plaintiff "Incentive" Payments*, Class Action Attorney Fee Digest (Vol. 1, Apr. 2007), 95-97 (same), attached

to the Apton Declaration as Exhibit 3. As explained by Professor Rubenstein, "[t]he general theory behind incentive awards is that the monitoring, litigating, and gate-keeping functions serve important public goals. Incentive awards encourage plaintiffs to step forward and provide these public goods." *Id.* Such awards "can be justified by the fact that the representative is not similarly situated to other class members: she did something they did not and is rightly paid for stepping forward and working to safeguard the class's interests." *Id.*; *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases.").

In the Ninth Circuit, courts have long found a $5,000 incentive award "presumptively reasonable." *See, e.g., Thomas v. MagnaChip Semiconductor Corp.*, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018); *Chen v. Chase Bank USA, N.A.*, 2020 WL 3432644, at *12 (N.D. Cal. June 23, 2020) (same); *Harris v. Vector Mktg. Corp.*, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (same); *Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau*, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (same). "Courts will, however, grant an award that exceeds $5,000 when warranted." *Brown v. China Integrated Energy, Inc.*, 2016 WL 11757878, at *14 (C.D. Cal. July 22, 2016) (collecting cases) ("Due to the litigation's length and the substantial time and effort that Plaintiffs have expended during the proceedings, the factors weigh in favor of approving the requested $10,000 incentive award … to each of the [two] Lead Plaintiffs." ); *see also In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *8 (S.D. Cal. Oct. 14, 2022) (finding $15,000 service award to lead plaintiff equitable based on "contributed efforts to benefit the class while bearing the risk of nonrecovery and retaliation"); *In re Xcel Energy, Inc., Sec., Derivative, & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (awarding $100,000 to lead plaintiffs because of "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves").

Pursuant to the PSLRA, Lead Plaintiff Thant requests an award of $10,000 and additional Plaintiff Branden Schenkhuizen requests an award of $5,000, in connection with the burden undertaken by them as class representatives in this Action and for their time and effort in bringing and prosecuting this matter on behalf of the Class. The Northern District Settlement Guidance states that "[a]ll requests for service awards must be supported by evidence of the value provided by the proposed

awardees, the risks they undertook in participating, the time they spent on the litigation, and any other justifications for the awards." *Id.* at Final Approval, §3. Consistent with such guidance, Plaintiffs have each submitted a declaration herewith setting forth the time and effort they spent monitoring the Action and directing Class Counsel, including discussing litigation strategy, collecting and reviewing materials in preparation for discovery, and discussing settlement negotiations and case filings with Class Counsel, among other things. *See* Thant Decl., ¶2; Schenkhuizen Decl., ¶¶2-3. "These are 'precisely the types of activities that support awarding reimbursement of expenses to class representatives.'" *In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *16 (C.D. Cal. Apr. 23, 2024) (approving PSLRA award of $10,000 to lead plaintiff based on similar accounts of "an active role in the litigation"). Moreover, Plaintiffs undertook risks in publicly pursuing these claims on behalf of the Class. *See, e.g.*, *Wehlage v. Evergreen at Arvin LLC*, 2012 WL 4755371, at *5 (N.D. Cal. Oct. 4, 2012) (finding requested award reasonable for plaintiffs "lending their names to this case, and thus subjecting themselves to public attention"); *In re CenturyLink Sales Pracs. & Sec. Litig.*, 2020 WL 7133805, at *13 (D. Minn. Dec. 4, 2020) (finding requested award reasonable because "[c]lass [r]epresentatives participated and willingly took on the responsibility of prosecuting the case and publicly lending their names to this lawsuit, opening themselves up to scrutiny and attention from both the public and media").

Courts in this District, and elsewhere, have consistently approved as reasonable incentive or service awards for class representatives that are in line with and/or higher than those requested here. *See, e.g.*, *Zaidi v. Adamas Pharma., Inc*., 2024 WL 4342186, at *2 (N.D. Cal. Sept. 27, 2024) (PSLRA award of $10,000 "as reimbursement for [Lead Plaintiff's] reasonable costs and expenses directly related to his representation of the Settlement Class"); *Hatamian*, 2018 WL 8950656, at *2 (approving PSLRA service awards ranging from more than $8,000 to nearly $15,000 to class representatives); *Buccellato v. AT&T Operations, Inc.*, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) (approving $20,000 award to lead plaintiff and $5,000 award to each of the four additional named plaintiffs); *Kanawi v. Bechtel Corp.*, 2011 WL 782244, at *3 (N.D. Cal. Mar. 1, 2011) (granting $7,500 incentive awards to each named plaintiff); *see also, e.g.*, *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *6

(C.D. Cal. Oct. 24, 2017) ("In light of the extensive caselaw supporting a $10,000 incentive award, and the significant time and effort Lead Plaintiff expended to support this litigation … the Court finds the award of $10,000 appropriate."); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *10 (C.D. Cal. Oct. 25, 2016) (approving service award of nearly $31,000 to lead plaintiff as compensation for their "time, effort, and expenses devoted to litigating on behalf of the class"); *Schulein v. Petroleum Dev. Corp.*, 2015 WL 12698312, at *6 (C.D. Cal. Mar. 16, 2015) (approving awards ranging from $7,500 to $10,000 to named plaintiffs for "the time they spent litigating the case"); *McPhail v. First Command Fin. Plan., Inc.*, 2009 WL 839841, at *8 (S.D. Cal. Mar. 30, 2009) (approving incentive awards ranging up to $10,422.30 noting that "the requested reimbursement is consistent with payments in similar securities cases"); *Jenson, v. First Tr. Corp.,* 2008 WL 11338161, at *16 (C.D. Cal. June 9, 2008) (approving incentive award of $20,000 to lead plaintiff and $10,000 to each of the three named plaintiffs); *In re Immune Response Sec. Litig.,* 497 F. Supp. 2d 1166, 1173-74 (S.D. Cal. 2007) (awarding $40,000 service award to lead plaintiff); *McDermid v. Inovio Pharms., Inc.*, 2023 WL 227355, at *13 (E.D. Pa. Jan. 18, 2023) (awarding named plaintiffs $77,450 and $75,712.50 for 221.2 hours and 168.25 hours spent working on the case, respectively); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding named plaintiffs $144,657 and $70,000 "to compensate them for their reasonable costs and expenses incurred in managing this litigation and representing the Class").

Most significantly, to date, there have been ***zero objections*** to these requested awards to Plaintiffs, which was identified in the Postcard Notice, widely disseminated to Class Members. *See* Evans Decl., ¶13; *see also Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1059 (S.D. Cal. 2017) (approving incentive awards to two class representatives noting "[f]inally, and importantly, there have been no Class Member objections to the service award provision, further indicating the reasonableness" of the request); *In re ECOtality, Inc. Sec. Litig.*, 2015 WL 5117618, at *2, *5 (N.D. Cal. Aug. 28, 2015) (same).

## VI.    CONCLUSION

Based on the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the

Court: (i) award Class Counsel's benchmark attorneys' fees of 25% of the Settlement Amount ($1,812,500) and payment of $72,819.51 in litigation expenses, plus interest on both amounts at the same rate as earned by the Settlement Fund, and (ii) award to Plaintiffs' reimbursement of litigation expenses and costs incurred in connection with their representation of the Class, as permitted by the PSLRA.

Dated: January 29, 2026

Respectfully submitted,

LEVI & KORSINSKY, LLP

*/s/ Adam M. Apton*
Adam M. Apton (SBN 316506)
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Telephone: (415) 373-1671
aapton@zlk.com

*Counsel for Plaintiffs and the Class*