Adam M. Apton (SBN 316506)
LEVI & KORSINSKY, LLP
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Tel: (415) 373-1671
aapton@zlk.com

*Lead Counsel Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYO THANT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RAIN ONCOLOGY INC., AVANISH VELLANKI, RICHARD BRYCE, FRANKLIN BERGER, AARON DAVIS, GORJAN HRUSTANOVIC, TRAN NGUYEN, PETER RADOVICH, and STEFANI WOLFF,<br><br>Defendants. | Case No.: 5:23-cv-03518-EJD<br><br>**DECLARATION OF**<br>**ADAM M. APTON** |

I, Adam M. Apton, hereby declare as follows:

1. I am licensed to practice law in this Court. I am a partner at Levi & Korsinsky, LLP, Lead Counsel for Court-appointed Lead Plaintiff Myo Thant ("Lead Plaintiff") and additional named plaintiff Branden Schenkhuizen (collectively with Lead Plaintiff, "Plaintiffs") in the action. I submit this declaration in support of Plaintiffs' motion for final approval of the Settlement, approval of the Plan of Allocation, and approval of an award of attorneys' fees and litigation expenses. Unless otherwise indicated, I have personal knowledge of the matters set forth herein based both on my extensive participation in the prosecution and settlement of the claims asserted in the action and my supervision of those working at my direction, and if called upon to testify as a witness thereto, I could and would competently do so under oath.

2. The Settlement will resolve all claims asserted in the action against all Defendants on behalf of the Class which consists of: (i) all Persons who purchased Rain Oncology Inc. ("Rain") common stock between April 23, 2021 to May 19, 2023, inclusive, and were damaged thereby; and (ii) all Persons who purchased Rain common stock pursuant or traceable to Rain's registration statement filed in conjunction with Rain's initial public offering on April 23, 2021, and were damaged thereby. Excluded from the Class are Rain, the Director Defendants, Dismissed Defendants, and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the Defendants or Dismissed Defendants have or had a controlling interest. Also excluded from the Class are any persons or entities who exclude themselves by submitting a request for exclusion in connection with the Notice that is accepted by the Court.

## I.    THE SIGNIFICANT RECOVERY ACHIEVED FOR THE CLASS

3. As detailed below, through intensive efforts and after lengthy settlement negotiations, Class Counsel achieved a $7,250,000.00 all-cash settlement on behalf of the Class. As set forth in the Stipulation, in exchange for this payment, the Settlement resolves all claims asserted in this Action by Plaintiffs and the Class against Defendants.

1

4.      The Settlement is the product of extended arm's length negotiations between experienced and well-informed counsel, including a full-day mediation session and several subsequent negotiations before an experienced mediator, Jed Melnick, Esq., which ultimately resulted in a "mediator's proposal," accepted by the parties. Plaintiffs agreed to the Settlement only after they gained a thorough understanding and appreciation of the strengths and weaknesses of the action by, among other things, (i) conducting an extensive investigation; (ii) reviewing and analyzing documents exchanged by/between the parties in discovery and mediation; (iii) incorporating facts from those documents and other facts into a detailed amended complaint; (iv) defeating Defendants' motions to dismiss; (v) engaging in additional motion practices concerning the parties' procedural rights to appeal and name additional parties; (vi) preparing a detailed mediation statement; and (vii) participating in a mediation session with Mr. Melnick followed by weeks of settlement discussions.

5.      The $7.25 million Settlement represents a recovery of approximately 13% of the estimated aggregate likely recoverable damages (*i.e.*, approximately $55 million), as calculated by Plaintiffs' damages expert. This is well within the range of reasonableness under the circumstances and warrants final approval of the Settlement.

6.      Plaintiffs and Class Counsel obtained this substantial recovery despite the significant risks Plaintiffs faced in prosecuting the action. As discussed below, Defendants strenuously maintained, and continue to maintain, that no liability or damages in this action could be proven at trial. When viewed in the context of these risks and uncertainties, the Settlement is an exceptional result for the Class.

II.      **RELEVANT FACTUAL AND PROCEDURAL HISTORY AND NEGOTIATION OF THE SETTLEMENT**

7.      Levi & Korsinsky is nationally recognized for its expertise in securities litigation. The firm actively follows corporate disclosures and initiates investigations under circumstances that, in their attorneys' opinions, suggest potential wrongdoing or violations of the federal securities laws. That is precisely what happened here. On May 22, 2023, Rain disclosed that the Phase 3 clinical trial for its leading drug candidate had failed due to a lack of efficacy and elevated levels of adverse

DECLARATION OF ADAM M. APTON
Case No. 5:23-cv-03518-EJD

safety events. Analysts reported on the results which, in turn, prompted an investigation and review into Rain's historical clinical trial program and statements about the progression of the trial itself.

8. Counsel's investigation identified potentially false and/or materially misleading statements made by Rain and its executive at the time. Although the investigation was preliminary in nature it still included a thorough review of Rain's public statements, filings with the U.S. Securities and Exchange Commission, and analyst reports relating to the company's clinical trial operations. The investigation also included analysis of Rain's stock price at various points during relevant times both before and after public statements concerning its failed Phase 3 trial.

9. On July 14, 2023, Plaintiff Myo Thant and his attorneys at Levi & Korsinsky filed the initial lawsuit in the above-captioned matter against Rain. ECF No. 1. The Complaint asserted violations of the Securities Exchange Act of 1934 and SEC Rule 10b-5 occurring between July 20, 2021 to May 19, 2023, inclusive. As such, the lawsuit was subject to the provisions of the Private Securities Litigation Reform Act of 1995, including the procedures regarding the appointment of a lead plaintiff and the various pleading requirements andstandards.

10. On September 12, 2023, in accordance with the PSLRA, Levi & Korsinsky filed a timely motion for lead plaintiff on behalf of its proposed lead plaintiff client, Dr. Thant. ECF. No. 19. One other motion for lead plaintiff was filed but subsequently withdrawn. ECF Nos. 22, 25.

11. On November 1, 2023, the Court appointed Dr. Thant as the Lead Plaintiff. ECF No. 31.

12. Dr. Thant's attorneys at Levi & Korsinsky continued their investigations following the appointment of lead plaintiff. The purpose of this further investigation was to obtain additional factual support for the alleged securities fraud violations that would then be used to amend the initial complaint. Given the pleading standards for securities fraud violations, additional factual support for the allegations was critical in order to defeat a motion to dismiss.

13. Levi & Korsinsky spent the next two and a half months researching the alleged claims. As explained below, this entailed further review of Rain's public statements, relevant analyst reports, and regulatory filings. It also included consultations with experts on issues pertaining to

clinical trial procedures, loss causation, and damages. Counsel also interviewed former employees with information relevant to the allegations.

14.    On January 19, 2024, Plaintiffs filed their Amended Complaint for Violations of the Federal Securities Laws. ECF No. 39. The Amended Complaint asserted the same Exchange Act and Rule 10b-5 violations that were asserted in the Complaint as well as claims under the Securities Act of 1933 focused on alleged misrepresentations in Rain's initial public offering documents, *i.e.*, its registration statement and prospectus. The Amended Complaint also included a significant amount of additional factual support resulting from an intensive investigation that had spanned the course of several months. It included the review and analysis of:

    a.  public statements made by or on behalf of Rain prior to, during and after the Class Period, *i.e.*, a period spanning from mid-2021 to late-2023;

    b.  Rain's quarterly reports, annual reports and press release filings with the SEC, which comprised thousands of pages of corporate financial and operational information;

    c.  investment bank analyst reports providing discussions about Rain's clinical trial plans and commercial readiness;

    d.  interviews with former Rain employees spanning various levels of seniority throughout the company; and

    e.  various public communications by and between investors and Rain including but not limited to those made within the context of securities offerings.

15.    The material obtained by Levi & Korsinsky in the course of its investigation was expansive. It required many hours to digest, evaluate, and incorporate into the Amended Complaint. The product was a comprehensive complaint that provided a complete factual analysis of all public information available at the time that supported claims of securities fraud. For the benefit of context, Levi & Korsinsky's investigation yielded an Amended Complaint that was over 60 pages long compared to the Complaint that was just 21 pages long.

16.    In pertinent part, the Amended Complaint alleged that Rain and its former officers

DECLARATION OF ADAM M. APTON
Case No. 5:23-cv-03518-EJD

and directors misrepresented and/or concealed the risks associated with the company's clinical trial plan for its leading drug candidate, milademetan. While Rain had secured a license to develop the drug from an unrelated third-party who had previously conducted a Phase 1 trial, the data from that early trial was not as strong as Rain had claimed. Consequently, while Rain told investors during its initial public offering and thereafter that the clinical trial data supported advancing straight to a Phase 3 clinical trial, in truth a Phase 2 trial should have been done and would have likely avoided the trial failure that precipitated this action. Plaintiffs relied heavily on academic literature concerning Rain's "Phase 2 Bypass" maneuver to show that advancing straight to the Phase 3 trial presented acute risks above and beyond those normally associated with conducting clinical trials.

17.    On April 3, 2024, Defendants moved to dismiss the Amended Complaint. ECF No. 53. Defendants' motions consisted of extensive legal arguments and factual support and required similarly complex and lengthy responses. In total, the briefing on the motions to dismiss reached nearly 400 pages.

18.    On July 10, 2024, with Defendants' motions fully briefed and scheduled for oral argument on July 18, 2024, the Court issued a notice indicating that it was taking the motion under submission without oral argument and vacated the upcoming hearing. ECF No. 59.

19.    On February 24, 2025, the Court granted in part and denied in part Defendants' motion to dismiss. ECF No. 61. The Court's order changed the dynamics of the case by eliminating as nonactionable many of the alleged misrepresentations and omissions underlying Plaintiffs' theory of liability. This resulted in the dismissal of Rain's former CEO and CMO, Avanish Vellanki and Richard Bryce, respectively (the "Dismissed Defendants"). The order also left Plaintiffs with only one remaining category of misrepresentations, which were Rain's statements in the initial public offering documents about its ability to commence the Phase 3 trial. According to the Court, these statements (referred to as the "Commencement Statements") concealed material risks that were inherent in Rain's stated plan to proceed with the Phase 3 trial. ECF No. 61 at 11-13.

20.    On March 31, 2025, Plaintiffs conducted the Rule 26(f) conference and agreed to a case management schedule, which they later filed on April 18, 2025. ECF No. 67. The case

management schedule raised different motions that the parties intended to file. In addition to routine motions such as motions for class certification and summary judgment, the parties also flagged additional motions. These included Plaintiffs' motion to join and/or substitute PathosAI, Inc. as a defendant in the action as well discovery motions to compel documents from relevant time periods that Defendants had already objected to providing. In addition, Defendants indicated they would be filing a motion for partial judgment under Rule 54(b) in favor of the Dismissed Defendants and a motion to disqualify Lead Plaintiff for being unable to adequately prove standing. The number and nature of disputes raised in the case management schedule accurately captured the contentious nature of the litigation, which continued through discovery and settlement negotiations.

21.     On April 18, 2025, Defendants proceeded with filing their motion for entry of judgment under Rule 54(b) in favor of the Dismissed Defendants. Likewise, on May 7, 2025, Plaintiffs proceeded with filing their motion to join and/or substitute PathosAI, Inc. Both motions were fully briefed and scheduled for oral argument. The Court ultimately vacated the hearings and marked them submitted without oral argument. ECF Nos. 78, 81.

22.     With the various motions pending and discovery underway, the parties agreed to attempt to resolve the action through private mediation with Mr. Jed Melnick, Esq., as their mediator. Mr. Melnick is a well-respected mediator with substantial experience in the field of securities litigation. Plaintiffs' counsel and defense counsel alike routinely use his services to mediate difficult cases. Mr. Melnick requires detailed briefing in advance of any mediation and this case was no exception. The parties submitted full briefs that incorporated facts obtained from pre-mediation discovery conducted in advance of the mediation, which included private correspondence by/between Rain and the FDA as well as materials from Rain's Board of Directors meetings.

23.     The parties scheduled a full day session with Mr. Melnick for August 18, 2025. In advance of the mediation, the parties submitted detailed briefing in support of their respective positions. Although the mediation session did not result in a settlement on August 18, 2025, Mr. Melnick continued negotiations over the following days and weeks.

24.     On September 18, 2025, following further extensive settlement negotiations, Mr.

6

Melnick issued a "mediator's recommendation" on a double-blind basis to settle the matter for $7,250,000. The parties agreed to his recommendation.

25.    On October 22, 2025, Plaintiffs filed their Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Settlement and Memorandum of Points and Authorities in Support Thereof, together with the Stipulation, the proposed Plan of Allocation, the Postcard Notice, the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), the Proof of Claim and Release Form (the "Proof of Claim" and, collectively, the Notice and Proof of Claim are referred to as the "Notice Package"), the Summary Notice, and a request that the Court preliminarily certify the Class. ECF No. 84.

26.    On December 15, 2025, the Court entered an order preliminarily approving the Settlement, approving the form and manner of notice to the Class, and provisionally certifying the Class for settlement purposes (the "Preliminary Approval Order"). ECF No. 87.

27.    Pursuant to the Preliminary Approval Order, a Settlement Hearing is scheduled for April 2, 2026. *Id.*

## III.    PLAINTIFFS' DAMAGES CONSULTANT

28.    As part of their comprehensive investigation of the relevant facts and legal issues, Class Counsel retained the services of an expert consultant from a reputable financial economics firm. The consultant assisted with analyzing the losses associated with declines in the prices of Rain securities as a result of the alleged partial disclosures and statutory damages under Section 11 of the Securities Act as well as Section 10(b) of the Securities Exchange Act. The consultant further assisted with preparing for negotiations of the Settlement and developing the Plan of Allocation.

## IV.    RISKS FACED BY PLAINTIFFS IN THE LITIGATION

29.    Class Counsel are confident that Plaintiffs would be able to prove their securities claims, based on their investigation of the relevant facts and legal issues, their review of the documentary evidence produced by Defendants to date, and their expectation that additional discovery would provide further support. Class Counsel also realize, however, that Plaintiffs would face considerable risks and defenses in continuing to litigate their claims.

7

30. These risks included *inter alia* the possibility that a jury would have found Defendants not liable because their statements in Rain's initial public offering documents (*i.e.*, the registration statement and prospectus) did not materially mislead investors about the risks concerning their clinical trial plan. Although Plaintiffs believed that Defendants concealed an acute risk arising from their "Phase 2 Bypass" strategy, a jury could have considered the evidence and decided that the risk of the Phase 3 trial failing was always present and known, even if the precise reason why the trial failed was not disclosed. Absent a materially misleading statement or omission, Plaintiffs would have lost at trial.

31. In addition, Plaintiffs intended to renew their Section 10(b) claims against the Dismissed Defendants. Their ability to do so was dependent upon obtaining materials in discovery that, in Plaintiffs' opinion, demonstrated that the Dismissed Defendants knew that milademetan's Phase 1 clinical trial results did not support advancing straight to Phase 3. Defendants had indicated that they were not going to voluntarily produce this discovery though because, in their opinion, it did not relate to the operative claims. Whether Plaintiffs would have ultimately prevailed on this discovery dispute was unknown and presented an additional risk to continuing with the litigation.

32. Plaintiffs also faced risk at class certification. Unless and until Plaintiffs successfully renewed the Section 10(b) claims against the Dismissed Defendants, they would have needed to adequately prove standing to pursue the Section 11 claims. This issue of "standing" has become complicated since the Supreme Court's decision in *Slack Technologies, LLC v. Pirani*, 598 U.S. 759 (2023), which holds that a shareholder must be able to demonstrate he or she purchased shares traceable to the registration statement in order to pursue Section 11 claims. Plaintiffs were in the process of obtaining evidence on this point vis-à-vis subpoenas to various broker-dealers but it remained unknown if they would have ultimately been able to adequately demonstrate a chain of custody tracing back to Rain's initial public offering.

33. Defendants also did not engage in any significant insider trading. In securities fraud cases, defendants often rely on this point to demonstrate an absence of fraudulent intent and/or lack of motive to engage in fraudulent conduct. The absence of any individualized pecuniary benefit

8

might have been accepted by the jury as a sign of Defendants' supposed good intent. Plaintiffs would have had to somehow counter or undermine this testimony by explaining why Defendants engaged in fraud even though they did not stand to benefit from it. A jury could have or could not have accepted either side's testimony, thereby creating a significant trial risk.

34.     Plaintiffs faced additional risks relating to the elements of loss causation and damages. Specifically, the federal securities laws allow shareholders to recovery only those damages that are caused by the alleged misconduct. Those damages are often measured by the decline in a stock price following the announcement of materially adverse nonpublic information. Thus, in this case, Plaintiffs needed to demonstrate that the decline in Rain's stock price following the corrective disclosure in May 2023 was causally related to the alleged misrepresented or omitted facts. Defendants would have argued at trial that the decline that followed the corrective disclosure was either not related or only partially related, thereby decreasing the amount of recoverable damages. For example, although Rain's stock price declined significantly following its announcement of the failed Phase 3 trial, Defendants would have argued that the decline was caused by the failure of the trial generally and not because investors thought they had been misled about the risks of the trial itself. If this argument would have been successful, then Plaintiffs would not have been able to recovery any damages.

35.     In addition to the risks discussed above, Plaintiffs faced a litany of routine obstacles if they continued with the litigation. For example, Defendants could have appealed Plaintiffs' class certification (assuming the Court would have granted it) or successfully excluded expert testimony at trial under *Daubert*, leaving Plaintiffs unable to establish liability or damages in front of a jury. Alternatively, even if Plaintiffs succeeded on every issue at trial, Defendants could have appealed the final judgment. These uncertainties, as well as others, support approving the Settlement.

## V.     <u>PLAN OF ALLOCATION</u>

36.     Pursuant to the Preliminary Approval Order, and as set forth in the Notice, all Class Members who wish to participate in the distribution of the Settlement proceeds must submit a valid Proof of Claim, including all required information, postmarked (if mailed) or received (if submitted

9

online) on or before August 20, 2026. As provided in the Notice, after deduction of Court-awarded attorneys' fees and expenses, notice and administration costs, and all applicable taxes, the balance of the Settlement Fund (the "Net Settlement Fund") will be distributed according to the Plan of Allocation. To date, no Class Member has objected to the Plan of Allocation.

37.     The Plan of Allocation, which was set forth and explained in full in the Notice, is designed to achieve an equitable and rational distribution of the Net Settlement Fund, but it is not a formal damages analysis that would be submitted at trial. Class Counsel developed the Plan of Allocation in consultation with Plaintiffs' damages consultant and compensates all Class Members in a uniform manner. Depending on the number of Rain shares held at particular points during the Class Period, Class Members will receive certain amounts of compensation. The compensation received corresponds to the claims asserted in the Amended Complaint.

38.     Specifically, the Plan of Allocation accounts for the declines in the price of Rain stock that occurred on May 22, 2023. As explained in the Amended Complaint, the market reacted to negative news about Rain's failed Phase 3 trial on this date.

39.     The Plan of Allocation provides class members with a recognized loss equal to the number of shares they held at close of trading on May 19, 2023 multiplied by the decline in Rain's stock price that occurred on May 22, 2023. Each class member will then receive a distribution from the Settlement Fund equal to his or her pro rata share of the total recognized losses from all class members. The full terms of the Plan of Allocation are contained in the Notice.

40.     The Court-appointed claims administrator, Strategic Claims Services, under Class Counsel's direction, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each authorized claimant's total recognized loss compared to the aggregate recognized losses of all authorized claimants. Calculation of recognized loss will depend upon several factors, including when the claimants purchased or acquired Proterra securities, and whether the claimants sold Proterra securities during or after the Class Period, and if so, when.

41.     In sum, the Plan of Allocation, developed in consultation with Plaintiffs' damages consultant, was designed to allocate the Net Settlement Fund fairly and rationally among authorized

claimants. Accordingly, Class Counsel respectfully submit that the Plan of Allocation is fair, reasonable, and adequate, and should be approved.

## VI.     CLASS COUNSEL'S FEE AND EXPENSES APPLICATION

42.     Based on the exceptional results obtained for the Class, and the extensive efforts of Class Counsel required to achieve this result, Class Counsel are requesting an award of attorneys' fees in the amount of 25% of the Settlement Amount, plus interest. The percentage-of-the-fund method is the appropriate method of compensating counsel in PSLRA class actions because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum recovery in the shortest amount of time under the circumstances. Numerous courts have applied the percentage-of-the-fund method in awarding fees and doing so is consistent with the PSLRA. *See* 15 U.S.C. §78u-4(a)(6). The percentage sought here is the "benchmark" for attorneys' fee awards in this Circuit, *see In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011), and is merited in light of the results obtained and the efforts exerted in connection therewith.

### A.     The Requested Fee is Reasonable and Supported by Plaintiffs

43.     Class Counsel believe that the requested fee of 25% of the Settlement Amount, plus interest, is fair and reasonable in light of Class Counsel's diligent prosecution of the action, the excellent result achieved in securing a significant and certain recovery for the Class, the complexity of the factual and legal issues presented in the action, and the substantial risks and uncertainties of these and the other factors described in this Declaration, as well as the fact that the 25% fee request is consistent with fee awards in complex class actions within this District and the Ninth Circuit, the requested fee is well-supported.

44.     In addition, Plaintiffs are sophisticated individual investors, each having invested in the stock market for many years, and many having prior experience overseeing and hiring counsel for general litigation matters as business owners and/or through their professional careers. Plaintiffs have evaluated and fully support Class Counsel's fee and expense application. *See* Thant Decl., ¶¶4-5; Schenkuizen Decl., ¶¶6-7.

11

DECLARATION OF ADAM M. APTON
Case No. 5:23-cv-03518-EJD

**B.      The Risks and Unique Complexities of the Action Support Requested Fee**

45.      The action presented substantial challenges from the outset. The specific risks that were faced in proving Defendants' liability and damages are detailed herein.

46.      Class Counsel respectfully submit that any assessment of the requested fee should appropriately account for those significant risks. And given the exceptional result was achieved for the Class in the face of these risks, Class Counsel should be rewarded accordingly. Indeed, without the efforts and skill of Class Counsel, this Settlement would not have been consummated. Further, these risks are in addition to the more typical risks accompanying securities class actions, including that the Action was undertaken on a contingent basis.

47.      In that regard, Class Counsel understood from the outset of the action that they were embarking on complex, expensive, and lengthy litigation with no guarantee of being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Class Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, and that funds were available to compensate staff and to cover the considerable expenses that cases such as this require. With an average lag time of several years for these cases to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Class Counsel have received no compensation during the course of the Action, but has incurred nearly 1,582.10 hours of time, for a total lodestar of $1,040,810, and has incurred $72,819.51 in expenses and charges in prosecuting the action for the benefit of the Class (including an estimated $3,500 in travel expenses allocated for the final approval hearing). *See* ¶¶57, 62, *infra*.

48.      Class Counsel also bore the risk that no recovery would be achieved (or that a judgement could not be collected, in whole or in part). Even with the most vigorous and competent efforts, success in contingent-fee litigation, such as this, is never assured.

49.      Class Counsel knows from experience that the commencement of a class action does not guarantee a recovery. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to convince

12

sophisticated defendants to engage in serious settlement negotiations at meaningful levels.

50. Class Counsel is aware of many hard-fought lawsuits where because of the discovery of facts unknown when the case commenced, changes in the law during the pendency of the litigation, or a decision of the court or a jury verdict following a trial on the merits, exceptional professional efforts of members of the plaintiffs' bar produced no fee for counsel.

51. Accordingly, even if Plaintiffs had successfully obtained favorable evidence through discovery, defeated a motion for summary judgment, and sustained class certification, there is no guarantee that Plaintiffs would have prevailed at trial. Indeed, while only a modest number of securities class actions have been tried before a jury, some have been lost in their entirety. Additionally, a plaintiff who succeeds at trial still may find its verdict overturned on appeal. And, even when a plaintiff wins a jury verdict, it still may face substantial challenges in securing a recovery.

52. When Class Counsel undertook to act on behalf of the Class in this matter, they were aware that the only way it would be compensated for its efforts was to achieve a successful result. The benefits conferred on the members of the Class by the Settlement are noteworthy in that a common fund worth $7.25 million was obtained for the Class despite the existence of substantial risks and Defendants' zealous and vigorous defense.

53. Here, diligent efforts by Class Counsel in the face of substantial risks and uncertainties have resulted in a significant and immediate recovery for the benefit of the Class. In circumstances such as these, and in consideration of the substantial effort expended, the requested fee of 25% of the Settlement Amount and the request payment of $72,819.51 in expenses are reasonable and should be approved.

**C.    A Lodestar Cross-Check Supports the Requested Fee**

54. A lodestar cross-check supports the requested attorneys' fees. A lodestar cross-check is performed by multiplying the number of hours expended in the litigation by the hourly rates of the attorneys. While a lodestar cross-check is often a useful tool in determining the reasonability of a fee request, whether or not to perform one is within the Court's discretion.

13

55. The Settlement occurred only after Class Counsel spent significant time and effort prosecuting the action, including thoroughly investigating the claims asserted; researching and preparing the Amended Complaint; defeating Defendants' motions to dismiss; negotiating with Defendants to obtain documents pursuant to Plaintiffs' requests for production; reviewing and analyzing documents produced by Defendants; consulting with loss causation, market efficiency, and damages experts; and engaging in an arm's-length mediation process, including the preparation of a detailed mediation statement and the engagement in extensive settlement discussions. At all times throughout the pendency of the action, Class Counsel's efforts were driven and focused on advancing the action to bring about the most successful outcome for the Class, whether through settlement or trial, by the most efficient means possible.

56. Here, Class Counsel has expended 1,582.10 hours in the prosecution and investigation of the action. The information in this declaration regarding the Firm's time and expenses is taken from time and expense reports and supporting documentation prepared and/or maintained by the Firm in the ordinary course of business. I am the partner who oversaw and/or conducted the day-to-day activities in the action, and I reviewed these reports (and backup documentation where necessary or appropriate) in connection with the preparation of this declaration. The purpose of this review was to confirm both the accuracy of the entries as well as the necessity for, and reasonableness of, the time and expenses committed to the litigation. Based on this review and any adjustments made in the exercise of billing judgment, I believe that the time reflected in the Firm's lodestar calculation and the expenses for which payment is sought herein are reasonable and were necessary for the effective and efficient prosecution and resolution of the action.

57. The number of hours spent on the litigation and settlement of the claims asserted in the action by Class Counsel is 1,582.10. A breakdown of the lodestar is provided in the table below. The lodestar amount for attorney and administrative professional time based on the Firm's current rates is $1,040,810. The hourly rates are consistent with hourly rates submitted by the Firm in other securities class actions, including in this District. The Firm's rates are set based on periodic analysis of rates charged by firms performing comparable work both on the plaintiff and defense side. For

personnel who are no longer employed by the Firm, the "current rate" used for the lodestar calculation is based upon the rate for that person in his or her final year of employment with the Firm.

| Employee | Status | Total Hours | Hourly Rate | Total |
|---|---|---|---|---|
| Adam Apton | Partner | 433.50 | $ 1,100.00 | $476,850.00 |
| Melissa Meyer | Associate | 11.50 | $ 650.00 | $7,475.00 |
| Devyn Glass | Associate | 71.00 | $ 675.00 | $47,925.00 |
| Azlyne Zheng | Associate | 40.00 | $ 550.00 | $22,000.00 |
| Christina Fuhrman | Staff Attorney | 15.00 | $ 475.00 | $7,125.00 |
| Michael Bredimus | Staff Attorney | 493.00 | $ 475.00 | $234,175.00 |
| Michael Robinson | Staff Attorney | 18.70 | $ 475.00 | $8,882.50 |
| Paul Bly | Staff Attorney | 469.30 | $ 475.00 | $222,917.50 |
| Jeremy Hudia | Staff Attorney | 23.00 | $ 475.00 | $10,925.00 |
| Jenn King | Paralegal | 0.50 | $ 450.00 | $225.00 |
| Samantha Phillips | Paralegal | 1.25 | $ 350.00 | $437.50 |
| Stephanie Viera | Paralegal | 4.10 | $ 350.00 | $1,435.00 |
| Arden Westphalen | Paralegal | 1.25 | $ 350.00 | $437.50 |
| | | **1,582.10** | | **$1,040,810.00** |

58.    As illustrated above, the resulting lodestar is $1,040,810. Pursuant to a lodestar "cross-check," the requested fee of 25% of the Settlement Amount (which equates to $1,812,500 million, plus interest) results in a "multiplier" of approximately 1.75x on the lodestar, which does not include any time that will necessarily be spent obtaining approval of and thereafter administering the Settlement. Indeed, additional work will be required by Class Counsel on an ongoing basis, including: preparation for, and participation in, the final approval hearing; responding to any objections; supervising the claims administration process being conducted by the Claims Administrator (including responding to inquiries from Class Members); and supervising the distribution of the Net Settlement Fund to Class Members who have submitted valid Proofs of Claim. Class Counsel will not seek payment for this work. Moreover, as further detailed in the Fee Memorandum, this level of multiplier is well within the range of multipliers approved in this Circuit and elsewhere.

DECLARATION OF ADAM M. APTON
Case No. 5:23-cv-03518-EJD

**D.      The Standing and Expertise of Class Counsel Supports the Requested Fee**

59.      Levi & Korsinsky, LLP, Court-appointed Lead Counsel for Plaintiffs and the Class and Class Counsel for the Settlement Class, is highly experienced in complex securities class actions and has successfully prosecuted numerous securities class action lawsuits in this Circuit and throughout the country. Levi & Korsinsky has often been appointed as lead or co-lead counsel in scores of securities class actions in this Circuit and across the country. Moreover, Levi & Korsinsky has obtained numerous favorable judgments in these actions on behalf of investors. *See* Firm Resume, Exhibit 1.

**E.      The Standing and Caliber of Defendants' Counsel Supports the Requested Fee**

60.      Defendants were represented throughout the action by Gibson, Dunn & Crutcher LLP, a well-respected law firm with substantial resources and expertise in the defense of complex securities litigation. This prominent law firm and their attorneys zealously provided their clients with a vigorous and aggressive defense of the action. In the face of this formidable opposition, Class Counsel developed the action and successfully negotiated the Settlement for the Class.

**F.      The Financial Burden Carried by Class Counsel Supports the Requested Fee**

61.      From the beginning of the action, Class Counsel was aware that they might not recovery any of their expenses and, at the very least, would not recovery anything under the action was successfully resolved. Thus, they were motivated to, and did, take steps to minimize expenses whenever possible and practicable without jeopardizing the vigorous and efficient prosecution and ultimately resolution of the action.

62.      The expenses for which Class Counsel seek repayment of in the amount of $72,819.51 from the Settlement Fund are the types of expenses that are necessarily incurred in litigation and routinely charged to litigants who are billed by the hour. These expenses include, among other things, travel costs, computer-based research expenses, and mediator and expert fees. These charges are summarized by category below:

| Category | Amount |
|---|---|
| Filing Fees | $402.00 |

16

DECLARATION OF ADAM M. APTON
Case No. 5:23-cv-03518-EJD

| Process Server | $247.80 |
|---|---|
| Travel | $3,775.45 |
| Mediation | $19,490.25 |
| Investigation | $10,104.75 |
| Experts | $16,390.00 |
| Notice Costs | $15,772.00 |
| Electronic Research | $2,146.06 |
| E-Discovery | $991.20 |
| Est. Travel Costs (Final Approval Hearing) | $3,500.00 |
| Total: | $72,819.51 |

63.    The following is additional information regarding certain of these expenses:

(a)    Filing, Witness and Other Fees: $649.80. These expenses have been paid to the Court for filing fees and to attorney service firms or individuals who either: (i) served process of the complaint or subpoenas; or (ii) obtained copies of court documents for Plaintiffs.

(b)    Transportation, Hotels & Meals: $7,275.45. In connection with the prosecution of this case, the Firm has paid for travel expenses for Adam Apton to travel to San Jose, California to attend hearings. The Firm also anticipates an additional $3,500 to be incurred in connection with attending the final approval hearing.

(c)    Online Legal and Financial Research: $2,146.06. This category includes vendors such as LexisNexis, CourtLink, CapitalIQ, Pacer, and Thomson Reuters-Westlaw. These resources were used to obtain access to SEC filings, factual databases, legal research, and for proofreading and "bluebooking" court filings (including checking all legal authorities cited and quoted in briefs) in the Action. This category represents the expenses incurred by the Firm for use of these services in connection with this Action. The charges for these vendors vary depending upon the type of services requested. For example, the Firm has flat-rate contracts with some of these providers for use of their services. When the Firm utilizes online services provided by a vendor with a flat-rate contract, access to the service is by a billing code entered for the specific case being

17

litigated. At the end of each billing period in which such service is used, the Firm's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period. As a result of the contracts negotiated by the Firm with certain providers, the Class enjoys substantial savings in comparison with the "market-rate" for a la carte use of such services which some law firms pass on to their clients. For example, the "market-rate" charged to others by LexisNexis for the types of services used by the Firm is more expensive than the rates negotiated by the Firm.

(d)    eDiscovery Database Hosting: $991.20. The Firm requests reimbursement for hosting eDiscovery related to this Action. The Firm has installed top tier database software, infrastructure, and security. The platform implemented, Relativity, is offered by over 100 vendors and is currently being used by 198 of the AmLaw200 firms. Over 50 servers are dedicated to the Firm's Relativity hosting environment with all data stored in a secure SSAE 18 Type II data center with automatic replication to a datacenter located in a different geographic location. By hosting in-house, the Firm is able to charge a reduced, all-in rate that includes many services which are often charged as extra fees when hosted by a third-party vendor. The Firm's hosting fee includes user logins, ingestion, processing, OCRing, TIFFing, bates stamping, productions, and archiving – all at no additional per unit cost. Also included is unlimited structured and conceptual analytics (*i.e.*, email threading, inclusive detection, near-dupe detection, concept searching, active learning, clustering, and more). The Firm is able to provide all these services for a cost that is typically much lower than outsourcing to a third-party vendor. Utilizing a secure, advanced platform in-house has allowed the Firm to prosecute actions more efficiently, utilize advanced AI technology, and has reduced the expense associated with maintaining and searching electronic discovery databases. Similar to third-party vendors, the Firm uses a tiered rate system to calculate hosting charges.

(e)    Mediation Fees (JAMS): $19,490.25. Mediator, Jed Melnick, Esq. of JAMS, conducted an extensive mediation session, with numerous follow-up telephone conferences between the parties. Ultimately, Mr. Melnick presented a Mediator's Proposal that was accepted by all the parties and resulted in the Settlement of the action.

18

(f)    Investigation and Experts: $26,494.75. Class Counsel retained several outside consultants who provided investigative and expert consulting services. These services included research and interviews with former Rain employees as well as analysis of FDA regulatory conduct and market financial econometrics to help develop damages estimates and a plan of allocation. The services provided by these outside consultants was extremely beneficial to the prosecution of this Action because they, among other things, they provided Plaintiffs with the necessary factual allegations to properly allege the claims that ultimately survived Defendants' motion to dismiss.

64.    These expenses and charges are reflected on the books and records maintained by Class Counsel. These books and records are prepared from expense vouchers, check records, and other source materials, and are an accurate record of the expenses and charged incurred by Class Counsel.

65.    All of the litigation expenses and charges incurred by Class Counsel, which total $72,819.51, were necessary for the successful prosecution and resolution of the claims against Defendants in this Action (including the estimated $3,500 travel costs associated with attending the final approval hearing).

**G.    The Reaction of the Class Supports the Fee and Expense Application**

66.    Consistent with the Preliminary Approval Order, as of January 27, 2026, a total of 15,691 Postcard Notices have been emailed or mailed to potential Class Members and nominees. *See* Declaration of Sarah Evans, ¶8. The Postcard Notice and the Notice stated that Class Counsel would seek an award of attorneys' fees of no more than 25% of the Settlement Amount, plus interest, and repayment of litigation expenses in an amount not greater than $75,000, plus interest. Additionally, the Summary Notice was transmitted over *Globe Newswire*. *Id*. at ¶9. In addition, the Notice is available on the Settlement website maintained by Strategic Claims Services, www.RainOncologySettlement.com. *Id*. at ¶11.

67.    While the March 5, 2026 deadline set by the Court for Class Members to object to the requested fees, expenses, and charges has not yet passed, to date, no objections have been

received. Evans Decl. at ¶13. Plaintiffs will respond to any objections received by the March 19, 2026 deadline for reply papers.

**VII.    PLAINTIFFS' AWARD PURSUANT TO THE PSLRA**

68.    Pursuant to the PSLRA, 15 U.S.C. §§ 77z-1(a)(4) and 78u-4(a)(4), Plaintiffs seek an award to recover unreimbursed costs incurred in connection with their representation of the Class (including the cost of time spent). Class Counsel believe that Plaintiffs involvement in the action conferred considerable benefit upon the Class, and that their efforts, if directed elsewhere, would be worth far more than the collective $15,000 award requested.

69.    Among the tasks Plaintiffs have performed in executing their duties and responsibilities as representatives in this action include: (i) reviewing the original complaint and the amended complaint, and providing feedback regarding the drafting of these documents, and investigating the allegations set forth therein; (ii) interfacing with Class Counsel regarding litigation and mediation strategies, including regular communications via phone and email; (iii) gathering trading activity in Rain stock; (iv) reviewing the briefing of Defendants' motions to dismiss; (v) gathering case-related documents as requested by Class Counsel; (vi) discussing settlement authority, settlement negotiations, and the stipulation of settlement with Class Counsel; and (vii) reviewing the motion for preliminary approval and supporting papers. *See* Thant Decl., ¶2; Schenkuizen Decl., ¶4.

70.    Courts in this District, and elsewhere, have consistently approved as reasonable incentive or service awards for class representatives that are in line with and/or higher than those requested here. Further, the Notice informed Class Members that Class Counsel would seek an award of $10,000 for Lead Plaintiff Thant and an award of $5,000 for additional named Plaintiff Schenkuizen in connection with the representation of the Class in the action. As of today's date, there have been no objections to these requested awards to Plaintiffs. *See* Evans Decl. at ¶13.

**VIII.    EXHIBITS**

71.    Attached hereto as Exhibit 1 is a true and correct copy of Levi & Korsinsky, LLP's Firm Resume.

20

DECLARATION OF ADAM M. APTON
Case No. 5:23-cv-03518-EJD

72.     Attached hereto as Exhibit 2 is a true and correct copy of Cornerstone's report titled "2024 Review & Analysis: Securities Class Action Settlements."

73.     Attached hereto as Exhibit 3 is a true and correct copy of William B. Rubenstein, *On Plaintiff "Incentive" Payments*, Class Action Attorney Fee Digest (Vol. 1, Apr. 2007).

## IX.     CONCLUSION

74.     In view of the certain, timely, and meaningful recovery to the Class and the substantial risks, costs, and delay of continued litigation, as described above and in the accompanying briefing, Class Counsel respectfully submits that the Settlement should be approved as fair, reasonable, and adequate, and that the Plan of Allocation should likewise be approved as fair and reasonable. Further, in view of the significant recovery achieved in the face of substantial risks, the quality of work performed, the contingent nature of the fee, and the standing and experience of Class Counsel, Class Counsel respectfully request that the Court award attorneys' fees in the amount of 25% of the Settlement Amount, plus expenses and charges in the amount of $72,819.51, plus the interest accrued on both amounts, and award Lead Plaintiff Thant $10,000 and additional Plaintiff Schenkuizen $5,000, in the aggregate amount of $15,000, for their time and resources expended for the benefit of the Class, pursuant to the PSLRA.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 29th day of January 2026.

_____
ADAM M. APTON

# EXHIBIT 1

# LEVI&KORSINSKY
## Shareholder Advocates

## Firm Resume

# Representation.
# Where & When you need it.

**New York**

33 Whitehall Street
27th Floor
New York, NY 10004
Tel : 212-363-7500
Fax : 212-363-7171

**Washington, D.C.**

1101 Vermont Ave., NW
Suite 800
Washington, DC 20005
Tel: 202-524-4290
Fax: 202-333-2121

**Connecticut**

1111 Summer Street,
Suite 403
Stamford, CT 06905
Tel : 203-992-4523

**Los Angeles**

515 South Flowers Street
18th and 19th Floors
Los Angeles, CA 90071
Tel: 213-985-7290

**San Francisco**

1160 Battery Street East,
Suite 100 - #3425
San Francisco, CA 94111
Tel: 415-373-1671
Fax: 415-484-1294

 Levi & Korsinsky, LLP

 Merger Alerts

www.ZLK.com

# Contents

## About the Firm

## Practice Areas

Securities Fraud Class Actions

Derivative, Corporate Governance & Executive Compensation

Mergers & Acquisitions

Consumer Litigation

## Our Attorneys

### Managing Partners
- EDUARD KORSINSKY
- JOSEPH E. LEVI

### Partners
- ADAM M. APTON
- DONALD J. ENRIGHT
- SHANNON L. HOPKINS
- GREGORY M. NESPOLE
- NICHOLAS I. PORRITT
- GREGORY M. POTREPKA
- MARK S. REICH
- DANIEL TEPPER
- ELIZABETH K. TRIPODI

### Counsel
- ANDREW E. LENCYK
- BRIAN STEWART

### Senior Associates
- JORDAN A. CAFRITZ
- MORGAN EMBLETON
- DAVID C. JAYNES
- CORREY A. SUK

### Associates
- CHRISTOPHER DEVIVO
- AMANDA FOLEY
- NOAH GEMMA
- DEVYN R. GLASS
- GARY ISHIMOTO
- TRAVIS JOHNSON
- JOSHUA KLUGER
- ALEXANDER KROT
- TYLER LITKE
- MELISSA MEYER
- JENNIFER MITTASCH
- CINAR ONEY
- AARON PARNAS
- MICHAEL POLLACK
- P. COLE VON RICHTHOFEN
- MAX WEISS
- TRENTON B. WEIS
- TYLER WINTERICH
- AZLYNE ZHENG

### Staff Attorneys
- PHILIP AHWESH
- KATHY AMES-VALDIVIESO
- KAROLINA CAMPBELL
- LEAH FARRAR
- CHRISTINA FUHRMAN
- RUBEN MARQUEZ
- LEEANN MONTEVERDE
- CATHERINE SOO



LEVI&KORSINSKY
Shareholder Advocates

# About the Firm

Levi & Korsinsky, LLP is a national law firm with decades of combined experience litigating complex securities, class, and consumer actions in state and federal courts throughout the country. Our main office is located in New York City and we also maintain offices in Connecticut, California, and Washington, D.C.

We represent the interests of aggrieved shareholders in class action and derivative litigation through the vigorous prosecution of corporations that have committed securities fraud and boards of directors who have breached their fiduciary duties. We have served as Lead and Co-Lead Counsel in many precedent–setting litigations, recovered hundreds of millions of dollars for shareholders via securities fraud lawsuits, and obtained fair value, multi-billion dollar settlements in merger transactions.

We also represent clients in high-stakes consumer class actions against some of the largest corporations in America. Our legal team has a long and successful track record of litigating high-stakes, resource-intensive cases and consistently achieving results for our clients.

Our attorneys are highly skilled and experienced in the field of securities class action litigation. They bring a vast breadth of knowledge and skill to the table and, as a result, are frequently appointed Lead Counsel in complex shareholder and consumer litigations in various jurisdictions. We are able to allocate substantial resources to each case, reviewing public documents, interviewing witnesses, and consulting with experts concerning issues particular to each case. Our attorneys are supported by exceptionally qualified professionals including financial experts, investigators, and administrative staff, as well as cutting-edge technology and e-discovery systems. Consequently, we are able to quickly mobilize and produce excellent litigation results. Our ability to try cases, and win them, results in substantially better recoveries than our peers.

We do not shy away from uphill battles – indeed, we routinely take on complex and challenging cases, and we prosecute them with integrity, determination, and professionalism.











3



# Practice Areas

- **Securities Fraud Class Actions**

- **Derivative, Corporate Governance & Executive Compensation**

- **Mergers & Acquisitions**

- **Consumer Litigation**

 # Securities Class Action

Over the last several years, Levi & Korsinsky has been lead or co-lead counsel in more than 50 securities class actions that have resulted in over $200 million in recoveries for investors. Currently, the Firm is actively litigating numerous securities class actions, as either sole or co-lead counsel, claiming billions of dollars in damages suffered by injured investors. Since 2020, Levi & Korsinsky has consistently ranked in the Top 10 in terms of number of settlements achieved for shareholders each year, according to reports published by ISS. Levi & Korsinsky was also ranked as one of the Top 5 Securities Firms for the period from 2018 to 2020 in Lex Machina's Securities Litigation Report. Law360 dubbed Levi & Korsinsky one of the "busiest securities firms" in what is "on track to be one of the busiest years for federal securities litigation" in 2018. Since 2019, Lawdragon Magazine has ranked multiple members of Levi & Korsinsky among the 500 Leading Plaintiff Financial Lawyers in America.

**Some of the Firm's recent settlements include:**

In **In re Grab Holdings Securities Litigation**, No. 1:22-cv-02189-JLR (S.D.N.Y.), the Firm served as co-Lead Counsel and obtained a $80 million recovery on behalf of investors. There, co-Lead Plaintiffs alleged that Defendants made false and misleading statements concerning Grab's driver supply and incentive spending during its public debut. Co-Lead Counsel achieved this excellent result after prevailing against Defendants' Motion to Dismiss and while in the midst of discovery. On January 13, 2025, the U.S. District Court for the Southern District of New York granted preliminary approval of the settlement. The hearing on the Motion for Final Approval is scheduled for May 15, 2025.

In **In re QuantumScape Securities Clas Action**, No. 3:21-cv-00058-WHO (N.D. Cal.), the Firm attained a $47.5 million recovery on behalf of a class of investors who sustained damages in connection with claims alleging that QuantumScape misled the public about its prototype battery during its December 8, 2020 Solid-State Battery Showcase and in subsequent public statements. This significant recovery was achieved after over three years of vigorous litigation during which counsel defeated Defendants' motion to dismiss and obtained class certification. The Court granted final approval on January 22, 2025.



 # Securities Class Action

In **In re U.S. Steel Consolidated Cases**, No. 2:17-579-CB (W.D. Pa.), the Firm obtained a $40 million recovery on behalf of a certified class of U.S. Steel investors who sustained damages in connection with false and materially misleading statements about its Carnegie Way initiative. The settlement followed years of hard-fought discovery and class certification litigation.

In **Kohl v. Loma Negra Industrial Argentina Sociedad Argentina, Index**, No. 653114/2018 (Sup. Ct., N.Y. Cty.), the Firm secured a $24.6 million recovery on behalf of a class of investors who sustained damages in connection with materially false, misleading and incomplete statements made during Loma Negra's November 2017 IPO concerning:  (i) bribery and other corruption-related wrongdoing by Loma's parent company and its construction subsidiary; and (ii) the Argentine government's cutbacks of funding for public works, from which Loma derived substantial revenues. This hard-won result was achieved after Plaintiff prevailed against Defendants' motion to dismiss, survived Defendant's appeal of the motion to dismiss order, defeated Defendant's motion for summary judgment, obtained class certification, and overcame appeals of both the motion for summary judgment and class certification orders.

> ❝ **"I find the firm to be well-qualified to serve as Lead Counsel."**
>
> The Honorable Andrew L. Carter, Jr. In *Snyder v. Baozun Inc.*, No. 1:19-cv-11290-ALC-KNF (S.D.N.Y. Sept. 8, 2020)

In **Rougier v. Applied Optoelectronics, Inc.**, No. 4:17-cv-2399-GHC-CAB (S.D. Tex.), the Firm served as sole Lead Counsel, prevailed against Defendants' Motion to Dismiss, and achieved class certification before the Parties reached a settlement. The Court granted final approval of a $15.5 million settlement on November 24, 2020. In Martin v. Altisource Residential Corp., No. 15- cv-00024 (AET) (GWC) (D.V.I.) the Firm acted as sole Lead Counsel and successfully defeated multiple motions to dismiss directed at the amended class complaints alleging that Defendants misrepresented aspects of its relationship with mortgage servicer Ocwen Financial Corp. After engaging in substantial discovery, the Firm obtained a $15.5 million recovery for the class of Altisource Residential investors.

> ❝ **"lead counsel achieved a very good result in this case"**
>
> The Honorable Lewis J. Liman in *In re AppHarvest Securities Litigation,* No. 1:21-cv-7985 (S.D.N.Y July 11, 2024)



**Practice Areas**

 ## Securities Class Action

In **Ferraro Family Foundation, Inc. et al. v. Corcept Therapeutics Incorporated, et al**., No. 3:19-cv-01378-JD (N.D. Cal.), the Firm served as sole Lead Counsel and obtained a $14 million recovery on behalf of a class investors who suffered damages in connection with false and misleading statements related to Corcept's marketing of its prescription medicine, Korlym. The settlement followed years of hard-fought litigation and extensive discovery.

In **Pratyush v. Full Truck Alliance Co. Ltd., at el**., No. 1:21-cv-03903-LDH-MMH (E.D.N.Y.), the Firm obtained a $10.25 million settlement that globally resolved both the above-cited federal action and the state action, In re Full Truck Alliance Co. Ltd. Sec. Litig., No. 654232/2021 (Sup. Ct. N.Y. Cnty.). Both actions concerned false and misleading statements relating to Full Truck's compliance with orders by Chinese government regulators to modify its business practices, which were made in connection with the company's public debut. This settlement was reached at a time when motions to dismiss filed by the Defendants were still pending in both actions and as such, posed a risk to the classes.

> "Plaintiffs' selected Class Counsel, the law firm of Levi & Korsinsky, LLP, has demonstrated the zeal and competence required to adequately represent the interests of the Class. The attorneys at Levi & Korsinsky have experience in securities and class actions issues and have been appointed lead counsel in a significant number of securities class actions across the country."

The Honorable Christina Bryan in *Rougier v. Applied Optoelectronics, Inc*., No. 4:17-cv-02399-GHC-CAB (S.D. Tex. Nov. 13, 2019)

In **In re Nano-X Securities Litigation**, No. 1:21-cv-05517-RPK-PK (E.D.N.Y.), the Firm obtained a $8 million recovery to globally resolve federal securities claims alleged against Nano-X Imaging Ltd. in the above-referenced In re Nano-X action and in White v. Nano-X Imaging Ltd., No. 1-20-cv-04355-WFK-MMH (E.D.N.Y.). The In re Nano-X action concerned false and misleading statements relating to Nano-X's claims that its imaging system could be manufactured at costs far lower than current systems and claims that such technology would work at least as well as existing technologies. This global settlement was reached at a time when a motion to dismiss filed by the Defendants were still pending in the In re Nano-X action and as such, posed a risk of dismissal.

 **LEVI&KORSINSKY** Shareholder Advocates



 **Practice Areas**

# Securities Class Action

Levi & Korsinsky has been appointed lead or co-lead counsel in the following securities actions:

• **Morand v. Tesla, Inc., et al.,**
No. 1:25-cv-01213-RP (W.D. Tex. December 9, 2025)

• **Omar Abdul-Hameed v. Snap Inc., et al,**
No. 2:25-cv-07844-RGK-RAO (C.D. Cal. December 5, 2025)

• **Bhagavan v. Nutex health Inc., et al.,**
No. 4:25-cv-03999 (S.D. Tex. November 19, 2025).

• **Kalera v. ModivCare, Inc., et al.,**
No. 1:25-cv-00306-GPG-KAS (D. Colo. October 27, 2025)

• **Leong v. Capricor Therapeutics, Inc., et al.,**
No. 3:25-cv-01815-GPC-AHG (S.D. Cal. October 14, 2025)

• **Savant v. iRobot Corporation, et al.,**
No. 1:25-0cv-05563 (S.D.N.Y. October 3, 2025)

• **Cesar Torres v. Vestis Corporation, et al.,**
No. 1:25-cv-04844 (S.D.N.Y. August 25, 2025)

• **Jeremy Lin v. Civitas Res., Inc.,**
No. 25-cv-03791-ES-JRA (D.N.J. August 18, 2025).

• **Franciso Barnes v. Perpetua Resources Corp. et al.,**
No. 1:25-cv-00160-DKG (D. Idaho June 16, 2025)

• **Drew Cohen v. Quantum Computing Inc. et al,**
No. 2:25-cv-01457-MEF-JSA (D.N.J. June 13, 2025)

• **In Re Geron Corp. Securities Lit.,**
No. 3:25-cv-02507-CRB (N.D. Cal., May 29, 2025)

• **Macaria Meza v. Constellation Brands, Inc., et al,**
No. 6:25-cv-06107-EAW (W.D.N.Y. May 28, 2025)

• **Marcos Gonzalez v. Intellia Therapeutics, Inc., et al.,**
No. 1:25-cv-10353-DJC (D. Mass. May 26, 2025)

> **" In appointing the Firm Lead Counsel, the Honorable Analisa Torres noted our "extensive experience" in securities litigation.**
> *White Pine Invs. v. CVR Ref.*, LP, No. 1:20-CV-2863-AT (S.D.N.Y. Jan. 5, 2021)

• **In re Transocean Ltd. Securities Litigation,**
No. 1:24-cv-00964-AT (S.D.N.Y. April 23, 2025)

• **Sarria v. Telus International (CDA) Inc., et al.,**
No. 1:25-cv-00889-DM (S.D.N.Y April 11, 2025)

• **Shim v. DZS Inc., et al.,**
No. 4:23-CV-549-SDJ (E.D. Tex. February 26, 2025)

• **Walker v. Chidambaran et al.,**
No. 8:24-cv-02900-DKC (D. Md. February 27, 2025)

• **Wilson v. Xerox Holdings Corp.,**
No. 1:24-cv-08809-DH (S.D.N.Y., February 18, 2025)

• **Khajerian v. Seastar Med. Holding Corp., et al,**
No. 1:24-cv-01873-RMR (D. Colo. December 27, 2024)

• **Holzer v. Bumble Inc., et al.,**
No. 1:24-cv-01131-RP (W.D. Tex. December 19, 2024)

• **In re New Fortress Energy Inc. Securities Litigation,**
No. 1:24-cv-07032-JGK (S.D.N.Y. December 17, 2024)

• **Stary v. Teladoc, Inc. et al.,**
No. 7:24-cv-03849-KMK (S.D.N.Y. December 10, 2024)

• **Hoare V. Oddity Tech Ltd. et al.,**
No. 1:24-cv-06571-MMG (S.D.N.Y. December 5, 2024)

• **In re American Airlines Group Inc. Securities Litigation**
No. 4:24-cv-00673-O (N.D. Tex. November 22, 2024)



 **Practice Areas**

 # Securities Class Action

· **Beaumont v. Paucek, et al.,**
No. 8:24-cv-01723-DLB (D. Md. September 13, 2024)

· **Li V. Roblox Corp. et al.,**
No. 3:24-cv-03484-MMC (N.D. Cal. August 27, 2024)

· **Edward M. Doller v. Hertz Global Holdings, Inc. et al.,**
No. 2:24-cv-00513-JLB-KCD (M.D. Fla. August 14, 2024)

· **Targgart V. Next Bridge Hydrocarbons, Inc. et al.,**
No. 1:24-cv-01927-FB-JAM (E.D.N.Y. August 3, 2024)

· **Stephens v. Maplebear Inc., et al.,**
No. 5:24-cv-00465-EJD (N.D. Cal. July 1, 2024)

· **Blum v. Anavex Life Sciences Corporation et al.,**
No. 1:24-cv-01910-CM (S.D.N.Y. June 13, 2024)

· **Lucid Alternative Fund, LP v. Innoviz Technologies Ltd., et al.,**
No. 1:24-cv-01971-AT (S.D.N.Y. June 4, 2024)

· **Neilsen v. Lantronix, Inc., et al.,**
No. 8:24-cv-00385-FWS-JDE (C.D. Cal. May 7, 2024)

· **Ventrillo et al v. Paycom Software Inc et al,**
No. 5:23-cv-01019 (W.D. Okla. April 23, 2024)

· **Shih v. Amylyx Pharmaceuticals, Inc. et al,**
No. 1:24-cv-00988-AS (S.D.N.Y. April 17, 2024)

· **Olmstead v. Biovie, Inc. et al,**
No. 3:24-cv-00035-LRH-CSD (D. Nev. April 15, 2024)

· **Wilhite v. Expensify, Inc., et al.,**
No. 3:23-cv-01784-JR (D. Or. February 29, 2024)

· **Walling v. Generac Holdings, Inc., et al.,**
No. 3:23-cv-0808 (W.D. Wis. February 7, 2024)

 ## "I find the firm to be well-qualified to serve as Lead Counsel."

The Honorable Andrew L. Carter, Jr. In *Snyder v. Baozun Inc.*, No. 1:19-CV-11290 (S.D.N.Y. Sept. 8, 2020)

· **Hubacek v. ON Semiconductor Corporation et al.,**
No. 1:23-cv-01429-GBW (D. Del. February 29, 2024)

· **Ragan v. Farfetch Limited, et al.,**
No. 8:23-cv-2857-MJM (D. Md. January 19, 2024)

· **Gurevitch v. KeyCorp et al.,**
No. 1:23-cv-01520-DCN (N.D. Ohio December 26, 2023)

· **Lowe v. Tandem Diabetes Care, Inc. et al.,**
No. 3:23-cv-01657-H-BLM (S.D. Cal. December 5, 2023)

· **Perez v. Target Corporation et al.,**
No. 0:23-cv-00769-PJS-TNL (D. Minn. November 13, 2023)

· **Thant v. Rain Oncology Inc. et al.,**
No. 5:23-cv-03518-EJD (N.D. Cal. November 1, 2023)

· **Villanueva v. Proterra Inc. et al.,**
No. 5:23-cv-03519-BLF (N.D. Cal. October 23, 2023)

· **Martin v. BioXcel Therapeutics, Inc. et al.,**
No. 3:23-cv-00915-SVN (D. Conn. October 4, 2023)

· **Scott Petersen v. Stem, Inc., et al.,**
No. 3:23-cv-02329-MMC (N.D. Cal. August 22, 2023)

· **Solomon v. Peloton Interactive, Inc. et al.,**
No. 1:23-cv-04279-MKB-JRC (E.D.N.Y. September 7, 2023)

· **Thant v. Veru, Inc., et al.,**



# Practice Areas

## Securities Class Action

No. 1:22-cv-23960-KMW (S.D. Fla. July 27, 2023)

• **Zhang V. Gaotu Techedu Inc., et al.,**
No. 1:22-cv-07966-PKC-CLP (E.D.N.Y. July 16, 2023)

• **Jaramillo v. Dish Network Corporation, et al.,**
No. 1:23-cv-00734-GPG-SKC (D. Colo. July 16, 2023)

• **Howard M. Rensin, Trustee Of The Rensin Joint Trust v. United States Cellular Corporation, et al.,**
No. 1:23-cv-02764-MMR (N.D. Ill. July 11, 2023)

• **Holland v. Rite Aid Corporation, et al.,**
No. 1:23-cv-00589-JG (N.D. Ohio June 22, 2023)

• **Baylor v. Honda Motor Co., Ltd., et al.,**
No. 2:23-cv-00794-GW-AGR (C.D. Cal. May 8, 2023)

• **Olsson v. PLDT Inc. et al.,**
No. 2:23-cv-00885-CJC-MAA (C.D. Cal. April 26, 2023)

• **Ryan v. FIGS, Inc. et al.,**
No. 2:22-cv-07939-ODW (C.D. Cal. February 14, 2023)

• **Schoen v. Eiger Biopharmaceuticals, Inc., et al.,**
No. 3:22-cv-6985-RS (N.D. Cal. February 3, 2023)

• **Fernandes v. Centessa Pharmaceuticals plc, et al.,**
No. 1:22-cv-08805-GHW-SLC (S.D.N.Y. December 12, 2022)

• **Gilbert v. Azure Power Global Limited, et al.,**
No. 1:22-cv-07432-GHW (S.D.N.Y. December 8, 2022

• **Pugley v. Fulgent Genetics, Inc. et al.,**
No. 2:22-cv-06764-CAS-KLS (C.D. Cal. November 30, 2022)

• **Michalski v. Weber Inc., et al.,**
No. 1:22-cv-03966-EEB (N.D. Ill. November 29, 2022)



**"Class Counsel have demonstrated that they are skilled in this area of the law and therefore adequate to represent the Settlement Class as**

The Honorable Barry Ted Moskowitz in I*n re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-CV-182-BTM-RBB (S.D. Cal. Oct. 30, 2020)

• **Edge v. Tupperware Brands Corporation, et al.,**
No. 6:22-cv-1518-RBD-LHP (M.D. Fla. September 16, 2022)

• **Carpenter v. Oscar Health, Inc., et al.,**
No. 1:22-cv-03885-VSB-VF (S.D.N.Y. September 27, 2022)

• **In re Nano-X Imagining Ltd. Securities Litigation,**
No. 1:20-cv-04355-WFK-MMH (E.D.N.Y. August 30, 2022)

• **Patterson v. Cabaletto Bio, Inc., et al.,**
No. 2:22-cv-00737-JMY (E.D. Pa. August 10, 2022)

• **Rose v. Butterfly Network, Inc., et al.,**
No. 2:22-cv-00854-MEF-JBC (D.N.J. August 8, 2022)

• **Winter v. Stronghold Digital Mining, Inc., et al.,**
No. 1:22-cv-03088-RA (S.D.N.Y. August 4, 2022)

• **Poirer v. Bakkt Holdings, Inc.,**
No. 1:22-cv-02283-EK-PK (E.D.N.Y. August 3, 2022)

• **In re Meta Materials Inc. Securities Litigation,**
No. 1:21-cv-07203-CBA-JRC (E.D.N.Y. July 15, 2022)

• **Deputy v. Akebia Therapeutics, Inc. et al.,**
No. 1:22-cv-01411-AMD-VMS (E.D.N.Y. June 28, 2022)

• **In re Grab Holdings Limited Securities Litigation,**
No. 1:22-cv-02189-JLR (S.D.N.Y. June 7, 2022)

• **In re AppHarvest Securities Litigation,**
No. 1:21-cv-07985-LJL (S.D.N.Y. December 13, 2021)



# Practice Areas

## Securities Class Action

• **In re Coinbase Global, Inc. Securities Litigation,**
No. 3:21-cv-05634-TLT (N.D. Cal. November 5, 2021)

• **Miller v. Rekor Systems, Inc. et al.,**
No. 1:21-cv-01604-GLR (D. Md. September 16, 2021)

• **Zaker v. Ebang International Holdings Inc. et al.,**
No. 1:21-cv-03060-KPF (S.D.N.Y. July 21, 2021)

• **Valdes v. Kandi Technologies Group, Inc. et al.,**
No. 2:20-cv-06042-LDH-AYS (E.D.N.Y. April 20, 2021)

• **John P. Norton, On Behalf Of The Norton Family Living Trust UAD 11/15/2002 V. Nutanix, Inc. Et Al,**
No. 3:21-cv-04080-WHO (N.D. Cal. September 8, 2021)

• **The Daniels Family 2001 Revocable Trust v. Las Vegas Sands Corp., et al.,**
No. 1:20-cv-08062-JMF (D. Nev. Jan. 5, 2021)

• **In re QuantumScape Securities Class Action Litigation,**
No. 3:21-cv-00058-WHO (N.D. Cal. April 20, 2021)

• **In re Minerva Neurosciences, Inc. Sec. Litig.,**
No. 1:20-cv-12176-GAO (D. Mass. March 5, 2021)

• **White Pine Investments v. CVR Refining, LP, et al.,**
No. 1:20-cv-02863-AT (S.D.N.Y Jan. 5, 2021)

• **Yaroni v. Pintec Technology Holdings Limited, et al.,**
No. 1:20-cv-08062-JMF (S.D.N.Y. Dec. 15, 2020)

• **Nickerson v. American Electric Power Company, Inc., et al.,**
No. 2:20-cv-04243-SDM-EPD (S.D. Ohio Nov. 24, 2020)

• **Ellison v. Tufin Software Technologies Ltd., et al.,**
No. 1:20-cv-05646-GHW (S.D.N.Y. Oct. 19, 2020)



> The Court of Chancery approved the settlement on April 4, 2024, and remarked that it was "strong" and a "great settlement."
>
> Vice Chancellor Lori W. Will in *Karsan Value Fund v. Kostecki Brokerage Pty, Ltd. et al.,* Case No. C.A. No. 2021-0899-LWW (Delaware Chancery)

• **Hartel v. The GEO Group, Inc., et al.,**
No. 9:20-cv-81063-RS-SMM (S.D. Fla. Oct. 1, 2020)

• **Posey v. Brookdale Senior Living, Inc., et al.,**
No. 3:20-cv-00543-AAT (M.D. Tenn. Sept. 14, 2020)

• **Snyder v. Baozun Inc.,**
No. 1:19-cv-11290-ALC-KNF (S.D.N.Y. Sept. 8, 2020)

• **In re Dropbox Sec. Litig.,**
No. 5:19-cv-06348-BLF-SVK (N.D. Cal. Jan. 16, 2020)

• **Zhang v. Valaris plc,**
No. 1:19-cv-7816-NRB (S.D.N.Y. Dec. 23, 2019)

• **In re Sundial Growers Inc. Sec. Litig.,**
No. 1:19-cv-08913-ALC-SN (S.D.N.Y. Dec. 20, 2019)

• **Ferraro Family Foundation, Inc. v. Corcept Therapeutics Incorporated,**
No. 5:19-cv-1372-LHK-SVK (N.D. Cal. Oct. 7, 2019)

• **Roberts v. Bloom Energy Corp.,**
No. 4:19-cv-02935-HSG (N.D. Cal. Sept. 3, 2019)

• **Luo v. Sogou Inc.,**
No. 1:19-cv-00230-LJL (S.D.N.Y. Apr. 2, 2019)

• **In re Aphria Inc. Sec. Litig.,**
No. 1:18-cv-11376-GBD-JEW (S.D.N.Y. Mar. 27, 2019)

• **Chew v. MoneyGram International, Inc.,**
No. 1:18-cv-07537-MMP (N.D. Ill. Feb. 12, 2019)





# Practice Areas



# Derivative, Corporate Governance & Executive Compensation

As a leader in achieving important corporate governance reforms for the benefit of shareholders, the Firm protects shareholders by enforcing the obligations of corporate fiduciaries. Our efforts include the prosecution of derivative actions in courts around the country, making pre-litigation demands on corporate boards to investigate misconduct, and taking remedial action for the benefit of shareholders. In situations where a company's board responds to a demand by commencing its own investigation, we frequently work with the board's counsel to assist with and monitor the investigation, ensuring that the investigation is thorough and conducted in an appropriate manner.

We have also successfully prosecuted derivative and class action cases to hold corporate executives and board members accountable for various abuses and to help preserve corporate assets through longlasting and meaningful corporate governance changes, thus ensuring that prior misconduct does not reoccur. We have extensive experience challenging executive compensation and recapturing assets for the benefit of companies and their shareholders. We have secured corporate governance changes to ensure that executive compensation is consistent with shareholder-

approved compensation plans, company performance, and federal securities laws.

In **Franchi v. Barabe**, No. 2020-0648-KSJM (Del. Ch.), the Firm secured $6.7 million in economic benefits for Selecta Biosciences, Inc. in connection with insiders' participation in a private placement while in possession of material non-public information as well as the adoption of significant governance reforms designed to prevent a recurrence of the alleged misconduct.

The Firm was lead counsel in the derivative action styled **Police & Retirement System of the City of Detroit et al. v. Robert Greenberg et al., C.A No. 2019-0578-MTZ (Del. Ch.). The action resulted in a settlement where Skechers Inc. cancelled approximately $20 million in equity awards issued to Skechers' founder Robert** Greenberg and two top officers in 2019 and 2020. Also, under the settlement. Skechers' board of directors must retain a consultant to advise on compensation decisions going forward.





# Derivative, Corporate Governance & Executive Compensation

In **In re Google Inc. Class C Shareholder Litigation**, C.A. No. 7469-CS (Del. Ch.), we challenged a stock recapitalization transaction to create a new class of nonvoting shares and strengthen the corporate control of the Google founders. We helped achieve an agreement that provided an adjustment payment to existing shareholders harmed by the transaction as well as providing enhanced board scrutiny of the Google founders' ability to transfer stock. Ultimately, Google's shareholders received payments of $522 million.

In **In re Activision, Inc. Shareholder Derivative Litigation**, No. 06-cv-04771-MRP-JTL (C.D. Cal.), we were Co-Lead Counsel and challenged executive compensation related to the dating of options. This effort resulted in the recovery of more than $24 million in excessive compensation and expenses, as well as the implementation of substantial corporate governance changes.

 **"...a model for how [the] great legal profession should conduct itself."**

Justice Timothy S. Driscoll in *Grossman v. State Bancorp, Inc.*, Index No. 600469/2011 (N.Y. Sup. Ct. Nassau Cnty. Nov. 29, 2011)

In **Pfeiffer v. Toll** (Toll Brothers Derivative Litigation), No. 4140-VCL (Del. Ch.), we prevailed in defeating defendants' motion to dismiss in a case seeking disgorgement of profits that company insiders reaped through a pattern of insider-trading. After extensive discovery, we secured a settlement returning $16.25 million in cash to the company, including a significant contribution from the individuals who traded on inside information.

In **Rux v. Meyer**, No. 11577-CB (Del. Ch.), we challenged the re-purchase by Sirius XM of its stock from its controlling stockholder, Liberty Media, at an inflated, above-market price. After defeating a motion to dismiss and discovery, we obtained a settlement where SiriusXM recovered $8.25 million, a substantial percentage of its over-payment.

In **In re EZCorp Inc. Consulting Agreement Derivative Litig.,** C.A. No. 9962-VCL (Del. Ch.), we challenged lucrative consulting agreements between EZCorp and its controlling stockholders. After surviving multiple motions to dismiss. We obtained a settlement where EZCorp was repaid $6.45 million it had paid in consulting fees, or approximately 33% of the total at issue and the consulting agreements were discontinued.

 LEVI&KORSINSKY
Shareholder Advocates



# Derivative, Corporate Governance & Executive Compensation

In **Scherer v. Lu** (Diodes Incorporated), No. 13-358-GMS (D. Del.), we secured the cancellation of $4.9 million worth of stock options granted to the company's CEO in violation of a shareholder-approved plan, and obtained additional disclosures to enable shareholders to cast a fullyinformed vote on the adoption of a new compensation plan at the company's annual meeting.

In **MacCormack v. Groupon, Inc.,** No. 13-940-GMS (D. Del.), we caused the cancellation of $2.3 million worth of restricted stock units granted to a company executive in violation of a shareholder-approved plan, as well as the adoption of enhanced corporate governance procedures designed to ensure that the board of directors complies with the terms of the plan; we also obtained additional material disclosures to shareholders in connection with a shareholder vote on amendments to the plan.

In **Edwards v. Benson** (Headwaters Incorporated), No. 13-cv-330 (D. Utah), we caused the cancellation of $3.2 million worth of stock appreciation rights granted to the company's CEO in violation of a shareholder-approved plan and the adoption of enhanced corporate governance procedures designed to ensure that the board of directors complies with the terms of the plan.

In **Pfeiffer v. Begley** (DeVry, Inc.), No. 12-CH-5105 (Ill. Cir. Ct. DuPage Cty.), we secured the cancellation of $2.1 million worth of stock options granted to the company's CEO in 2008-2012 in violation of a shareholder-approved incentive plan.

In **Basch v. Healy** (EnerNOC), No. 13-cv-766 (D. Del.), we obtained a cash payment to the company to compensate for equity awards issued to officers in violation of the company's compensation plan and caused significant changes in the company's compensation policies and procedures designed to ensure that future compensation decisions are made consistent with the company's plans, charters and policies. We also impacted the board's creation of a new compensation plan and obtained additional disclosures to stockholders concerning the board's administration of the company's plan and the excess compensation.

In **Kleba v. Dees,** No. 3-1-13 (Tenn. Cir. Ct. Knox Cty.), we recovered approximately $9 million in excess compensation given to insiders and the cancellation of millions of shares of stock options issued in violation of a shareholder-approved compensation plan. In addition, we obtained the adoption of formal corporate governance procedures designed to ensure that future compensation decisions are made independently and consistent with the plan.





## Practice Areas

## Derivative, Corporate Governance & Executive Compensation

In **Lopez v. Nudelman** (CTI BioPharma Corp.), No. 14-2-18941-9 SEA (Wash. Super. Ct. King Cty.), we recovered approximately $3.5 million in excess compensation given to directors and obtained the adoption of a cap on director compensation, as well as other formal corporate governance procedures designed to implement best practices with regard to director and executive compensation.

In **In re Corinthian Colleges, Inc. Shareholder Derivative Litigation**, No. 06-cv-777-AHS (C.D. Cal.), we were Co-Lead Counsel and achieved a $2 million benefit for the company, resulting in the re-pricing of executive stock options and the establishment of extensive corporate governance changes.

In **In re Corinthian Colleges, Inc. Shareholder Derivative Litigation**, No. 06-cv-777-AHS (C.D. Cal.), we were Co-Lead Counsel and achieved a $2 million benefit for the company, resulting in the re-pricing of executive stock options and the establishment of extensive corporate governance changes.

In **Pfeiffer v. Alpert (Beazer Homes Derivative Litigation)**, No. 10-cv-1063-PD (D. Del.), we successfully challenged certain aspects of the company's executive compensation structure, ultimately forcing the company to improve its compensation practices.

In **In re Cincinnati Bell, Inc., Derivative Litigation**, No. A1105305 (Ohio, Hamilton Cty. C.P.), we achieved significant corporate governance changes and enhancements related to the company's compensation policies and practices in order to better align executive compensation with company performance. Reforms included the formation of an entirely independent compensation committee with staggered terms and term limits for service.

In **Woodford v. Mizel** (M.D.C. Holdings, Inc.), No. 1:11-cv-879 (D. Del.), we challenged excessive executive compensation, ultimately obtaining millions of dollars in reductions of that compensation, as well as corporate governance enhancements designed to implement best practices with regard to executive compensation and increased shareholder input.



LEVI&KORSINSKY
Shareholder Advocates

**Practice Areas**

## 🤝 Mergers & Acquisitions

Levi & Korsinsky has achieved an impressive record in winning multi-million dollar recoveries and injunctions in merger-related litigation. We are one of the premier law firms engaged in this field, consistently striving to maximize stockholder value. In these cases, we fight to enforce stockholder rights and increase their consideration in connection with the underlying transactions.

We have served in lead roles in landmark cases that have altered the landscape of mergers & acquisitions law, and have won numerous injunctions and recovered hundreds of millions of dollars for aggrieved stockholders. Some examples include:

In **Karsan Value Fund v. Kostecki Brokerage Pty, Ltd. et al.**, Case No. C.A. No. 2021-0899-LWW (Del. Ch.), we served as lead counsel for the class of former minority stockholders of Alloy Steel, and recovered a $9.5 million common fund – a $1.90 per share (75%) increase on top of the original merger consideration of $2.55 per share.  The Court of Chancery approved the settlement on April 4, 2024, and remarked that it was "strong" and a "great settlement."

> **Vice Chancellor Sam Glasscock, III said "it's always a pleasure to have counsel who are articulate and exuberant..." and referred to our approach to merger litigation as "wholesome" and "a model of... plaintiffs' litigation in the merger arena."**
>
> *Ocieczanek v. Thomas Properties Group*, C.A. No. 9029-VCG (Del. Ch. May 15, 2014)

In **In re Schuff International, Inc. Stockholders Litigation**, No. 10323-VCZ (Del. Ch.), we served as Co-Lead Counsel for the plaintiff class in achieving the largest recovery as a percentage of the underlying transaction consideration in Delaware Chancery Court merger class action history, obtaining an aggregate recovery of more than $22 million -- a 114% increase from $31.50 to $67.45 in total consideration per share for tendering stockholders.

In **In re Bluegreen Corp. Shareholder Litigation**, No. 502011CA018111 (Cir. Ct. for Palm Beach Cty., FL), as Co-Lead Counsel, we achieved a common fund recovery of $36.5 million for minority shareholders in connection with a management-led buyout, increasing gross consideration to shareholders in connection with the transaction by 25% after three years of intense litigation.



LEVI&KORSINSKY
Shareholder Advocates

**Practice Areas**

## 🤝 Mergers & Acquisitions

In **Reith v. Lichtenstein, et al.**, Case NO. 2018-0277-MTZ (Del. Ch.), we served as lead counsel on behalf of the class and derivatively on behalf of Steel Connect, Inc. and recovered a $6 million fund to be distributed to common stockholders of Steel Connect, the majority of which going to the minority stockholders. In granting approval on December 13, 2024, the Court of Chancery called the result an "excellent settlement."

In **Robinson v. Fortress Acquisition Sponsor II, et al., LLC**, C.A. No. 2023-0142-NAC (Del. Ch.), we served as plaintiff's counsel and achieved a $6 million recovery for a class of ATI Physical Therapy, Inc. stockholders in connection with the company's June 2021 de-SPAC merger.

In **Makris v. Ionis Pharmaceuticals, Inc.**, C.A. No. 2021-0681-LWW (Del. Ch.), we served as Co-Lead Counsel and achieved a $12.5 million common fund settlement for a class of Akcea Therapeutics, Inc. stockholders in connection with its October 2020 acquisition by Ionis.

> **"I think you've done a superb job and I really appreciate the way this case was handled."**
>
> Justice Timothy S. Driscoll in *Grossman v. State Bancorp, Inc.*, Index No. 600469/2011 (N.Y. Sup. Ct. Nassau Cnty. Nov. 29, 2011)

> **"Mr. Enright, the way you laid out your argument … is extraordinarily helpful to a Court, and it's a textbook of how oral arguments should be done. "**
>
> Vice Chancellor Sam Glasscock in *Adam Turnbull v. Adam Klein, C.A. No. 1125-SG (Del. Ch. 2024)*

In **In re CNX Gas Corp. Shareholder Litigation**, No. 5377-VCL (Del. Ch.), as Plaintiffs' Executive Committee Counsel, we obtained a landmark ruling from the Delaware Chancery Court that set forth a unified standard for assessing the rights of shareholders in the context of freeze-out transactions and ultimately led to a common fund recovery of over $42.7 million for the company's shareholders.

In **Chen v. Howard-Anderson**, No. 5878-VCL (Del. Ch.), we represented shareholders in challenging the merger between Occam Networks, Inc. and Calix, Inc., obtaining a preliminary injunction against the merger after showing that the proxy statement by which the shareholders were solicited to vote for the merger was materially false and misleading. Post-closing, we took the case to trial and recovered an additional $35 million for the shareholders.



**Practice Areas**

## 🤝 Mergers & Acquisitions

In **In re Sauer-Danfoss Stockholder Litig.**, No. 8396 (Del. Ch.), as one of plaintiffs' co-lead counsel, we recovered a $10 million common fund settlement in connection with a controlling stockholder merger transaction.

In **In re Yongye International, Inc. Shareholders' Litigation**, No. A-12-670468-B (District Court, Clark County, Nevada), as one of plaintiffs' co-lead counsel, we recovered a $6 million common fund settlement in connection with a management-led buyout of minority stockholders in a China-based company incorporated under Nevada law.

In **In re Great Wolf Resorts, Inc. Shareholder Litigation**, No. 7328-VCN (Del. Ch.), we achieved tremendous results for shareholders, including partial responsibility for a $93 million (57%) increase in merger consideration and the waiver of several "don't-ask-don't-waive" standstill agreements that were restricting certain potential bidders from making a topping bid for the company.

In **In re Talecris Biotherapeutics Holdings Shareholder Litigation**, C.A. No. 5614-VCL (Del. Ch.), we served as counsel for one of the Lead Plaintiffs, achieving a settlement that increased the merger consideration to Talecris shareholders by an additional 500,000 shares of the acquiring company's stock and providing shareholders with appraisal rights.

In **In re Minerva Group LP v. Mod-Pac Corp.**, Index No. 800621/2013 (N.Y. Sup. Ct. Erie Cty.), we obtained a settlement in which defendants increased the price of an insider buyout from $8.40 to $9.25 per share, representing a recovery of $2.4 million for shareholders.

In **Stephen J. Dannis v. J.D. Nichols**, No. 13-CI-00452 (Ky. Cir. Ct. Jefferson Cty.), as Co-Lead Counsel, we obtained a 23% increase in the merger consideration (from $7.50 to $9.25 per unit) for shareholders of NTS Realty Holdings Limited Partnership. The total benefit of $7.4 million was achieved after two years of hard-fought litigation.

Additionally, we have a successful track record of winning injunctions in connection with shareholder M&A litigation, including:

• **In re Portec Rail Products, Inc. S'holder Litig.**, G.D. 10-3547 (Ct. Com. Pleas Pa. 2010)

• **In re Craftmade International, Inc. S'holder Litig.**, C.A. No. 6950-VCL (Del. Ch. 2011)

• **Dias v. Purches**, C.A. No. 7199-VCG (Del. Ch. 2012)

• **In re Complete Genomics, Inc. S'holder Litig**., C.A. No. 7888-VCL (Del. Ch. 2012)

• **In re Integrated Silicon Solution, Inc. Stockholder Litig.**, Lead Case No. 115CV279142 (Sup. Ct. Santa Clara, CA 2015)


LEVI&KORSINSKY
Shareholder Advocates



# Practice Areas

## Consumer Litigation

**Levi & Korsinsky works hard to protect consumers by holding corporations accountable for defective products, false and misleading advertising, unfair or deceptive business practices, antitrust violations, and privacy right violations.**

**Our litigation and class action expertise combined with our in-depth understanding of federal and state laws enable us to fight for consumers who have been aggrieved by deceptive and unfair business practices and who purchased defective products, including automobiles, appliances, electronic goods, and other consumer products. The Firm also represents consumers in cases involving data breaches and privacy right violations. The Firm's attorneys have received a number of leadership appointments in consumer class action cases, including multidistrict litigation ("MDL"). Recently, Law.com identified the Firm as one of the top firms with MDL leadership appointments in the article titled, "There Are New Faces Leading MDLs. And They Aren't All Men" (July 6, 2020). Representative settled cases include:**

**Doe v. Roblox Corporation**, Case No. 3:21-cv-03943 (N.D. Cal.): Represented individuals who experienced moderation and removal of content on the Roblox platform without compensation, resulting in $10 million settlement.

**Lash Boost Cases**, JCCP No. 4981 (Cal. Super. Ct., S.F. Cty.): Represented consumers who purchased Rodan + Fields' Lash Boost product which plaintiffs alleged failed to disclose material information relating to potential adverse reactions, resulting in $38 million settlement.

**Goldstein v. Henkel Corporation et al.**, Case No. 3:22-cv-00164 (D. Conn.): Represented purchasers of aerosol and spray antiperspirant products sold under the Right Guard brand which contain or risk containing benzene, resulting in $1.95 million settlement.

**Kholyusev et al. v. Welfare & Pension Administration Service, Inc.** Case No. 22-2-04152 (Wash. Sup. Ct.): Co-lead counsel in data breach class action resulting in a settlement valued up to $1,750,000.

**Goldstein v. Henkel Corporation et al.**, Case No. 3:22-cv-00164 (D. Conn.): Represented purchasers of aerosol and spray antiperspirant products sold under the Right Guard brand which contain or risk containing benzene, resulting in $1.95 million settlement.



 # Consumer Litigation

**NV Security, Inc. v. Fluke Networks, No. CV05-4217 GW (SSx) (C.D. Cal. 2005):** Negotiated a settlement on behalf of purchasers of Test Set telephones in an action alleging that the Test Sets contained a defective 3-volt battery. We benefited the consumer class by obtaining the following relief: free repair of the 3-volt battery, reimbursement for certain prior repair, an advisory concerning the 3-volt battery on the outside of packages of new Test Sets, an agreement that defendants would cease to market and/or sell certain Test Sets, and a 42-month warranty on the 3-volt battery contained in certain devices sold in the future.

**Sung, et al. v. Schurman Retail Group**, No. 3:17-cv-02760- LB (N.D. Cal.): Co-Lead Class Counsel in nationwide class action that alleged unauthorized disclosure of employee financial information; obtained final approval of nationwide class action settlement providing credit monitoring and identity theft restoration services through 2022 and cash payments of up to $400.

**In re: Apple Inc. Device Performance Litig., No. 5:18-md-02827-EJD (N.D. Cal.):** Plaintiffs' Executive Committee member in class action lawsuit alleging that Apple purposefully throttled iPhone resulting in a $310 million non-reversionary settlement fund.

**In re: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.**, No. 2:17-MD-02785 (D. Kan.): Plaintiffs' Executive Committee in action that alleged that Mylan and Pfizer violated antitrust laws and committed other violations relating to the sale of EpiPens which resulted in $609 million in total recovery.

**Scott, et al. v. JPMorgan Chase Bank, N.A.**, No. 1:17-cv- 00249-APM (D.D.C.): Co-Lead Class Counsel in nationwide class action settlement of claims alleging improper fees deducted from payments awarded to jurors; 100% direct refund of improper fees collected.

**In re: Citrix Data Breach Litig.**, No. 19-cv-61350-RKA-PMH (S.D. Fla.): Interim Class Counsel in action alleging company failed to implement reasonable security measures to protect employee financial information; resulted in common fund settlement of $2,275,000.

**Bustos v. Vonage America, Inc.**, No. 2:06-cv-2308-HAA-ES (D.N.J.): Common fund settlement of $1.75 million on behalf of class members who purchased Vonage Fax Service in an action alleging that Vonage made false and misleading statements in the marketing, advertising, and sale of Vonage Fax Service by failing to inform consumers that the protocol defendant used for the Vonage Fax Service was unreliable and unsuitable for facsimile communications.

**Masterson v. Canon U.S.A.**, No. BC340740 (Cal. Super. Ct. L.A. Cty.): Settlement providing refunds to Canon SD camera purchasers for certain broken LCD repair charges and important changes to the product warranty.





- **EDUARD KORSINSKY**

- **JOSEPH E. LEVI**

# Our Attorneys

## Managing Partners

21

## Our Attorneys    Managing Partners

# EDUARD KORSINSKY
## Managing Partner



Eduard Korsinsky is the Managing Partner and Co-Founder of Levi & Korsinsky, LLP, a national securities firm that has recovered billions of dollars for investors since its formation in 2003. For more than 24 years Mr. Korsinsky has represented investors and institutional shareholders in complex securities matters. He has achieved significant recoveries for stockholders, including a $79 million recovery for investors of E-Trade Financial Corporation and a payment ladder indemnifying investors of Google, Inc. up to $8 billion in losses on a ground-breaking corporate governance case. His firm serves as lead counsel in some of the largest securities matters involving Tesla, US Steel, Kraft Heinz and others. He has been named a New York "Super Lawyer" by Thomson Reuters and is recognized as one of the country's leading practitioners in class action and derivative matters.

Mr. Korsinsky is also a co- founder of CORE Monitoring Systems LLC, a technology platform designed to assist institutional clients more effectively monitor their investment portfolios and maximize recoveries on securities litigation.

**Cases he has litigated include:**

• **E-Trade Financial Corp. Sec. Litig.**, No. 07-cv-8538 (S.D.N.Y. 2007), $79 million recovery
• **In re Activision, Inc. S'holder Derivative Litig.**, No. 06-cv-04771-MRP (JTLX)(C.D. Cal. 2006), recovered $24 million in excess compensation
• **Corinthian Colleges, Inc., S'holder Derivative Litig.**, No. SACV-06-0777-AHS (C.D. Cal. 2009), obtained repricing of executive stock options providing more than $2 million in benefits to the company

• **Pfeiffer v. Toll**, No. 4140-VCL (Del. Ch. 2010), $16.25 million in insider trading profits recovered
• **In re Net2Phone, Inc. S'holder Litig.**, No. 1467-N (Del. Ch. 2005), obtained increase in tender offer price from $1.70 per share to $2.05 per share
• **In re Pamrapo Bancorp S'holder Litig.**, No. C-89-09 (N.J. Ch. Hudson Cty. 2011) & No. HUD-L-3608-12 (N.J. Law Div. Hudson Cty. 2015), obtained supplemental disclosures following the filing of a motion for preliminary injunction, pursued case post-closing, secured key rulings on issues of first impression in New Jersey and defeated motion for summary judgment


LEVI&KORSINSKY
Shareholder Advocates

**Our Attorneys** **Managing Partners**

# EDUARD KORSINSKY
## Managing Partner

**Cases he has litigated include:**

• **In re Google Inc. Class C S'holder Litig.**, No. 19786 (Del. Ch. 2012), obtained payment ladder indemnifying investors up to $8 billion in losses stemming from trading discounts expected to affect the new stock
• **Woodford v. M.D.C. Holdings, Inc.**, No. 1:2011cv00879 (D. Del. 2012), one of a few successful challenges to say on pay voting, recovered millions of dollars in reductions to compensation

• **Pfeiffer v. Alpert (Beazer Homes)**, No. 10-cv-1063-PD (D. Del. 2011), obtained substantial revisions to an unlawful executive compensation structure
• **In re NCS Healthcare, Inc. Sec. Litig.**, No. CA 19786, (Del. Ch. 2002), case settled for approximately $100 million
• **Paraschos v. YBM Magnex Int'l, Inc.**, No. 98-CV-6444 (E.D. Pa.), United States and Canadian cases settled for $85 million Canadian

**PUBLICATIONS**

• "Board Diversity: The Time for Change is Now, Will Shareholders Step Up?," National Council on Teacher Retirement. FYI Newsletter May 2021
• "The Dangers of Relying on Custodians to Collect Class Action Settlements.", The Texas Association of Public Employee Retirement Systems (TEXPERS) Investment Insights April-May Edition (2021)
• "The Dangers of Relying on Custodians to Collect Class Action Settlements.", Michigan Association of Public Employee Retirement Systems (MAPERS) Newsletter (2021)
• "The Dangers of Relying on Custodians to Collect Class Action Settlements.", Florida Public Pension Trustees Association (FPPTA) (2021)
• "NY Securities Rulings Don't Constitute Cyan Backlash", Law360 (March 8, 2021)
• "Best Practices for Monitoring Your Securities Portfolio in 2021.", Building Trades News Newsletter (2020-2021)

• "Best Practices for Monitoring Your Securities Portfolio in 2021.", The Texas Association of Public Employee Retirement Systems (TEXPERS) Monitor (2021)
• "Best Practices for Monitoring Your Securities Portfolio in 2021.", Michigan Association of Public Employee Retirement Systems (MAPERS) Newsletter (2021)
• "Best Practices for Monitoring Your Securities Portfolio in 2021.", Florida Public Pension Trustees Association (FPPTA) (2021)
• Delaware Court Dismisses Compensation Case Against Goldman Sachs, ABA Section of Securities Litigation News & Developments (Nov. 7, 2011)
• SDNY Questions SEC Settlement Practices in Citigroup Settlement, ABA Section of Securities Litigation News & Developments (Nov. 7, 2011)
• New York Court Dismisses Shareholder Suit Against Goldman Sachs, ABA Section of Securities Litigation News & Developments (Oct. 31, 2011)


LEVI&KORSINSKY
Shareholder Advocates

**Our Attorneys**        Managing Partners

# EDUARD KORSINSKY

## Managing Partner

**EDUCATION**

• New York University School of Law, LL.M. Master of Law(s) Taxation (1997)
• Brooklyn Law School, J.D. (1995)
• Brooklyn College, B.S., Accounting, summa cum laude (1992)

**AWARDS**









**ADMISSIONS**

• New York (1996)
• New Jersey (1996)
• United States District Court for the Southern District of New York (1998)
• United States District Court for the Eastern District of New York (1998)
• United States Court of Appeals for the Second Circuit (2006)
• United States Court of Appeals for the Third Circuit (2010)
• United States District Court for the Northern District of New York (2011)
• United States District Court of New Jersey (2012)
• United States Court of Appeals for the Sixth Circuit (2013)
• Arizona (2024)
• Michigan (2024)



**Our Attorneys** | Managing Partners

# JOSEPH E. LEVI
## Managing Partner



Joseph E. Levi is a central figure in shaping and managing the Firm's securities litigation practice. Mr. Levi has been lead or co-lead in dozens of cases involving the enforcement of shareholder rights in the context of mergers & acquisitions and securities fraud. In addition to his involvement in class action litigation, he has represented numerous patent holders in enforcing their patent rights in areas including computer hardware, software, communications, and information processing, and has been instrumental in obtaining substantial awards and settlements.

Mr. Levi and the Firm achieved success on behalf of the former shareholders of Occam Networks in litigation challenging the Company's merger with Calix, Inc., obtaining a preliminary injunction against the merger due to material representations and omissions in the proxy solicitation. **Chen v. Howard-Anderson**, No. 5878-VCL (Del. Ch.). Vigorous litigation efforts continued to trial, resulting in a $35 million recovery for shareholders.

Mr. Levi and the Firm served as lead counsel in **Weigard v. Hicks**, No. 5732-VCS (Del. Ch.), which challenged the acquisition of Health Grades by affiliates of Vestar Capital Partners. Mr. Levi successfully demonstrated to the Court of Chancery that the defendants had likely breached their fiduciary duties to Health Grades' shareholders by failing to maximize shareholder value. This ruling was used to reach a favorable settlement where defendants agreed to a host of measures designed to increase the likelihood of superior bid. Vice Chancellor Strine "applaud[ed]" the litigation team for their preparation and the extraordinary high-quality of the briefing.

 **"[The court] appreciated very much the quality of the argument…, the obvious preparation that went into it, and the ability of counsel…"**

Justice Timothy S. Driscoll in *Grossman v. State Bancorp, Inc.*, Index No. 600469/2011 (N.Y. Sup. Ct. Nassau Cnty. Nov. 29, 2011)



**25**

**Our Attorneys**  **Managing Partners**

# JOSEPH E. LEVI
## Managing Partner

**EDUCATION**

• Polytechnic University, B.S., Electrical Engineering, summa cum laude (1984); M.S. Systems Engineering (1986)
• Brooklyn Law School, J.D., magna cum laude (1995)

**AWARDS**

  



**ADMISSIONS**

• New York (1996)
• New Jersey (1996)
• United States Patent and Trademark Office (1997)
• United States District Court for the Southern District of New York (1997)
• United States District Court for the Eastern District of New York (1997)





**LEVI&KORSINSKY**
Shareholder Advocates

## Our Attorneys

## Partners

- **ADAM M. APTON**

- **DONALD J. ENRIGHT**

- **SHANNON L. HOPKINS**

- **GREGORY M. NESPOLE**

- **NICHOLAS I. PORRITT**

- **GREGORY M. POTREPKA**

- **MARK S. REICH**

- **DANIEL TEPPER**

- **ELIZABETH K. TRIPODI**

## Our Attorneys | Partners

# ADAM M. APTON
## Partner



Adam M. Apton focuses his practice on investor protection. He represents institutional investors and high net worth individuals in securities fraud, corporate governance, and shareholder rights litigation. Prior to joining the firm, Mr. Apton defended corporate clients against complex mass tort, commercial, and products liability lawsuits. Thomson Reuters has selected Mr. Apton to the Super Lawyers "Rising Stars" list every year since 2016, a distinction given to only the top 2.5% of lawyers. He has also been awarded membership to the prestigious Lawyers of Distinction for his excellence in the practice of law and named to the "Lawdragon 500 X" list out of thousands of candidates in recognition of his place at the forefront of the legal profession.

Mr. Apton's past representations and successes include:

• **In re Tesla, Inc. Securities Litigation**, No. 3:18-cv-04865-EMC (N.D. Cal.) (trial counsel in class action representing Tesla investors who were harmed by Elon Musk's "funding secured" tweet from August 7, 2018)

• **In re Navient Corp. Securities Litigation**, No. 17-8373 (RBK/AMD) (D.N.J.) (lead counsel in class action against leading provider of student loans for alleged false and misleading statements about compliance with consumer protection laws)
• **In re Prothena Corporation Plc Securities Litigation**, No. 1:18-cv-06425-ALC (S.D.N.Y.) ($15.75 million settlement fund against international drug company for false statements about development of lead biopharmaceutical product)
• **Martin v. Altisource Residential Corporation**, et al., No. 15-00024 (AET) (GWC) (D.V.I.) ($15. 5 million settlement fund against residential mortgage company for false statements about compliance with consumer regulations and corporate governance protocols)
• **Levin v. Resource Capital Corp., et al.**, No. 1:15-cv-07081-LLS (S.D.N.Y.) ($9.5 million settlement in class action over fraudulent statements about toxic mezzanine loan assets)



**Our Attorneys** **Partners**

# ADAM M. APTON
## Partner

• **Rux v. Meyer (Sirius XM Holdings Inc.)**, No. 11577 (Del. Ch.) (recovery of $8.25 million against SiriusXM's Board of Directors for engaging in harmful related-party transactions with controlling stockholder, John. C. Malone and Liberty Media Corp.)

**PUBLICATIONS**

• "Pleading Section 11 Liability for Secondary Offerings" American Bar Association: Practice Points (Jan. 4, 2017)
• "Second Circuit Rules in Indiana Public Retirement System v. SAIC, Inc." American Bar Association: Practice Points (Apr. 4, 2016)
• "Second Circuit Applies Omnicare to Statements of Opinion in Sanofi" American Bar Association: Practice Points (Mar. 30, 2016)
• "Second Circuit Rules in Action AG v. China North" American Bar Association: Practice Points (Sept. 14, 2015)

**EDUCATION**

• New York Law School, J.D., cum laude (2009), where he served as Articles Editor of the New York Law School Law Review and interned for the New York State Supreme Court, Commercial Division
• University of Minnesota, B.A., Entrepreneurial Management & Psychology, With Distinction (2006)

**AWARDS**

  

**ADMISSIONS**

• New York (2010)
• United States District Court for the Southern District of New York (2010)
• United States District Court for the Eastern District of New York (2010)
• United States Court of Appeals for the Ninth Circuit (2015)
• United States Court of Appeals for the Second Circuit (2016)
• United States Court of Appeals for the Third Circuit (2016)
• California (2017)
• United States District Court for the Northern District of California (2017)
• United States District Court for the Central District of California (2017)
• United States District Court for the Southern District of California (2017)
• New Jersey (2020)
• United States District Court for the District of New Jersey (2020)



# DONALD J. ENRIGHT
## Partner



During his 28 years as a litigator and trial lawyer, Mr. Enright has handled matters in the fields of securities, commodities, consumer fraud and commercial litigation, with a particular emphasis on shareholder class action litigation. He has been named as one of the leading financial litigators in the nation by Lawdragon, as a Washington, DC "Super Lawyer" by Thomson Reuters, and as one of the city's "Top Lawyers" by Washingtonian magazine. One jurist on the Delaware Court of Chancery recently remarked that Don's advocacy skills were "a textbook of how oral arguments should be done."

Mr. Enright has shown a track record of achieving victories in federal trials and appeals, including:

- **Nathenson v. Zonagen, Inc.**, 267 F. 3d 400, 413 (5th Cir. 2001)
- **SEC v. Butler**, 2005 U.S. Dist. LEXIS 7194 (W.D. Pa. April 18, 2005)
- **Belizan v. Hershon**, 434 F. 3d 579 (D.C. Cir. 2006)
- **Rensel v. Centra Tech Inc.**, 2 F. 4th 1359 (11th Cir. 2021)

Over the course of his career, Mr. Enright has recovered hundreds of millions of dollars for investors. Most recently, in **Karsan Value Fund v. Kostecki Brokerage Pty, Ltd. et al.**, Case No. C.A. No. 2021-0899-LWW (Delaware Chancery), Mr. Enright was lead counsel for the class, and recovered a $9.5 million common fund for the minority stockholders in connection with a controller buyout – a $1.90 per share (75%) increase on top of the original merger consideration of $2.55 per share. The Court of Chancery approved the settlement on April 4, 2024, and remarked that it was "strong" and a "great settlement."

Similarly, in **In re Schuff International, Inc. Stockholders Litigation**, Case No. 10323-VCZ, Mr. Enright served as Co-Lead Counsel for the plaintiff class in achieving an aggregate recovery of more than $22 million -- a gross increase from $31.50 to $67.45 in total consideration per share (a 114% increase) for tendering stockholders. This was one of the largest recoveries as a percentage of the underlying merger consideration in the history of Delaware M&A litigation.



**Our Attorneys** **Partners**

# DONALD J. ENRIGHT
## Partner

As Co-Lead Counsel in **In re Bluegreen Corp. Shareholder Litigation**, Case No. 502011CA018111 (Cir. Ct. for Palm Beach Cnty., Fla.), Mr. Enright achieved a $36.5 million common fund settlement in the wake of a majority shareholder buyout, representing a 25% increase in total consideration to the minority stockholders.

Mr. Enright has played a leadership role in numerous other shareholder class actions from inception to conclusion, producing multi-million-dollar recoveries involving such companies as:

- Allied Irish Banks PLC
- Iridium World Communications, Ltd.
- En Pointe Technologies, Inc.
- PriceSmart, Inc.
- Polk Audio, Inc.
- Meade Instruments Corp.
- Xicor, Inc.
- Streamlogic Corp.
- Interbank Funding Corp.
- Riggs National Corp.

- UTStarcom, Inc.
- Manugistics Group, Inc.
- Yongye International, Inc.
- CNX Gas Corp.
- Sauer-Danfoss, Inc.
- The Parking REIT, Inc.
- Akcea Therapeutics, Inc.
- Babcock & Wilcox Enterprises, Inc.
- ATI Physical Therapy, Inc.

Mr. Enright also has a successful track record of obtaining injunctive relief in connection with shareholder M&A litigation, having won injunctions in the cases of:

- **In re Portec Rail Products, Inc. S'holder Litig.**, G.D. 10-3547 (Ct. Com. Pleas Pa. 2010)
- **In re Craftmade International, Inc. S'holder Litig.**, C.A. No. 6950-VCL (Del. Ch. 2011)
- **Dias v. Purches**, C.A. No. 7199-VCG (Del. Ch. 2012)
- **In re Complete Genomics, Inc. S'holder Litig.**, C.A. No. 7888-VCL (Del. Ch. 2012)
- **In re Integrated Silicon Solution, Inc. Stockholder Litig.**, Lead Case No. 115CV279142 (Sup. Ct. Santa Clara, CA 2015)



LEVI&KORSINSKY
Shareholder Advocates

# DONALD J. ENRIGHT
## Partner

Mr. Enright has also demonstrated considerable success in obtaining deal price increases for shareholders in M&A litigation. As Co-Lead Counsel in the matter of **In re Great Wolf Resorts, Inc. Shareholder Litigation**, C.A. No. 7328-VCN (Del. Ch. 2012), Mr. Enright was partially responsible for a $93 million (57%) increase in merger consideration and waiver of several "don't-ask-don't-waive" standstill agreements. Similarly, Mr. Enright served as Co-Lead Counsel in the case of **Berger v. Life Sciences Research, Inc.**, No. SOM-C-12006-09 (NJ Sup. Ct. 2009), which caused a significant increase in the transaction price from $7.50 to $8.50 per share, representing additional consideration for shareholders of approximately $11.5 million. Mr. Enright also served as Co-Lead Counsel in **Minerva Group, LP v. Keane**, Index No. 800621/2013 (NY Sup. Ct. of Erie Cnty.) and obtained an increased buyout price from $8.40 to $9.25 per share.

The courts have frequently recognized and praised the quality of Mr. Enright's work:
- In **In re Interbank Funding Corp. Securities Litigation**, (D.D.C. 02-1490), Judge Bates of the United States District Court for the District of Columbia observed that Mr. Enright had "…skillfully, efficiently, and zealously represented the class, and… worked relentlessly throughout the course of the case."
- In **Freeland v. Iridium World Communications, LTD**, (D.D.C. 99-1002), Judge Nanette Laughrey stated that Mr. Enright and his co-counsel had done "an outstanding job" in connection with the recovery of $43.1 million for the shareholder class.
- In the matter of **Osieczanek v. Thomas Properties Group**, C.A. No. 9029-VCG (Del. Ch. 2013), Vice Chancellor Sam Glasscock of the Delaware Court of Chancery observed that "it's always a pleasure to have counsel [like Mr. Enright] who are articulate and exuberant in presenting their position," and that Mr. Enright's prosecution of a merger case was "wholesome" and served as "a model of . . . plaintiffs' litigation in the merger arena."
- In the matter of **Adam Turnbull v. Adam Klein**, C.A. No. 1125-SG (Del. Ch. 2024), Vice Chancellor Sam Glasscock of the Delaware Court of Chancery stated in a hearing, "Mr. Enright, the way you laid out your argument … is extraordinarily helpful to a Court, and it's a textbook of how oral arguments should be done. That's not taking anything away from what the defendants did. But that was, I thought, classic, and I'm glad my clerks and interns and Supreme Court clerks got to hear it."



**Our Attorneys** | **Partners**

# DONALD J. ENRIGHT
## Partner

**PUBLICATIONS**

• "SEC Enforcement Actions and Investigations in Private and Public Offerings," Securities: Public and Private Offerings, Second Edition, West Publishing 2007
• "Dura Pharmaceuticals: Loss Causation Redefined or Merely Clarified?" J.Tax'n & Reg. Fin. Inst. September/October 2007, Page 5

**EDUCATION**

• George Washington University School of Law, J.D. (1996), Member Editor of The George Washington University Journal of International Law and Economics
• Drew University, B.A. cum laude, Political Science and Economics (1993)

**ADMISSIONS**

• Maryland (1996)
• New Jersey (1996)
• District of Maryland (1997)
• District of New Jersey (1997)
• Washington, DC (1999)
• Fourth Circuit (1999)
• Fifth Circuit (1999)
• United States District Court for the District of Columbia (1999)
• United States Court of Appeals for the District of Columbia (2004)
• Second Circuit (2005)
• Third Circuit (2006)

**AWARDS**

   

   



# SHANNON L. HOPKINS
## Partner



Shannon L. Hopkins manages the Firm's Connecticut office. She was selected in 2013 as a New York "Super Lawyer" by Thomson Reuters. For more than two decades Ms. Hopkins has been prosecuting a wide range of complex class action matters in securities fraud, mergers and acquisitions, and consumer fraud litigation on behalf of individuals and large institutional clients. Ms. Hopkins has played a lead role in numerous shareholder securities fraud and merger and acquisition matters and has been involved in recovering multimillion-dollar settlements on behalf of shareholders, including:

- **Lokman v. Azure Power Global Ltd., et. al.,** No. 1:22-cv-7432-GHW (S.D.N.Y. 2025), $23 million recovery for the shareholder class
- **In Re Grab Holdings Limited Sec. Litig.,** No. 1:22-cv-02189-JLR (S.D.N.Y.), $80 million recovery for shareholder class
- **E-Trade Financial Corp. S'holder Litig.,** No. 07-CV-8538 (S. D.N.Y. 2007), $79 million recovery for the shareholder class
- **In re U.S. Steel Consolidated Cases,** No. 17-559-CB (W.D. Pa.), $40 million recovery for shareholder class
- **In re Nutanix, Inc. Securities Litigation,** No. 3:19-cv-01651-WHO (the "Stock Case"). $71 million for shareholder class
- **Rougier v. Applied Optoelectronics, Inc.,** No. 17-CV-2399 (S.D. Tex.), $15.5 million recovery for shareholder class
- **In Stein v. U.S. Xpress Enterprises, Inc.,** et al., No. 1:19-CV-98-TRM-CHS (E.D. Tenn.), $14.3 million shareholder recover



**Our Attorneys**  **Partners**

# SHANNON L. HOPKINS
## Partner

> "Plaintiffs' selected Class Counsel, the law firm of Levi & Korsinsky, LLP, has demonstrated the zeal and competence required to adequately represent the interests of the Class. The attorneys at Levi & Korsinsky have experience in securities and class actions issues and have been appointed lead counsel in a significant number of securities class actions across the country."

The Honorable Christina Bryan in *Rougier v. Applied Optoelectronics, Inc.*, No. 4:17-CV-02399 (S.D. Tex. Nov. 13, 2019)

In addition to her legal practice, Ms. Hopkins is a Certified Public Accountant (1998 Massachusetts). Prior to becoming an attorney, Ms. Hopkins was a senior auditor with PricewaterhouseCoopers LLP, where she led audit engagements for large publicly held companies in a variety of industries.

> In appointing the Firm Lead Counsel, the Honorable Gary Allen Feess noted our "significant prior experience in securities litigation and complex class actions."

*Zaghian v. THQ, Inc.*, No. 2:12-cv-05227-GAF-JEM (C.D. Cal. Sept. 14, 2012)


LEVI&KORSINSKY
Shareholder Advocates

Case 5:23-cv-03518-EJD    Document 89-1    Filed 01/29/26    Page 59 of 138

# SHANNON L. HOPKINS

## Partner

**PUBLICATIONS**

• "Cybercrime Convention: A Positive Beginning to a Long Road Ahead," 2 J. High Tech. L. 101 (2003)

**EDUCATION**

• Suffolk University Law School, J.D., magna cum laude (2003), where she served on the Journal for High Technology and as Vice Magister of the Phi Delta Phi International Honors Fraternity
• Bryant University, B.S.B.A., Accounting and Finance, cum laude (1995), where she was elected to the Beta Gamma Sigma Honor Society

**AWARDS**

 

**ADMISSIONS**

• Massachusetts (2003)
• United States District Court for the District of Massachusetts (2004)
• New York (2004)
• United States District Court for the Southern District of New York (2004)
• United States District Court for the Eastern District of New York (2004)
• United States District Court for the District of Colorado (2004)
• United States Court of Appeals for the First Circuit (2008)
• United States Court of Appeals for the Third Circuit (2010)
• Connecticut (2013)
• United States Court of Appeals for the Ninth Circuit (2023)
• United States Court of Appeals for the Tenth Circuit (2025)



**Our Attorneys** | Partners

# GREGORY M. NESPOLE
## Partner



Gregory Mark Nespole is a Partner of the Firm, having been previously a member of the management committee of one of the oldest firms in New York, as well as chair of that firm's investor protection practice. He specializes in complex class actions, derivative actions, and transactional litigation representing institutional investors such as public and labor pension funds, labor health and welfare benefit funds, and private institutions. Prior to practicing law, Mr. Nespole was a strategist on an arbitrage desk and an associate in a major international investment bank where he worked on structuring private placements and conducting transactional due diligence.

For over twenty years, Mr. Nespole has played a lead role in numerous shareholder securities fraud and merger and acquisition matters and has been involved in recovering multi-million-dollar settlements on behalf of shareholders, including:

• Served as co-chair of a Madoff Related Litigation Task Force that recovered over several hundred million dollars for wronged investors;
• Obtained a $90 million award on behalf of a publicly listed company against a global bank arising out of fraudulently marketed auction rated securities;
• Successfully obtained multi-million-dollar securities litigation recoveries and/or corporate governance reforms from Cablevision, JP Morgan, American Pharmaceutical Partners, Sepracor, and MBIA, among many others.

Mr. Nespole holds membership in the Federal Bar Council and its Securities Litigation Committee, the New York City Bar Association and its Securities Litigation Committee, as well as the Federalist Society. He is also a member of the New York Athletic Club. Additionally, Mr. Nespole has been recognized by his peers as a "Super Lawyer" in the class action field annually since 2009, along with other notable awards.



# GREGORY M. NESPOLE

## Partner

**EDUCATION**

• Brooklyn Law School, J.D. (1993)
• Bates College, B.A. (1989)

**AWARDS**

  

**ADMISSIONS**

• New York (1994)
• United States District Court for the Southern District of New York (1994)
• United States District Court for the Eastern District of New York (1994)
• United States Court of Appeals for the Second Circuit (1994)
• United States Court of Appeals for the Fourth Circuit (1994)
• United States Court of Appeals for the Fifth Circuit (1994)
• United States District Court for the Northern District of New York (2016)
• United States Court of Appeals for the Eighth Circuit (2019)
• United States Court of Appeals for the Third Circuit (2020)



## NICHOLAS I. PORRITT

### Partner



Nicholas Porritt prosecutes securities class actions, shareholder class actions, derivative actions, and mergers and acquisitions litigation. He has extensive experience representing plaintiffs and defendants in a wide variety of complex commercial litigation, including civil fraud, breach of contract, and professional malpractice, as well as defending SEC investigations and enforcement actions. Mr. Porritt has helped recover hundreds of millions of dollars on behalf of shareholders. He was one of the Lead Counsel in In re Google Inc. Class C Shareholder Litigation, No. 7469-CS (Del. Ch.), which resulted in a payment of $522 million to shareholders and overall benefit of over $3 billion to Google's minority shareholders. He is one of the very few attorneys to have tried a securities class action to a jury, acting as lead trial counsel in In re Tesla, Inc. Securities Litigation, No. 3:18-cv-04865-EMC (N.D. Cal.), which went to trial in January 2023. He is currently acting in In re QuantumScape Securities Class Action Litigation, No. 3:21-cv-00058-WHO (N.D. Cal) representing QuantumScape Corp. investors who were harmed by misrepresentations by management regarding its battery technology as well as lead counsel in Ford v. TD Ameritrade Holding Corp., No. 14-cv-396 (D. Neb.), representing TD Ameritrade customers harmed by its improper routing of their orders. Both cases involve over $1 billion in estimated damages.

Mr. Porritt speaks frequently on current topics relating to securities laws and derivative actions, including presentations on behalf of the Council for Institutional Investors, Nasdaq, and the Practising Law Institute. and has served as an expert in the areas of securities and derivative litigation.

**LEVI&KORSINSKY**
Shareholder Advocates

# NICHOLAS I. PORRITT
## Partner

**CASES PORRITT HAS WORKED ON:**

- **Set Capital LLC v. Credit Suisse Group AG,** 2023 WL 2535175 (S.D.N.Y. 2023)
- **Voulgaris, v. Array Biopharma Inc.,** 60 F.4th 1259 (10th Cir. 2023)
- **In re Tesla, Inc. Sec. Litig.,** 2022 WL 7374936 (N.D. Cal. 2022)
- **Klein v. TD Ameritrade Holding Corp.,** 342 F.R.D. 252 (D. Neb. 2022)
- **In re Aphria, Inc. Sec. Litig.,** 342 F.R.D. 199 (S.D.N.Y. 2022)
- **In re Tesla, Inc. Sec. Litig.,** 2022 WL 1497559 (N.D. Cal. 2022)
- **In re QuantumScape Sec. Class Action Litig.,** 580 F. Supp. 3d 714 (N.D. Cal. 2022)
- **Set Capital LLC v. Credit Suisse Group AG,** 996 F.3d 64 (2d Cir. 2021)
- **In re Tesla, Inc. Sec. Litig.,** 477 F. Supp. 3d 903 (N.D. Cal.2020)
- **Voulgaris, v. Array Biopharma Inc.,** No. 17CV02789KLMCONSOLID, 2020 WL 8367829 (D. Colo.2020)
- **In Re Aphria, Inc. Sec. Litig.,** No. 18 CIV. 11376 (GBD), 2020 WL 5819548 (S.D.N.Y. 2020)
- **In re Clovis Oncology, Inc. Deriv. Litig.,** 2019 WL 4850188 (Del. Ch. 2019)
- **Martin v. Altisource Residential Corp.,** 2019 WL 2762923 (D.V.I. 2019)
- **In re Navient Corp. Sec. Litig.,** 2019 WL 7288881 (D.N.J.2019)
- **In re Bridgestone Inv. Corp.,** 789 Fed. App'x 13 (9th Cir. 2019)
- **Klein v. TD Ameritrade Holding Corp.,** 327 F.R.D. 283 (D. Neb. 2018)
- **Beezley v. Fenix Parts, Inc.,** 2018 WL 3454490 (N.D. Ill. 2018)
- **In re Illumina, Inc. Sec. Litig.,** 2018 WL 500990 (S.D. Cal. 2018)
- **In re PTC Therapeutics Sec. Litig.,** 2017 WL 3705801 (D.N.J. 2017)
- **Zaghian v. Farrell,** 675 Fed. Appx. 718, (9th Cir. 2017)
- **In re PTC Therapeutics Sec. Litig.,** 2017 WL 3705801 (D.N.J. Aug. 28, 2017)

- **Martin v. Altisource Residential Corp.,** 2017 WL 1068208 (D.V.I. 2017)
- **Gormley magicJack VocalTec Ltd.,** 220 F. Supp. 3d 510 (S.D.N.Y. 2016)
- **Carlton v. Cannon,** 184 F. Supp. 3d 428 (S.D. Tex. 2016)
- **Zola v. TD Ameritrade, Inc.,** 172 F. Supp. 3d 1055 (D. Neb. 2016)
- **In re Energy Recovery Sec. Litig.,** 2016 WL 324150 (N.D. Cal. Jan. 27, 2016)
- **In re EZCorp Inc. Consulting Agreement Deriv. Litig.,** 2016 WL 301245 (Del. Ch. Jan. 25, 2016)
- **In re Violin Memory Sec. Litig.,** 2014 WL 5525946 (N.D. Cal. Oct. 31, 2014)
- **Garnitschnig v. Horovitz,** 48 F. Supp. 3d 820 (D. Md. 2014)
- **SEC v. Cuban,** 620 F.3d 551 (5th Cir. 2010)
- **Cozzarelli v. Inspire Pharmaceuticals, Inc.,** 549 F.3d 618 (4th Cir. 2008)
- **Teachers' Retirement System of Louisiana v. Hunter,** 477 F.3d 162 (4th Cir. 2007)



# NICHOLAS I. PORRITT
## Partner

**PUBLICATIONS**

• "Current Trends in Securities Litigation: How Companies and Counsel Should Respond," Inside the Minds. Recent Developments in Securities Law (Aspatore Press 2010)

**EDUCATION**

• University of Chicago Law School, J.D., With Honors (1996)
• University of Chicago Law School, LL.M. (1993)
• Victoria University of Wellington, LL.B. (Hons.), With First Class Honors, Senior Scholarship (1990)

**AWARDS**

  

**ADMISSIONS**

• New York (1997)
• District of Columbia (1998)
• United States District Court for the District of Columbia (1999)
• United States District Court for the Southern District of New York (2004)
• United States Court of Appeals for the Fourth Circuit (2004)
• United States Court of Appeals for the District of Columbia Circuit (2006)
• United States Supreme Court (2006)
• United States District Court for the District of Maryland (2007)
• United States District Court for the Eastern District of New York (2012)
• United States Court of Appeals for the Second Circuit (2014)
• United States Court of Appeals for the Ninth Circuit (2015)
• United States District Court for the District of Colorado (2015) • United States Court of Appeals for the Tenth Circuit (2016)
• United States Court of Appeals for the Eleventh Circuit (2017)
• United States Court of Appeals for the Eighth Circuit (2019)
• United States Court of Appeals for the Third Circuit (2019)



# GREGORY POTREPKA
## Partner



Gregory M. Potrepka is a partner of the Firm in its Connecticut office. Mr. Potrepka's practice specializes in vindicating investor rights, including the interests of shareholders of publicly traded companies. Specifically, Mr. Potrepka has considerable experience prosecuting complex class actions, securities fraud matters, and similar commercial litigation. Mr. Potrepka's role in the Firm's securities litigation practice has significantly contributed to many of the Firm's successes, including the following representative matters:

• **In Re Grab Holdings Limited Sec. Litig.**, No. 1:22-cv-02189-JLR (S.D.N.Y.), $80 million recovery for shareholder class
• **In re Nutanix, Inc. Sec. Litig.**, No. 3:19-01651-WHO (N.D. Cal.); **Norton v. Nutanix, Inc.,** 3:21-cv-04080-WHO (N.D. Cal.) ($71 million recovery)
• **In re U.S. Steel Consolidated Cases**, No. 17-579 (W.D. Pa.) ($40 million recovery)
• **Rougier v. Applied Optoelectronics, Inc.**, No. 4:17-cv-2399 (S.D. Tex.) ($15.5 million recovery)
• **In re Helios and Matheson Analytics, Inc. Securities Litigation**, No. 1:18-cv-06965 (S.D.N.Y.) ($8.25 million recovery)
• **In re Aqua Metals Securities Litigation**, No. 17-cv-07142-HSG (N.D. Cal.) ($7 million recovery)


LEVI&KORSINSKY
Shareholder Advocates

Case 5:23-cv-03518-EJD    Document 89-1    Filed 01/29/26    Page 66 of 138

# GREGORY POTREPKA
## Partner

**EDUCATION**

• University of Connecticut School of Law, J.D. (2015)
• University of Connecticut Department of Public Policy, M.P.A. (2015)
• University of Connecticut, B.A., Political Science (2010)

**AWARDS**



**ADMISSIONS**

• Connecticut (2015)
• Mashantucket Pequot Tribal Court (2015)
• United States District Court for the District of Connecticut (2016)
• United States District Court for the Southern District of New York (2018)
• United States District Court for the Eastern District of New York (2018)
• United States Court of Appeals for the Third Circuit (2020)
• New York (2023)
• United States District of Colorado (2023)
• United States District Court for the District of Colorado (2023)
• United States Court of Appeals for the Ninth Circuit (2025)
• United States Court of Appeals for the Tenth Circuit (2025)



44

Case 5:23-cv-03518-EJD    Document 89-1    Filed 01/29/26    Page 67 of 138

# MARK S. REICH

## Partner



Mark Samuel Reich is a Partner of the Firm. Mark's practice focuses on consumer class actions, including cases involving privacy and data breach issues, deceptive and unfair trade practices, advertising injury, product defect, and antitrust violations. Mark, who has experience and success outside the consumer arena, also supports the Firm's securities and derivative practices.

Mark is attentive to clients' interests and fosters their activism on behalf of class members. Clients he has worked with consistently and enthusiastically endorse Mark's work:

> **Mark attentively guided me through each stage of the litigation, prepared me for my deposition, and ensured that I and other wronged consumers were compensated and that purchasers in the future could not be duped by the appliance manufacturer's misleading marketing tactics."**
>
> Katherine Danielkiewicz, Michigan (S.D. Tex. Nov. 13, 2019)

> **After my experience working with Mark and his colleague, any hesitancy I may have had in the past about leading or participating in a class action has gone away. Mark expertly countered every roadblock that the corporate defendant tried using to dismiss our case and we ultimately reached a resolution that exceeded my expectations"**
>
> Barry Garfinkle, Pennsylvania

# MARK S. REICH

## Partner

Before joining Levi & Korsinsky, Mark practiced at the largest class action firm in the country for more than 15 years, including 8 years as a Partner. Prior to becoming a consumer and shareholder advocate, Mark practiced commercial litigation with an international law firm based in New York, where he defended litigations on behalf of a variety of corporate clients.

Mark has represented investors in securities litigation, devoted to protecting the rights of institutional and individual investors who were harmed by corporate misconduct. His case work involved **State Street Yield Plus Fund Litig.** ($6.25 million recovery); **In re Doral Fin. Corp. Sec. Litig.**, SDNY ($129 million recovery); **Lockheed Martin Corp. Sec. Litig.** ($19.5 million recovery); **Tile Shop Holdings, Inc.** ($9.5 million settlement); **Curran v. Freshpet Inc.** ($10.1 million settlement); **In re Jakks Pacific, Inc.** ($3,925,000 settlement); **Fidelity Ultra Short Bond Fund Litig.** ($7.5 million recovery); and **Cha v. Kinross Gold Corp.** ($33 million settlement).

> **Never having been involved in a class action, I was uninformed and apprehensive. Mark and his colleagues not only explained the complexities, but maintained extensive ongoing, communications, involved us fully in all phases of the process; provided appropriate professional counsel and guidance to each participant, and achieved results that satisfied the original goals of the litigation"**
>
> Fred Sharp, New York

> **It was a pleasure being represented by Mark. Above all he was patient throughout the tedious process of litigation. He is a good listener and a good communicator, which enhanced my participation and understanding of the process. He also provided excellent follow up throughout, making the process feel more like a team effort."**
>
> Louise Miljenovic, New Jersey


LEVI&KORSINSKY
Shareholder Advocates

Our Attorneys     Partners

# MARK S. REICH
## Partner

At his prior firm, Mark achieved notable success challenging unfair mergers and acquisitions in courts throughout the country. Among the M&A litigation that Mark handled or participated in, his notable cases include: **In re Aramark Corp. S'holders Litig.**, where he attained a $222 million increase in consideration paid to shareholders of Aramark and a substantial reduction to management's voting power – from 37% to 3.5% – in connection with the approval of the going-private transaction; **In re Delphi Fin. Grp. S'holders Litig.**, resulting in a $49 million post-merger settlement for Class A Delphi shareholders; **In re TD Banknorth S'holders Litig.**, where Mark played a significant role in raising the inadequacy of the $3 million initial settlement, which the court rejected as wholly inadequate, and later resulted in a vastly increased $50 million recovery. Mark has also been part of ERISA litigation teams that led to meaningful results, including **In re Gen. Elec. Co. ERISA Litig.**, which resulting in structural changes to company's 401(k) plan valued at over $100 million, benefiting current and future plan participants.

> **We contacted Mark about our concerns about our oven's failure to perform as advertised. He worked with us to formulate a strategy that ultimately led to a settlement that achieved our and others' goals and specific needs."**
>
> Candace Oliarny, Idaho

> **My wife and I never having been involved with a law firm or Class Action had no idea what to expect. Within the first few phone meetings with Mark, we became assured as Mark explained in detail how the process worked, Mark is a great communicator. Mr. Reich is a true professional, his integrity through the years he worked with us was impeccable. Working with Mark was a truly positive experience, and have no reservations if we ever had to call on his services again."**
>
> Louise Miljenovic, New Jersey



**Our Attorneys**   **Partners**

# MARK S. REICH
## Partner

Before joining the Firm, Mark graduated with a Bachelor of Arts degree from Queens College in New York. He earned his Juris Doctor degree from Brooklyn Law School, where he served on the Moot Court Honor Society and The Journal of Law and Policy.

Mark regularly practices in federal and state courts throughout the country and is a member of the bar in New York. He has been recognized for his legal work by being named a New York Metro Super Lawyer by Super Lawyers Magazine every year since 2013. Mark is active in his local community and has been distinguished for his neighborhood support with a Certificate of Recognition by the Town of Hempstead.

**EDUCATION**

• Brooklyn Law School, J.D. (2000)
• Queens College, B.A., Psychology and Journalism (1997)

**AWARDS**





**ADMISSIONS**

• New York (2001)
• United States District Court for the Southern District of New York (2001)
• United States District Court for the Eastern District of New York (2001)
• United States District Court for the Northern District of New York (2005)
• United States District Court for the Eastern District of Michigan (2017)



# DANIEL TEPPER
## Partner



Daniel Tepper is a Partner of the Firm with extensive experience in shareholder derivative suits, class actions and complex commercial litigation. Before he joined Levi & Korsinsky, Mr. Tepper was a partner in one of the oldest law firms in New York. He is an active member of the CPLR Committee of the New York State Bar Association and was an early member of its Electronic Discovery Committee. Mr. Tepper has been selected as a New York "Super Lawyer" in 2016 – 2023.

Some of the notable matters where Mr. Tepper had a leading role include:

• **Siegmund v. Bian**, No. 16-62506 (S.D. Fla.), achieving an estimated recovery of $29.93 per share on behalf of a class of public shareholders of Linkwell Corp. who were forced to sell their stock at $0.88 per share.

• **In re Platinum-Beechwood Litigation**, No. 18-06658 (S.D.N.Y.), achieved dismissal on behalf of an individual investor in Platinum Partners-affiliated investment fund.

• **Lakatamia Shipping Co. Ltd. v. Nobu Su**, Index No. 654860/2016 (Sup. Ct., N.Y. Co. 2016), achieved dismissal on suit attempting to domesticate a $40 million UK judgment in New York State.

• **Zelouf Int'l Corp. v. Zelouf**, No. 45 Misc.3d 1205(A) (Sup.Ct. N.Y. Co., 2014), representing the plaintiff in an appraisal proceeding triggered by freeze-out merger of closely-held corporation. Achieved a $10 million verdict after eleven day trial, with the Court rejecting a discount for lack of marketability.

• **Sacher v. Beacon Assocs. Mgmt. Corp.**, No. 114 A.D.3d 655 (2d Dep't 2014), affirming denial of defendants' motion to dismiss shareholder derivative suit by Madoff feeder fund against fund's auditor for accounting malpractice.

• **In re Belzberg**, No. 95 A.D.3d 713 (1st Dep't 2012), compelling a non-signatory to arbitrate brokerage agreement dispute arising under doctrine of direct benefits estoppel.

• **Estate of DeLeo**, No. 353758/A (Surrog. Ct., Nassau Co. 2011), achieving a full plaintiff's verdict after a seven day trial which restored a multi-million dollar family business to its rightful owner.



Case 5:23-cv-03518-EJD    Document 89-1    Filed 01/29/26    Page 72 of 138

# DANIEL TEPPER

## Partner

· **CMIA Partners Equity Ltd. v. O'Neill**, No. 2010 NY Slip Op 52068(U) (Sup. Ct. N.Y. Co., 2010). Representing the independent directors of a Cayman Islands investment fund, won a dismissal on the pleadings in the first New York State case examining shareholder derivative suits under Cayman Islands law.
· **Hecht v. Andover Assocs. Mgmt. Corp.**, No. 27 Misc 3d 1202(A) (Sup. Ct. Nassau Co., 2010), aff'd, 114 A.D.3d 638 (2d Dep't 2014). Participated in a $213 million global settlement in the first Madoff related lawsuit in the country to defeat a motion to dismiss.

**EDUCATION**

· New York University School of Law, J.D. (2000)
· The University of Texas at Austin, B.A. with Honors (1997), National Merit Scholar

**AWARDS**

  

**ADMISSIONS**

· Massachusetts (2001)
· New York (2002)
· United States District Court for the Eastern District of New York (2004)
· United States District Court for the Southern District of New York (2010)
· United States District Court for the Western District of New York (2019)

LEVI&KORSINSKY
Shareholder Advocates

# ELIZABETH K. TRIPODI
## Partner



Elizabeth K. Tripodi focuses her practice on shareholder protection, representing investors in litigation involving mergers, acquisitions, tender offers, and change-in-control transactions, securities fraud litigation, and corporate derivative litigation. Ms. Tripodi has been named as a Washington, D.C. "Super Lawyer" in the securities field and was selected as a "Rising Star" by Thomson Reuters for several consecutive years.

Ms. Tripodi's trial experience includes:

• **In re Tesla, Inc. Securities Litigation**, No. 3:18-cv-04865-EMC (N.D. Cal.) (lead counsel in class action representing Tesla investors who were harmed by Elon Musk's "funding secured" tweet from August 7, 2018)

Ms. Tripodi has played a lead role in obtaining monetary recoveries for shareholders in M&A litigation:

• In **Reith v. Lichtenstein, et al.**, Case NO. 2018-0277-MTZ, on behalf of the class and derivatively on behalf of Steel Connect, Inc. recovering a $6 million fund to be distributed to common stockholders of Steel Connect, the majority of which going to the minority stockholders. The Court of Chancery approved the settlement on December 13, 2024, called the result an "excellent settlement."

• In **Karsan Value Fund v. Kostecki Brokerage Pty, Ltd. et al.**, Case No. C.A. No. 2021-0899-LWW (Delaware Chancery), on behalf of the class of former minority stockholders of Alloy Steel, and recovered a $9.5 million common fund – a $1.90 per share (75%) increase on top of the original merger consideration of $2.55 per share. The Court of Chancery approved the settlement on April 4, 2024, and remarked that it was "strong" and a "great settlement."



LEVI&KORSINSKY
Shareholder Advocates

**Our Attorneys**   **Partners**

# ELIZABETH K. TRIPODI
## Partner

• **In re Schuff International, Inc. Stockholders Litigation**, Case No. 10323-VCZ, achieving the largest recovery as a percentage of the underlying transaction consideration in Delaware Chancery Court merger class action history, obtaining an aggregate recovery of more than $22 million -- a gross increase from $31.50 to $67.45 in total consideration per share (a 114% increase) for tendering stockholders.

• **In re Bluegreen Corp. S'holder Litig.**, Case No. 502011CA018111 (Circuit Ct. for Palm Beach Cty., FL), creation of a $36.5 million common fund settlement in the wake of a majority shareholder buyout, representing a 25% increase in total consideration to the minority stockholders

• **In re Cybex International S'holder Litig.**, Index No. 653794/2012 (N.Y. Sup. Ct. 2014), recovery of $1.8 million common fund, which represented an 8% increase in stockholder consideration in connection with management-led cash-out merger

• **In re Great Wolf Resorts, Inc. S'holder Litig.**, C.A. No. 7328-VCN (Del. Ch. 2012), where there was a $93 million (57%) increase in merger consideration

• **Minerva Group, LP v. Keane**, Index No. 800621/2013 (N.Y. Sup. Ct. 2013), settlement in which Defendants increased the price of an insider buyout from $8.40 to $9.25 per share• **Minerva Group, LP v. Keane**, Index No. 800621/2013 (N.Y. Sup. Ct. 2013), settlement in which Defendants increased the price of an insider buyout from $8.40 to $9.25 per share

Ms. Tripodi has played a key role in obtaining injunctive relief while representing shareholders in connection with M&A litigation, including obtaining preliminary injunctions or other injunctive relief in the following actions:

• **In re Portec Rail Products, Inc. S'holder Litig**, No. G.D. 10-3547 (Ct. Com. Pleas Pa. 2010)
• **In re Craftmade International, Inc. S'holder Litig**, No. 6950-VCL (Del. Ch. 2011) • Dias v. Purches, et al., No. 7199-VCG (Del. Ch. 2012)
• **In re Complete Genomics, Inc. S'holder Litig**, No. 7888-VCL (Del. Ch. 2012)
• **In re Integrated Silicon Solution, Inc. Stockholder Litig.**, No. 115CV279142 (Sup. Ct. Santa Clara, CA 2015)



Case 5:23-cv-03518-EJD     Document 89-1     Filed 01/29/26     Page 75 of 138

# ELIZABETH K. TRIPODI
## Partner

Prior to joining Levi & Korsinsky, Ms. Tripodi was a member of the litigation team that served as Lead Counsel in, and was responsible for, the successful prosecution of numerous class actions, including: **Rudolph v. UTStarcom** (stock option backdating litigation obtaining a $9.5 million settlement); **Grecian v. Meade Instruments** (stock option backdating litigation obtaining a $3.5 million settlement).

**EDUCATION**

• American University Washington College of Law, cum laude (2006), where she served as Co-Editor in Chief of the Business Law Journal (f/k/a Business Law Brief), was a member of the National Environmental Moot Court team, and interned for Environmental Enforcement Section at the Department of Justice
• Davidson College, B.A., Art History (2000)

**AWARDS**

 

**ADMISSIONS**

• Virginia (2006)
• United States District Court for the Eastern District of Virginia (2006)
• District of Columbia (2008)
• United States District Court for the District of Columbia (2010)
• United States Court of Appeals for the Seventh Circuit (2018)





**Our Attorneys**

Counsel

- **ANDREW E. LENCYK**
- **BRIAN STEWART**

54

Case 5:23-cv-03518-EJD     Document 89-1     Filed 01/29/26     Page 77 of 138

# ANDREW E. LENCYK
## Counsel



Andrew E. Lencyk is Counsel to the Firm. Prior to joining the Firm, Mr. Lencyk was a partner in an established boutique firm in New York specializing in securities litigation. He was graduated magna cum laude from Fordham College, New York, with a B.A. in Economics and History, where he was a member of the College's Honors Program, and was elected to Phi Beta Kappa. Mr. Lencyk received his J.D. from Fordham University School of Law, where he was a member of the Fordham Urban Law Journal. He was named to the 2013, 2014, 2015, 2016, 2017, 2018 and 2019 Super Lawyers®, New York Metro Edition.

Mr. Lencyk has co-authored the following articles for the Practicing Law Institute's Accountants' Liability Handbooks:

- *Liability in Forecast and Projection Engagements: Impact of Luce v. Edelstein*
- *An Accountant's Duty to Disclose Internal Control Weaknesses*
- *Whistle-blowing: An Accountants' Duty to Disclose A Client's Illegal Acts*
- *Pleading Motions under the Private Securities Litigation Reform Act of 1995*
- *Discovery Issues in Cases Involving Auditors (co-authored and appeared in the 2002 PLI Handbook on Accountants' Liability After Enron.)*

In addition, he co-authored the following article for the Association of the Bar of the City of New York, Corporate & Securities Law Updates:

• Safe Harbor Provisions for Forward-Looking Statements (co-authored and published by the Association of the Bar of the City of New York, Corporate & Securities Law Updates, Vol. II, May 12, 2000)

Our Attorneys    Counsel

# ANDREW E. LENCYK

## Counsel

Cases in which Mr. Lencyk actively represented plaintiffs include:

• **Kirkland et al. v. WideOpenWest, Inc.**, No. 653248/2018 (Sup. Ct, NY County) (substantially denying defendants' motion to dismiss Section 11 and 12(a)(2) claims)
• **In re Community Psychiatric Centers Securities Litigation**, No. SA CV-91-533-AHS (Eex) (C.D. Cal.) and McGann v. Ernst & Young, SA CV-93-0814-AHS (Eex) (C.D. Cal.)(recovery of $54.5 million against company and its outside auditors)
• **In re Danskin Securities Litigation**, Master File No. 92 CIV. 8753 (JSM) (S.D.N.Y.);
• **In re JWP Securities Litigation**, Master File No. 92 Civ. 5815 (WCC) (S.D.N.Y.) (class recovery of approximately $36 million)
• **In re Porta Systems Securities Litigation**, Master File No. 93 Civ. 1453 (TCP) (E.D.N.Y.);
• **In re Leslie Fay Cos. Securities Litigation**, No. 92 Civ. 8036 (S.D.N.Y.)($35 million recovery)
• **Berke v. Presstek, Inc.**, No. 96-347-M (MDL Docket No. 1140) (D.N.H.) ($22 million recovery)
• **In re Micro Focus Securities Litigation**, No. C-01-01352-SBA-WDB (N.D. Cal.)
• **Dusek v. Mattel, Inc.**, et al., No. CV99-10864 MRP (C.D. Cal.) ($122 million global settlement)
• **In re Sonus Networks, Inc. Securities Litigation-II**, No. 06-CV-10040 (MLW) (D. Mass.)
• **In re AIG ERISA Litigation**, No. 04 Civ. 9387 (JES) (S.D.N.Y.) ($24.2 million recovery)
• **In re Mutual Funds Investment Litigation**, MDL No. 1586 (D. Md.)
• In re Alger, Columbia, Janus, MFS, One Group, Putnam, Allianz Dresdner, MDL No. 15863-JFM - Allianz Dresdner subtrack (D. Md.)
• **In re Alliance, Franklin/Templeton, Bank of America/Nations Funds and Pilgrim Baxter**, MDL No. 15862-AMD – Franklin/Templeton subtrack (D. Md.)
• **In re AIG ERISA Litigation II**, No. 08 Civ. 5722 (LTS) (S.D.N.Y.) ($40 million recovery); and
• **Flynn v. Sientra, Inc.**, No. CV-15-07548 SJO (RAOx) (C.D. Cal.) ($10.9 million recovery) (co-lead counsel) Court decisions in which Mr. Lencyk played an active role on behalf of plaintiffs include:
• **Pub. Empls' Ret. Sys. of Miss. v. TreeHouse Foods**, No. 2018 U.S. Dist. LEXIS 22717 (N.D. Ill. Feb. 12, 2018) (denying defendants' motion to dismiss in its entirety)



## ANDREW E. LENCYK

### Counsel

• **Flynn v. Sientra, Inc.**, No. 2016 U.S. Dist. LEXIS 83409 (C.D. Cal. June 9, 2016) (denying in substantial part defendants' motions to dismiss Section 10(b), Section 11 and 12(b)(2) claims), motion for reconsideration denied, slip op. (C.D. Cal. Aug 12, 2016)

• **In re Principal U.S. Property Account ERISA Litigation**, No. 274 F.R.D. 649 (S.D. Iowa 2011) (denying defendants' motion to dismiss)

• **In re AIG ERISA Litigation II**, No. 08 Civ. 5722(LTS), 2011 U.S. Dist. LEXIS 35717 (S.D.N.Y. May 31, 2011) (denying in substantial part defendants' motions to dismiss), renewed motion to dismiss denied, slip op. (S.D.N.Y. June 26, 2014)

• **In re Mutual Funds Investment Litigation**, No. 384 F. Supp. 2d 845 (D. Md. 2005) (denying in substantial part defendants' motions to dismiss), In re Alger, Columbia, Janus, MFS, One Group, Putnam, Allianz Dresdner, MDL No. 15863-JFM - Allianz Dresdner subtrack (D. Md. Nov. 3, 2005) (denying in substantial part defendants' motions to dismiss), and In re Alliance, Franklin/Templeton, Bank of America/Nations Funds and Pilgrim Baxter, MDL No. 15862-AMD – Franklin/Templeton subtrack (D. Md. June 27, 2008) (same)

• **In re AIG ERISA Litigation**, No. 04 Civ. 9387 (JES) (S.D.N.Y. Dec. 12, 2006) (denying defendants' motions to dismiss in their entirety)

• **Dusek v. Mattel, Inc.**, et al., No. CV99-10864 MRP (C.D. Cal. Dec. 17, 2001) (denying defendants' motions to dismiss Section 14(a) complaint in their entirety)

• **In re Micro Focus Sec. Litig.**, Case No. C-00-20055 SW (N.D. Cal. Dec. 20, 2000) (denying motion to dismiss Section 11 complaint);

• **Zuckerman v. FoxMeyer Health Corp.**, No. 4 F. Supp.2d 618 (N.D. Tex. 1998) (denying defendants' motion to dismiss in its entirety in one of the first cases decided in the Fifth Circuit under the Private Securities Litigation Reform Act of 1995)

• **In re U.S. Liquids Securities Litigation**, Master File No. H-99-2785 (S.D. Tex. Jan. 23, 2001) (denying motion to dismiss Section 11 claims)

• **Sands Point Partners, L.P., et al. v. Pediatrix Medical Group, Inc.**, et al., No. 99-6181-CIV-Zloch (S.D. Fla. June 6, 2000) (denying defendants' motion to dismiss in its entirety)

• **Berke v. Presstek, Inc.**, No. 96-347-M (MDL Docket No. 1140) (D.N.H. Mar. 30, 1999) (denying defendants' motion to dismiss)



**Our Attorneys** | Counsel

# ANDREW E. LENCYK
## Counsel

· **Chalverus v. Pegasystems, Inc.**, No. 59 F. Supp. 2d 226 (D. Mass. 1999) (denying defendants' motion to dismiss);
· **Danis v. USN Communications, Inc.**, No. 73 F. Supp. 2d 923 (N.D. Ill. 1999) (denying defendants' motion to

**EDUCATION**

· Fordham University School of Law, J.D. (1992)
· Fordham College, B.A. magna cum laude, 1988)

**AWARDS**

 

**ADMISSIONS**

· Connecticut (1992)
· New York (1993)
· United States District Court for the Southern District of New York (2004)
· United States District Court for the Eastern District of New York (2004)
· United States Court of Appeals for the Second Circuit (2015)

# BRIAN STEWART
## Counsel



Brian Stewart is Counsel to the Firm practicing in the Washington, D.C. office. Prior to joining the firm, Mr. Stewart was an associate at a small litigation firm in Washington D.C. and a regulatory analyst at the Financial Industry Regulatory Authority (FINRA). During law school, he interned for the Enforcement Divisions of the SEC and CFPB.

**EDUCATION**

• American University Washington College of Law, J.D. (2012)
• University of Washington, B.S., Economics and Mathematics (2008)

**ADMISSIONS**

• Maryland (2012)
• District of Columbia (2014)
• United States District Court for the District of Maryland (2017)
• United States District Court for the District of Colorado (2017)


LEVI&KORSINSKY
Shareholder Advocates



## Our Attorneys

## Senior Associates

- **JORDAN A. CAFRITZ**
- **MORGAN EMBLETON**
- **DAVID C. JAYNES**
- **CORREY A. SUK**

60

**Our Attorneys**  **Senior Associates**

# JORDAN A. CAFRITZ
## Senior Associate



Jordan Cafritz is a Senior Associate with the Firm's Washington, D.C. office. While attending law school at American University he was an active member of the American University Business Law Review and worked as a Rule 16 attorney in the Criminal Justice Defense Clinic. After graduating from law school, Mr. Cafritz clerked for the Honorable Paul W. Grimm in the U.S. District Court for the District of Maryland.

Notable cases Mr. Cafritz has litigated include:

In Karsan Value Fund v. Kostecki Brokerage Pty, Ltd. et al., C.A. No. 2021-0899-LWW (Delaware Chancery), Mr. Cafritz played a lead role in securing a $9.5 million common fund for the minority stockholders in connection with a controller buyout – a $1.90 per share (75%) increase on top of the original merger consideration of $2.55 per share.

In Jacobs v. Meghji, et al., C.A. No. 2019-1022-MTZ (Delaware Chancery), Mr. Cafritz played a lead role in challenging a series of unfair equity transactions imposed on Infrastructure Energy Alternatives Inc. The resulting settlement led to the issuance of new preferred stock that fundamentally revised the capital structure of the company and paved the way for a $1.1bn acquisition of the company.

**EDUCATION**

• American University Washington College of Law, J.D. (2014)
• University of Wisconsin-Madison, B.A., Economics & History (2010)

**ADMISSIONS**

• Maryland (2014)
• District of Columbia (2018)



# Our Attorneys     Senior Associates

## MORGAN EMBLETON
### Senior Associate



Morgan M. Embleton is a senior associate in the Firm's Connecticut office. Since 2018, Ms. Embleton has focused her practice on federal securities class actions and protecting the interests of shareholders of publicly traded companies.

Prior to that, Ms. Embleton litigated matters arising under the False Claims Act, Jones Act, Longshore Harbor Workers' Compensation Act, Louisiana Whistleblower Act, and Louisiana Environmental Whistleblower Act, as well as pharmaceutical mass torts and products liability claims. Ms. Embleton has extensive experience prosecuting securities fraud matters, complex class actions, and multidistrict litigations.

Ms. Embleton received her J.D. and Environmental Law Certificate from Tulane University Law School in 2014. During her time in law school, Ms. Embleton was a student attorney in the Tulane Environmental Law Clinic, a member of the Journal of Technology and Intellectual Property, and the Assistant Director of Research and Development for the Durationator.

**EDUCATION**

• Tulane University Law School, J.D. and Environmental Law Certificate (2014)
• University of Colorado at Boulder, B.A., cum laude, Sociology (2010)

**ADMISSIONS**

• Louisiana (2014)
• United States District Court for the Eastern District of Louisiana (2015)
• United States District Court for the Middle District of Louisiana (2016)
• United States District Court for the Western District of Louisiana (2016)
• United States Court of Federal Claims (2016)
• United States Court of Appeals for the Fifth Circuit (2016)
• United States Court of Appeals for the Ninth Circuit (2017)
• United States District Court for the Eastern District of Michigan (2020)
• United States District Court for the District of Colorado (2025)



LEVI&KORSINSKY
Shareholder Advocates

**Our Attorneys    Senior Associates**

# DAVID C. JAYNES
## Senior Associate



David C. Jaynes focuses his practice on investor protection and securities fraud litigation. In addition to his law degree, Mr. Jaynes has graduate degrees in business administration and finance. Prior to joining the firm, David worked in the Enforcement Division of the U.S. Securities and Exchange Commission in the Salt Lake Regional Office as part of the Student Honors Program. Mr. Jaynes began his career as a prosecutor and has significant trial experience.

While at Levi & Korsinsky, Mr. Jaynes has actively represented plaintiffs in the following securities class actions:

• **In re U. S. Steel Consolidated Cases**, No. 17-579 (W.D. Pa.)
• **Stein v. U.S. Xpress Enterprises, Inc.**, et al., No. 1:19-cv-98-TRM-CHS (E.D. Tenn.)
• **John P. Norton, On Behalf Of The Norton Family Living Trust** UAD 11/15/2002 v. Nutanix, Inc. et al, No. 3:21-cv-04080 (N.D. Cal.)

Mr. Jaynes has also had a role in litigating the following securities actions:
• **Ferraro Family Foundation, Inc. v. Corcept Therapeutics Incorporated**, No.5:19-cv-1372-LHK (N.D. Cal.)
• **The Daniels Family 2001 Revocable Trust v. Las Vegas Sands Corp.**, et al., No. 1:20-cv-08062-JMF (D. Nev.)
• **Dan Kohl v. Loma Negra Compania Industrial Argentina Sociedad Anonima**, et al., Index No. 653114/2018 (Sup. Ct., County of New York)

**LEVI&KORSINSKY**
Shareholder Advocates

**63**

# DAVID C. JAYNES

## Senior Associate

**EDUCATION**

• University of Utah, M.S., Finance (2020)
• University of Utah, M.B.A (2020)
• The George Washington University Law School, J.D. (2015)
• Brigham Young University, B.A., Middle East Studies and Arabic (2009)

**ADMISSIONS**

• Maryland (2015)
• Utah (2016)
• United States District Court for the District of Utah (2016)
• California (2021)
• United States District Court for the Northern District of California (2022)
• United States District Court for the Central District of California (2023)
• District of Colorado (2023)
• United States Court of Appeals for the Ninth Circuit (2025)
• United States Court of Appeals for the Tenth Circuit (2025)

# Our Attorneys    Senior Associates

## CORREY A. SUK
### Senior Associates



Correy A. Suk is an experienced litigator with a focus on shareholder derivative suits, class actions, and complex commercial litigation. Correy began her career with the Investor Protection Bureau of the Office of the New York State Attorney General and spent four years prosecuting shareholder derivative actions and securities fraud litigation at one of the oldest firms in the country. Prior to joining Levi & Korsinsky, Correy represented both individuals and corporations in complex business disputes at a New York litigation boutique. Correy's unflappable disposition and composure reflect a pragmatic approach to both litigation and negotiation. She thrives under pressure and serves as an aggressive advocate for her clients in the most high-stakes situations. Correy has been recognized as a Super Lawyers Rising Star every year since 2017.

### PUBLICATIONS

• "Unsafe Sexting: The Dangerous New Trend and the Need for Comprehensive Legal Reform," 9 Ohio St. J. Crim. L. 405 (2011)

### EDUCATION

• The Ohio State University Moritz College of Law, J.D. (2011)
• Georgetown University, B.S.B.A. (2008)

### AWARDS

  

### ADMISSIONS

• New Jersey (2011)
• New York (2012)
• United States District Court for the Southern District of New York (2015)
• United States District Court for the Eastern District of New York (2015)
• United States District Court for the District of New Jersey (2016)





# Our Attorneys

## Associates

- **CHRISTOPHER DEVIVO**
- **AMANDA FOLEY**
- **NOAH GEMMA**
- **DEVYN R. GLASS**
- **GARY ISHIMOTO**
- **TRAVIS JOHNSON**
- **JOSHUA KLUGER**
- **ALEXANDER KROT**
- **TYLER LITKE**
- **MELISSA MEYER**
- **JENNIFER MITTASCH**
- **CINAR ONEY**
- **AARON PARNAS**
- **MICHAEL POLLACK**
- **P. COLE VON RICHTHOFEN**
- **MAX WEISS**
- **TRENTON B. WEIS**
- **TYLER WINTERICH**
- **AZLYNE ZHENG**

66

## Our Attorneys    Associates

# CHRISTOPHER DEVIVO
## Associate



Christopher DeVivo is an Associate in the firm's New York office, specializing in consumer protection and data privacy matters. With a robust background in both law and business, Christopher offers a unique, well-rounded perspective on the complex legal challenges faced by consumers in the rapidly evolving technology landscape.

Prior to joining the firm, Mr. DeVivo was an Associate at a New York law firm where he represented plaintiffs in complex class actions involving violations of state and federal privacy and antitrust laws.

Christopher's unique perspective is further informed by his prior experience at American Express, where he held various roles in risk management, corporate governance, and financial planning.

While in law school, Christopher was a judicial intern to both the Honorable Lori S. Sattler of the New York County Supreme Court and the Honorable Linda S. Jamieson of the Westchester County Supreme Court.

**EDUCATION**

• New York Law (2021)
• New York University (2008)

**ADMISSIONS**

• New York (2022)
• United States District Court for the Southern District of New York (2023)

LEVI&KORSINSKY
Shareholder Advocates

68

# Our Attorneys    Associates

## AMANDA FOLEY
### Associate



Amanda Foley is an Associate in Levi & Korsinsky's Stamford office where she focuses her practice on federal securities litigation.
Prior to joining Levi & Korsinsky, Amanda gained substantial experience at a boutique Boston firm where she was trained in securities and business litigation.

Amanda received her Juris Doctorate degree from Suffolk University Law School with an International Law concentration with Distinction and was selected to join the International Legal Honor Society of Phi Delta Phi. While in law school, Amanda focused her legal education on securities law & regulation, international investment law & arbitration, and business law.

**EDUCATION**

• Suffolk University Law School, J.D. (2021)
• Colorado State University, B.S. (2011)

**ADMISSIONS**

• Massachusetts (2021)
• United States District Court for the District of Massachusetts (2022)

# Our Attorneys    Associates

## NOAH GEMMA
### Associate



Noah R. Gemma, Esq. is an associate for Levi & Korsinsky LLP's Washington, D.C. office.

Noah specializes in securities litigation, and his cases are often high-profile matters attracting national commentary. He has helped Levi & Korsinsky LLP return millions of dollars to wronged investors.  Noah has experience with pre-case investigations, courtroom advocacy, discovery management, and depositions for complex actions. He also has assisted with the preparation of memoranda for civil bench trials, criminal forfeiture proceedings, and state and federal appeals.

Prior to joining Levi & Korsinsky in 2021, he worked as a summer associate at a boutique commercial litigation firm. There, Noah helped the firm win multiple motions to dismiss on behalf of a national bank and a national bonding company in federal court cases involving alleged fraud and other alleged improprieties. He also represented a national hauling company in a federal bankruptcy proceeding and helped the firm secure a favorable decision on behalf of a national bonding company before the state supreme court.

During law school, Noah served as a judicial intern at both the federal trial and appellate levels. He was an intern for the Honorable Judge Bruce M. Selya in the United States Court of Appeals for the First Circuit and for the Honorable Judge Virginia M. Hernandez Covington in the United States District Court for the Middle District of Florida.

**EDUCATION**

• Georgetown University Law Center, J.D., Editor for The Georgetown Law Journal (2021)
• Providence College, B.A., *summa cum laude,* President for the Debate Society (2018)

**ADMISSIONS**

• Rhode Island (2021)
• District of Columbia (2022)



**70**

## Our Attorneys    Associates

# DEVYN R. GLASS
## Associate



Devyn R. Glass currently focuses her practice on representing investors in federal securities fraud litigation.

Prior to joining the firm, Ms. Glass gained substantial experience at a national boutique firm specializing in complex litigation across a variety of practice areas representing both plaintiffs and defendants. Since 2017, Ms. Glass has focused her practice on consumer and shareholder protection, litigating numerous class action lawsuits across the country that involved data privacy and data breach, deceptive and unfair trade practices, and securities fraud.

At her prior firms, Ms. Glass played a pivotal role in obtaining monetary recoveries and/or injunctive relief on behalf of shareholders and consumers. Notable cases include: Lowry v. RTI Surgical Holdings, Inc. et al., (D. Ill.) (obtaining $10.5 million on behalf of a shareholder class alleging violations of the federal securities laws); In re Google Plus Profile Litigation, (N.D. Cal.) (obtaining $7.5 million on behalf of a consumer class exposed to a years-long data breach); and Barrett v. Pioneer Natural Resources USA, Inc., (D. Colo.) (obtaining $500,000 on behalf of more than 8,000 current and former 401(k) plan participants alleging violations of the Employee Retirement Income Security Act).

**EDUCATION**

• Loyola University College of Law, New Orleans, J.D., cum laude (2016), where she received a Certificate of Concentration in Law, Technology and Entrepreneurship, served as a member of the Loyola Journal of Public Interest Law, and interned for the Louisiana Second Circuit Court of Appeals
• Louisiana Tech University, B.A., cum laude (2013), Political Science, minor in English

**ADMISSIONS**

• New York (2017)
• District of Columbia (2017)
• United States District Court District of Columbia (2018)
• United States District Court District of Colorado (2018)
• United States Court of Appeals for the Ninth Circuit (2022)


LEVI&KORSINSKY
Shareholder Advocates

71

## Our Attorneys     Associates

# GARY ISHIMOTO
## Associate



Gary Ishimoto is an Associate working remotely with Levi and Korsinsky's Consumer Litigation Team. During law school, he worked at the Small Business Law Clinic helping to draft incorporation papers, non-compete clauses, IP assignments, board consent, and stock purchase agreements for start-up businesses. He also interned for the Rossi Law Group.

**EDUCATION**

• Pepperdine School of Law, J.D. (2020)
• California State University, Northridge, B.S. (2013)

**ADMISSIONS**

• Massachusetts (2021)
• United States District Court for the District of Massachusetts (2022)
• United States Court of Appeals for the Ninth Circuit (2024)



# TRAVIS JOHNSON
## Associate



Travis Johnson is an Associate in the firm's Washington D.C. office. Prior to joining Levi & Korsinsky, Travis worked at a small firm specializing in bad-faith insurance litigation. Travis served as a law clerk for the Honorable Milton C. Lee, Jr. in District of Columbia Superior Court. While in law school, Travis was a student attorney in the Barton Child Law and Policy Center where he worked on research-backed policy proposals submitted to the Georgia Legislature to protect the legal rights and interests of children involved with the justice system. Travis also competed and coached in the Kaufman Memorial Securities Law Moot Court Competition.

**EDUCATION**

• Emory University Law School (2022)
• Utah State University, B.A., Political Science and Constitutional Studies, with Honors (2015)

**ADMISSIONS**

• Georgia (2022)
• District of Columbia (pending)[*]

[*]Pending admission to the D.C. bar, practicing under the supervision of a D.C. licensed attorney

LEVI&KORSINSKY
Shareholder Advocates

## Our Attorneys    Associates

# JOSHUA KLUGER
## Associate



Joshua Kluger is an Associate in Levi & Korsinsky's Connecticut office, where he focuses his practice on federal securities litigation and investor protection. Joshua previously interned with the honorable Judge Amy Berman Jackson of the United States District Court for the District of Columbia, the United States Department of Labor's Division of Plan Benefit Security, and the Financial Industry Regulatory Authority (FINRA). While attending law school, Joshua served on the Business & Finance Law Review and the Moot Court Board. He also served as a Dean's Fellow and earned an award for his oral advocacy skills in the 75th Van Vleck Moot Court competition. Joshua graduated from The George Washington University Law School with a concentration in business & finance law.

**EDUCATION**

• The George Washington University Law School (2025)
• The College of William & Mary (2019)

**ADMISSIONS**

• New Jersey (2025)

**LEVI&KORSINSKY**
Shareholder Advocates

**Our Attorneys**  Associates

# ALEXANDER KROT
## Associate



**EDUCATION**

• American University, Kogod School of Business, M.B.A. (2012)
• Georgetown University Law Center, LL.M., Securities and Financial Regulation, With Distinction (2011)
• American University Washington College of Law, J.D. (2010)
• The George Washington University, B.B.A., concentrations in Finance and International Business (2003)

**ADMISSIONS**

• Maryland (2011)
• District of Columbia (2014)
• United States District Court for the District of Colorado (2015)
• United States Court of Appeals for the Tenth Circuit (2016)
• United States District Court for the Eastern District of Wisconsin (2017)
• United States Court of Appeals for the Third Circuit (2018)
• United States Court of Appeals for the Ninth Circuit (2020)



LEVI&KORSINSKY
Shareholder Advocates

**Our Attorneys**   Associates

# TYLER LITKE
## Associate



Tyler Litke is an Associate in the Consumer Protection Group at Levi & Korsinsky, LLP, where he represents consumers in class actions and mass arbitrations for claims involving data breaches, false advertising, deceptive marketing, product defects, and unfair business practices.

Mr. Litke represents individuals who are willing to stand up against powerful corporations and institutions, not only for themselves but on behalf of others, to protect consumer rights and promote fair business practices.

Prior to joining Levi & Korsinsky, Mr. Litke represented both plaintiffs and defendants at national law firms in complex litigation and class action matters, including product liability, securities fraud, environmental and toxic torts, and consumer protection cases. He has handled all phases of litigation from inception through trial in state and federal courts. This experience on both sides of the courtroom provides him with strategic insight into defense tactics and enables him to develop effective litigation strategies for his clients.

Mr. Litke received his J.D. from Loyola University Chicago School of Law and his B.A. from the University of Texas at Austin. He is licensed to practice in New York and Illinois.

**EDUCATION**

• Loyola University Chicago School of Law, J.D., 2018
• University of Texas at Austin, B.A., 2014

**ADMISSIONS**

• Illinois (2018)
• New York (2019)
• U.S. District Court for the Northern District of Illinois (2020)
• U.S. District Court for the Southern District of Illinois (2020)
• U.S. District Court for the Eastern District of Michigan (2021)
• U.S. District Court for the Central District of Illinois (2022)
• U.S. District Court for the Western District of New York (2022)
• U.S. District Court for the Southern District of New York (2023)



## Our Attorneys    Associates

# MELISSA MEYER
## Associate



Melissa Meyer is an Associate in Levi & Korsinsky's New York Office for the Consumer Litigation and Mass Arbitration Practice Group. Her practice is currently focused on protecting consumer rights in complex class actions with a focus on data privacy and products liability.

Prior to Melissa joining Levi & Korsinsky's Consumer Litigation Team, Melissa specialized in client services and retention for the firm's securities fraud litigation practice groups.

During law school, Melissa gained substantial experience in all aspects of complex class action litigation while being employed as a paralegal and law clerk in Levi & Korsinsky's New York office, working with each of the Firm's practice groups.

**EDUCATION**

• New York Law School, J.D., Dean's Scholar Award, member of the Dean's Leadership Council (2018)
• John Jay College of Criminal Justice, B.A. (2013), *magna cum laude*

**ADMISSIONS**

• New York (2019)
• United States District Court for the Southern District of New York (2020)
• United States District Court for the Eastern District of New York (2025)



# Our Attorneys   Associates

## JENNIFER MITTASCH
### Associate



Jennifer Mittasch is an Associate in Levi & Korsinsky's New York Office for the Consumer Litigation and Mass Arbitration Practice Group. Her practice is currently focused on protecting consumer rights in complex class actions with a focus on data privacy.

Prior to joining Levi & Korsinsky's Consumer Litigation Team, Jennifer worked for the NYC Administration for Children's Services, where she worked to protect children in neglectful and abusive environments.

**EDUCATION**

• New York Law School, J.D. (2019)
• University of South Florida, B.A. (2014)

**ADMISSIONS**

• New York (2019)

LEVI&KORSINSKY
Shareholder Advocates

# Our Attorneys    Associates

## CINAR ONEY
## Associate



Cinar Oney is an Associate in Levi & Korsinsky's New York office. His practice focuses on investigation and analysis of various forms of corporate misconduct, including excessive compensation, insider trading, unfair self-dealing, and corporate waste. He develops litigation strategies through which shareholders can pursue recoveries.

Prior to joining Levi & Korsinsky, Mr. Oney practiced with top firms in Turkey, where he represented shareholders, corporations, and governmental entities in commercial disputes and transactional matters.

**PUBLICATIONS**

• *FinTech Industrial Banks and Beyond: How Banking Innovations Affect the Federal Safety Net*, 23 FORDHAM J. CORP. & FIN. L. 541 (2018)

**EDUCATION**

• Fordham University School of Law, J.D. (2019)
• International University College of Turin, LL.M. (2014)
• Istanbul University Faculty of Law, Undergraduate Degree in Law (2011)

**ADMISSIONS**

• New York (2020)



## Our Attorneys    Associates

# AARON PARNAS
## Associate



Aaron Parnas is an Associate in the firm's Washington, D.C. office. Prior to joining Levi & Korsinsky, Aaron served as a law clerk for the Honorable Sheri Polster Chappell in the United States District Court for the Middle District of Florida. While in law school, Aaron was a student attorney for the Criminal Appeals and Post-Conviction Series Clinic along with the Vaccine Injury Litigation Clinic, where he litigated matters in front of the Maryland Court of Special Appeals and the Court of Federal Claims. respectively. As a result of his successes, Aaron was named the top advocate in his graduating class and received the Graduation Award for Excellence in Pre-Trial and Trial Advocacy.

### EDUCATION

•The George Washington University Law School, with Honors (2020), where he served as the Managing Editor, Vol. 52 of The George Washington International Law Review
• Florida Atlantic University, BA, Political Science and Criminal Justice, with Honors (2017)

### ADMISSIONS

• Florida (2020)
• United States District Court for the Southern District of Florida (2021)
• District of Columbia (pending)*

*Pending admission to the D.C. bar, practicing under the supervision of a D.C. licensed attorney

**LEVI&KORSINSKY**
Shareholder Advocates

# MICHAEL POLLACK
## Associate



Michael Neal Pollack is an Associate in Levi & Korsinsky's New York Office in the Consumer Litigation and Mass Arbitration Practice Group. His practice focuses on protecting consumer privacy rights as well as prosecuting false advertising claims.

Michael served as a judicial extern in the Chambers of the Honorable Gerald Lebovits of the Supreme Court of the State of New York. Michael has experience in plaintiff side Employment litigation and in Trust and Estates litigation. He also worked to protect tenants facing evictions and in the New Jersey Attorney General's office doing appellate work in family law.

**EDUCATION**

• Fordham University School of Law, J.D. (2024), Online Editor of *Fordham Environmental Law Review,* Archibald R. Murray Public Service Award (*magna cum laude*), Francis J. Mulderig Award
• University of Maryland, College Park, B.A., (2020) Honors in Philosophy

**ADMISSIONS**

• New York (2025)
• United States District Court for the Southern District of New York (2025 )
• United States District Court for the Eastern District of New York (2025)



# Our Attorneys     Associates

## P. COLE VON RICHTHOFEN
### Associate



P. Cole von Richthofen is an Associate in Levi & Korsinsky's Connecticut office. As a law student, he interned with the honorable Judge Thomas Farrish in the District of Connecticut's Hartford courthouse with an emphasis on settlements. He has also interned with the Office of the Attorney General for the State of Connecticut in the Employment Rights Division. While attending law school, Cole served as an Executive Editor of the Connecticut Public Interest Law Journal and as a member of the Connecticut Moot Court Board.

**EDUCATION**

• University of Connecticut School of Law, J.D. (2022)
• University of Connecticut, B.S., Business & Marketing (2015)

**ADMISSIONS**

• Connecticut (2022)
• United States District Court for the District of Connecticut (2024)
• United States District Court for the Southern District of New York (2025)

**LEVI&KORSINSKY**
Shareholder Advocates

83

# Our Attorneys     Associates

# MAX WEISS
## Associate



Max Weiss focuses his practice on investor protection and securities fraud litigation. Max's efforts have helped result in the recovery of millions for investors, with notable cases such as **In re QuantumScape Securities Clas Action**, No. 3:21-cv-00058-WHO (N.D. Cal.), where he played a leading role on the team that attained a $47.5 million recovery on behalf of a class of investors who sustained damages in connection with claims alleging that QuantumScape misled the public about its prototype battery during its December 8, 2020 Solid-State Battery Showcase and in subsequent public statements.

Max has substantial experience in all aspects of litigation, including investigating and drafting class-action complaints, briefing dispositive and other motions, managing discovery efforts, working closely with experts, and trial.

While in law school, Max gained experience helping *pro se* debtors prepare and file Chapter 7 and Chapter 13 petitions with the New York Legal Assistance Group (**NYLAG**) Bankruptcy Project and served as an intern to the Honorable Sean Lane of the Southern District of New York Bankruptcy Court.

**EDUCATION**

• St. John's School of Law, J.D. (2018), where he served as the Senior Executive Editor of the Journal of Civil Rights & Economic Development
• Colgate University, B.A., Political Science (2011)

**ADMISSIONS**

• New York (2019)
• United States District Court for the Southern District of New York (2019)
• United States District Court for the Eastern District of New York (2019)



**LEVI&KORSINSKY**
Shareholder Advocates

# Our Attorneys    Associates

## TRENTON B. WEISS

### Associate



Trenton B. Weis is an Associate in the firm's New York Office in the Consumer Litigation and Mass Arbitration Practice Group. His practice is currently focused on consumer protection and data privacy matters with particular attention to the procedural and practical complexities involved in mass arbitrations.

Prior to joining Levi & Korsinsky, Trent worked with small business clients to design and manage entity structures, compliance protocols, and governance documents. While in law school, Trent was a student attorney in the Entrepreneurship & Nonprofit Clinic where he advised local and underprivileged businesses on an array of issues, including entity formation, contracts, and licensing agreements. Trent also served as a judicial intern for the Honorable L. Scott Coogler of the U.S. District Court for the Northern District of Alabama.

**EDUCATION**

• The University of Alabama School of Law, J.D. (2021), Associate Editor of the *Alabama Civil Rights and Civil Liberties Law Review*, President of Law & Economics Society
• Sewanee: The University of the South, B.A. in Economics (2017)

**ADMISSIONS**

• New York (2024)



87

# Our Attorneys          Associates

# TYLER WINTERICH
## Associate



Tyler Winterich is an Associate in the Firm's Connecticut office.

Before working at the Firm, Mr. Winterich was an Attorney Advisor at the Department of Labor's Office of Administrative Law Judges where he drafted decisions and orders and performed legal research for matters pending before Administrative Law Judges Steven D. Bell and Jason A. Golden. Matters included benefits under the Black Lung Benefits Act, protections under various whistleblower statutes, as well as H-2A and H-2B visa applications arising under the Immigration and Nationality Act.

During law school, Mr. Winterich was the Executive Note Editor of the Review of Banking & Financial Law and participated in the Environmental Law Practicum. He also was a summer law clerk at the Institute for Policy Integrity at NYU School of Law and a summer associate at the Legal Aid Society of Cleveland.

Mr. Winterich also has experience in public accounting. He was a senior associate at PricewaterhouseCoopers LLP, where he drafted disclosures and assessed preliminary compliance for emerging sustainability disclosure frameworks. At Ernst & Young LLP, he was an associate in internal audit functions for publicly held companies across several industries.

**EDUCATION**

• Boston University School of Law, J.D. (2022)
• Boston University Fredrick S. Pardee School of Global Studies, M.A. in International Relations (2022)
• University of Michigan, B.B.A. with High Distinction (2017)

**ADMISSIONS**

• Ohio (2022)


LEVI&KORSINSKY
Shareholder Advocates

# Our Attorneys     Associates

## AZLYNE ZHENG
### Associate



Azlyne Zheng currently focuses her practice on representing investors in federal securities litigation.

Prior to joining the firm, Azlyne specialized in commercial litigation, representing both plaintiffs and defendants in New York and New Jersey. While in law school, she served as the Finance and Marketing Editor of The George Washington International Law Review and interned for the Honorable Vera M. Scanlon of the U.S. District Court for the Eastern District of New York. In that role, she gained experience across a broad range of legal areas, including commercial real estate, trusts and estates, intellectual property, and federal labor disputes.

**EDUCATION**

• The George Washington University Law School, JD (2023)
• St. Lawrence University, BS. (2020)

**ADMISSIONS**

• New York (2024)
• New Jersey (2024)

# EXHIBIT 2



**2024 REVIEW & ANALYSIS**

# Securities Class Action Settlements

REVIEW & ANALYSIS

## CORNERSTONE RESEARCH
Economic and Financial Consulting and Expert Testimony

# Table of Contents

2024 Highlights ........................................................................................................ 1

Author Commentary ............................................................................................... 2

    Findings ............................................................................................................... 2

    Looking Ahead ................................................................................................... 2

Total Settlement Dollars ........................................................................................ 3

Settlement Size ....................................................................................................... 4

Introduction of Plaintiff-Style Damages ............................................................... 5

Type of Claim .......................................................................................................... 6

    Rule 10b-5 Claims and Plaintiff-Style Damages ............................................. 6

    '33 Act Claims and Statutory Damages ............................................................ 8

Analysis of Settlement Characteristics ................................................................ 10

    GAAP Violations ............................................................................................... 10

    Derivative Actions ............................................................................................ 11

    Institutional Investors ...................................................................................... 12

Time to Settlement and Case Complexity ........................................................... 13

Case Stage at the Time of Settlement ................................................................. 14

Cornerstone Research's Settlement Analysis ...................................................... 15

    Determinants of Settlement Outcomes ......................................................... 15

Research Sample ................................................................................................... 16

Endnotes ................................................................................................................ 17

Appendices ............................................................................................................ 19

About the Authors ................................................................................................ 22

CORNERSTONE RESEARCH REVIEW & ANALYSIS

# Figures and Appendices

Figure 1: Settlement Statistics     1

Figure 2: Total Settlement Dollars     3

Figure 3: Distribution of Settlements Amounts     4

Figure 4: Median and Average Plaintiff-Style Damages in Rule 10b-5 Cases     6

Figure 5: Median Settlement as a Percentage of Plaintiff-Style Damages by Damages Ranges in Rule 10b-5 Cases     7

Figure 6: Settlements by Nature of Claims     8

Figure 7: Median Settlement as a Percentage of Statutory Damages by Damages Ranges in Cases with Only '33 Act Claims     9

Figure 8: Jurisdictions of Settlements of '33 Act Claim Cases     9

Figure 9: Percentage of Cases Involving Accounting Allegations     10

Figure 10: Number of Settlements with an Accompanying Derivative Action     11

Figure 11: Median Settlement Amount by Institutional Investor Participation as Lead or Co-Lead Plaintiff     12

Figure 12: Median Statistics by Institutional Investor Participation as Lead or Co-Lead Plaintiff     12

Figure 13: Median Settlement Amount by Duration from Filing Date to Settlement Hearing Date     13

Figure 14: Median Settlement Dollars and Stage of Litigation at Time of Settlement     14

Figure 15: 2024 Median Statistics for Cases Settled Prior to and After a Filing for MCC     14

Appendix 1: Settlement Percentiles     19

Appendix 2: Settlements by Select Industry Sectors     19

Appendix 3: Settlements by Federal Circuit Court     20

Appendix 4: Mega Settlements     20

Appendix 5: Median and Average Settlements as a Percentage of Plaintiff-Style Damages     21

Appendix 6: Median and Average Settlements as a Percentage of Statutory Damages     21

CORNERSTONE RESEARCH REVIEW & ANALYSIS



CORNERSTONE RESEARCH REVIEW & ANALYSIS

# 2024 Highlights

The median settlement amount declined from the 13-year high in 2023, but remained 24% above the 2015–2023 median. Median plaintiff-style damages[1] also fell in 2024, despite reaching the third-highest level in the past decade.

In 2024, there were 88 securities class action settlements totaling approximately $3.7 billion, compared to 83 settlements totaling $4.0 billion in 2023.

The median settlement amount of $14.0 million declined 10% from 2023.

The average settlement amount of $42.4 million decreased 13% from 2023.

Seven mega settlements ($100 million or greater) accounted for 54% of the total settlement value.

The median settlement amount for cases with only Securities Act of 1933 ('33 Act) claims was $10.3 million, a 26% decrease from 2023.

Median plaintiff-style damages declined 20% year-over-year to $272 million following a record high in 2023.[2]

Issuer defendant firms with settlements in 2024 were 65% smaller than those in 2023, as measured by median total assets, which reached its lowest level since 2018.

The median duration from case filing to settlement hearing (3.2 years) declined 14% from the record peak observed in 2023 (3.7 years), but remains historically elevated.

In 2024, 19% of settlements were related to a special purpose acquisition company (SPAC).[3] The median settlement amount for SPAC cases was $12.0 million, compared to $15.3 million for non-SPAC cases.

**Figure 1: Settlement Statistics**
(Dollars in millions)

| | 2015–2023 | 2023 | 2024 |
|---|---|---|---|
| **Number of Settlements** | 736 | 83 | 88 |
| **Total Amount** | $37,294.2 | $4,043.2 | $3,732.9 |
| **Minimum** | $0.4 | $0.8 | $0.6 |
| **Median** | $11.3 | $15.4 | $14.0 |
| **Average** | $50.7 | $48.7 | $42.4 |
| **Maximum** | $3,748.3 | $1,029.5 | $490.0 |

Note: Settlement dollars are adjusted for inflation; 2024 dollar equivalent figures are presented.

# Author Commentary

## FINDINGS

Settlements in securities class actions continued at a pace typical of recent years. While both total settlement dollars and the median settlement amount declined from 2023, they remained at high levels compared to the past decade.

This decline in settlement sizes can largely be attributed to lower plaintiff-style damages—a proxy for the amount of potential investor losses that plaintiffs may claim in a securities class action, which our research finds to be the single most important factor in explaining individual settlement amounts.

Institutional investors served as lead plaintiff less frequently in 2024 settlements, with their involvement reaching the lowest level over the last 10 years. An institutional investor serving as lead or co-lead plaintiff has historically been associated with cases with larger settlements and higher plaintiff-style damages. Lower institutional investor involvement is consistent with lower median plaintiff-style damages.

Issuer defendants had significantly smaller median total assets than in 2023, marking the lowest level observed since 2018. Additionally, a greater percentage of 2024 settlements involved issuers that had been delisted from a major exchange and/or had declared bankruptcy. Issuer

**IN THEIR WORDS**

**Eric Tam,** Principal at Cornerstone Research

*"Median settlement amount and plaintiff-style damages declined from their highs observed in 2023, but remained at elevated levels relative to the past decade."*

**IN THEIR WORDS**

**Laarni T. Bulan,** Vice President at Cornerstone Research

*"What is interesting in 2024 is the high proportion of settled cases related to SPACs.  The median settlement for SPAC cases was 21% lower than the median for non-SPAC cases."*

defendant firm assets and issuer distress both have potential implications for the ability to fund a settlement, which is consistent with the smaller settlements in 2024.

This was also the first year in which a large number of settled cases were related to SPACs. SPAC cases tended to settle for smaller amounts compared to non-SPAC cases. Commentators have suggested that D&O insurance coverage for SPAC cases was likely limited,[4] which may have played a role in the lower SPAC-related settlement values.

## LOOKING AHEAD

Absent a change in dismissal rate, the number of settled cases in the coming years is not expected to change substantially given recent securities case filing trends. Further, the elevated levels in recent years of proxies for potential investor losses reported in Cornerstone Research's *Securities Class Action Filings—2024 Year in Review* suggest that settlement amounts could remain at relatively high levels. The large proportion of SPAC-related settlements will likely continue for a few years before tapering off.

# Total Settlement Dollars

In 2024, total settlement dollars declined by 8%, even as the number of settled cases increased from the prior year.

Fewer mega settlements ($100 million or greater) contributed to lower total settlement dollars. There were seven such settlements in 2024 down from nine in 2023. Additionally, the largest mega settlement was $490 million, compared to a $1 billion settlement in 2023.

**QUICK STAT**

# −8%

Change in total settlement dollars from 2023 to 2024

See Appendix 4 for an analysis of mega settlements.

**Figure 2: Total Settlement Dollars**
2015–2024
(Dollars in billions)



Note: Settlement dollars are adjusted for inflation; 2024 dollar equivalent figures are presented. "N" refers to the number of settlements.

CORNERSTONE RESEARCH REVIEW & ANALYSIS

# Settlement Size

The median settlement amount in 2024 was $14 million, a 10% decline from the 13-year high observed in 2023.

The average settlement amount in 2024 was $42.4 million, a 13% decrease from 2023.

Issuers that have been delisted from a major exchange and/or declared bankruptcy prior to settlement are generally associated with lower settlement amounts. The proportion of settlements with such issuers increased from 6% in 2023 to 16% in 2024, contributing to the decline in settlement amounts.

Seventeen settlements were related to SPACs. In comparison, there were only six SPAC-related settlements in total between 2017 and 2023. The median and average settlement amounts for

**FAST FACT**

*Issuer defendant firms in 2024 settlements were 65% smaller, as measured by median total assets, than those in 2023, the lowest observed level since 2018.*

SPAC cases were $12.0 million and $16.7 million, respectively—21% and 66% smaller than the median and average settlement amounts, respectively, for non-SPAC cases.

See Appendix 1 for an analysis of settlement amounts by percentiles.

**Figure 3: Distribution of Settlements Amounts**
2015–2024
(Dollars in millions)



Note: Settlement dollars are adjusted for inflation; 2024 dollar equivalent figures are presented. Percentages may not sum to 100% due to rounding.

# Introduction of Plaintiff-Style Damages

In this report, we introduce plaintiff-style damages—a new proxy for the amount of potential investor losses that plaintiffs may claim in a securities class action.

Our research has consistently found that the most important determinant of settlement outcomes is potential investor losses. Plaintiff-style damages are estimated using an approach that more closely aligns with approaches used by plaintiffs in the current securities class action litigation environment.

In the past, we presented "simplified tiered damages" as a measure of potential investor losses. That approach reflected certain data limitations but allowed for consistency across a large volume of cases, enabling the identification and analysis of settlement trends. Cornerstone Research's latest investments in big data analytics and capabilities have enhanced the estimation of potential investor losses by incorporating additional case-specific data while maintaining a consistent approach across cases. For example, when estimating the number of shares eligible for damages, the new plaintiff-style damages approach adjusts for short interest positions and shares estimated to be held by institutional investors throughout the entire class period. These and other adjustments result in plaintiff-style damages that tend to be smaller than the previously used measure of simplified tiered damages.

*Cornerstone Research's latest investments in big data analytics and capabilities have enhanced the estimation of potential investor losses by incorporating additional case-specific data while maintaining a consistent approach across cases.*

Our analysis also finds that plaintiff-style damages are generally larger than the aggregate damages amounts reported by plaintiffs in their motions for settlement approval, referred to as "plaintiff-estimated damages." As previously discussed in Cornerstone Research's *Securities Class Action Settlements—2023 Review and Analysis*, plaintiff-estimated damages are often represented by plaintiffs as the "best-case scenario" or the "maximum potential recovery."[5] As other authors have noted, plaintiff counsel have an incentive to report "the lower end of the range of estimated total aggregate damages" in order "to demonstrate to the court a high settlement amount relative to potential recovery."[6]

# Type of Claim

## RULE 10B-5 CLAIMS AND PLAINTIFF-STYLE DAMAGES

Cornerstone Research's analysis finds a proxy for investor losses—in this case plaintiff-style damages—to be the most important determinant of settlement outcomes based on regression analysis.[7] However, plaintiff-style damages do not represent actual economic losses borne by shareholders. Determining any such economic losses for a given case requires more in-depth analysis.

CORNERSTONE RESEARCH REVIEW & ANALYSIS

**QUICK STAT**

## −36%

Change in median length of the class period for settled cases from 2023 to 2024

Median and average plaintiff-style damages both declined in 2024, but remained at similarly elevated levels as observed in recent years.

All else equal, larger plaintiff-style damages are generally associated with longer class periods. Consistent with the lower levels of plaintiff-style damages observed in 2024, the median length of the class period for settled cases in 2024 was 1.2 years, compared to 1.9 years in 2023.

**Figure 4: Median and Average Plaintiff-Style Damages in Rule 10b-5 Cases**
2015–2024
(Dollars in millions)



Note: Plaintiff-style damages are adjusted for inflation based on class period end dates and are estimated for common stock/ADR/ADS only; 2024 dollar equivalent figures are presented. Damages are estimated for cases alleging a claim under Rule 10b-5 (whether alone or in addition to other claims).

In 2024, the overall median settlement as a percentage of plaintiff-style damages was 7.3% — an increase of 16% from 2023, but equaling the 2015–2023 median.

For cases with plaintiff-style damages less than $25 million, the median settlement as a percentage of plaintiff-style damages reached 28.2%, the highest level observed since 2017.

See Appendix 5 for additional information on median and average settlements as a percentage of plaintiff-style damages.

**FAST FACT**

*Larger cases, as measured by plaintiff–style damages, typically settle for a smaller percentage of those damages.*

**Figure 5: Median Settlement as a Percentage of Plaintiff-Style Damages by Damages Ranges in Rule 10b-5 Cases**
2015–2024
(Dollars in millions)



Note: Plaintiff-style damages are adjusted for inflation based on class period end dates and are estimated for common stock/ADR/ADS only; 2024 dollar equivalent figures are presented. Damages are estimated for cases alleging a claim under Rule 10b-5 (whether alone or in addition to other claims).

CORNERSTONE RESEARCH REVIEW & ANALYSIS

## '33 ACT CLAIMS AND STATUTORY DAMAGES

For cases with only '33 Act claims—those involving Section 11 and/or Section 12(a)(2) claims and no Rule 10b-5 claims—potential shareholder losses (referred to here as "statutory damages") are estimated based on the difference between the statutory purchase and sales prices for those shares that are assumed to be traceable to the registration statement at issue.[8]

There were nine settlements with only '33 Act claims in 2024. The majority of those cases were filed in federal court (six), with the remainder in state court (three).[9]

CORNERSTONE RESEARCH REVIEW & ANALYSIS

### QUICK STATS

**9**

Number of '33 Act settlements in 2024

**$10.3 million**

The median settlement for cases with only '33 Act claims in 2024

In 2024, the median settlement amount for '33 Act–only cases declined by 26% from 2023 to $10.3 million, aligning with the 2015–2023 median.

Additionally, 89% of these cases in 2024 named an underwriter defendant, up from 70% in 2023 and consistent with the 2015–2023 average of 86%.

**Figure 6: Settlements by Nature of Claims**
2015–2024
(Dollars in millions)

| | Number of Settlements | Median Settlement | Median Statutory Damages | Median Settlement as a Percentage of Statutory Damages |
|---|---|---|---|---|
| Section 11 and/or Section 12(a)(2) Only | 93 | $10.3 | $129.9 | 7.9% |

| | Number of Settlements | Median Settlement | Median Plaintiff-Style Damages | Median Settlement as a Percentage of Plaintiff-Style Damages |
|---|---|---|---|---|
| Both Rule 10b-5 and Section 11 and/or Section 12(a)(2) | 128 | $16.2 | $262.8 | 8.8% |
| Rule 10b-5 Only | 602 | $11.3 | $216.6 | 6.9% |

Note: Settlement dollars and damages are adjusted for inflation; 2024 dollar equivalent figures are presented.

The median statutory damages in 2024 decreased by 14% from the 2023 median, but remained the second-highest in the past decade.

The median settlement as a percentage of "statutory damages" increased to 7.1% from the 10-year low of 5.4% in 2023.

The median size of issuer defendants (measured by total assets) was 26% larger for settlements with only '33 Act claims relative to those that included Rule 10b-5 claims, reversing a two-year trend in which these cases involved smaller issuer defendants.

The median length of time from case filing to settlement hearing date for '33 Act claim cases was 3.7 years in 2024, down from 4.2 years in 2023.

CORNERSTONE RESEARCH REVIEW & ANALYSIS

### QUICK STATS

## 7.1%
Median settlement as a percentage of statutory damages in 2024

## 3.7 years
The median time to settle for 2024 cases with only '33 Act claims

See Appendix 6 for additional information on median and average settlements as a percentage of statutory damages.

**Figure 7: Median Settlement as a Percentage of Statutory Damages by Damages Ranges in Cases with Only '33 Act Claims**
2015–2024
(Dollars in millions)



| < $50<br>N=19 | $50–$149<br>N=31 | >= $150<br>N=43 | Total Sample<br>N=93 |
|---|---|---|---|
| 19.5% | 10.2% | 5.7% | 7.9% |

Note: "N" refers to the number of cases. Damages are adjusted for inflation; 2024 dollar equivalent figures are presented. This analysis excludes cases alleging Rule 10b-5 claims.

**Figure 8: Jurisdictions of Settlements of '33 Act Claim Cases**

|  | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|---|---|---|---|
| **State Court** | 2 | 4 | 5 | 4 | 4 | 7 | 6 | 6 | 3 | 3 |
| **Federal Court** | 3 | 6 | 3 | 4 | 5 | 1 | 12 | 3 | 7 | 6 |

Note: This analysis excludes cases alleging Rule 10b-5 claims.

# Analysis of Settlement Characteristics

## GAAP VIOLATIONS

This analysis examines allegations of GAAP violations in settlements of securities class actions involving Rule 10b-5 claims, including two subcategories of GAAP violations—financial restatements and accounting irregularities.[10]

The percentages of settled cases involving GAAP violations generally and financial restatements specifically have declined substantially in the past five years (2020–2024) compared to the first half of the last decade (2015–2019).

Between 2015 and 2024, the median settlement amount for cases involving accounting irregularities was $33 million, significantly higher than the $12 million median for cases without such allegations.

Similarly, the median settlement as a percentage of plaintiff-style damages was higher in cases involving accounting irregularities (8.6%) than in those without (7.2%).

For further details regarding settlements of accounting cases, see Cornerstone Research's forthcoming annual report on *Accounting Class Action Filings and Settlements*.[11]

**Figure 9: Percentage of Cases Involving Accounting Allegations**

|  | 2015–2019 | 2020–2024 |
|---|---|---|
| **GAAP Violations** | 53% | 38% |
| **Restatement** | 26% | 14% |
| **Accounting Irregularities** | 3% | 2% |
| **Auditor Codefendant** | 9% | 3% |

Note: This analysis is limited to cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

CORNERSTONE RESEARCH REVIEW & ANALYSIS

## DERIVATIVE ACTIONS

Securities class actions often involve an accompanying (or parallel) derivative action with similar claims, and such cases have historically settled for higher amounts than securities class actions without an accompanying derivative matter.[12]

In 2024, the median plaintiff-style damages for cases with an accompanying derivative action was $333 million—47% higher than the $227 million median for cases without one, marking the largest percentage difference since 2020.

The percentage of settlements with an accompanying derivative action in 2024 (52%) rebounded from 2023 (40%). The accompanying derivative actions were most frequently filed in the Delaware Court of Chancery, which accounted for 19 out of 46 such settlements in 2024.

In 2024, the median settlement for cases with an accompanying derivative action ($18.6 million) decreased by 14% from the 2023 median ($21.6 million).

### QUICK STATS

## 52%

Percentage of 2024 cases involving an accompanying derivative action

## $18.6 million

Median settlement for 2024 cases involving an accompanying derivative action

For more information on settlement outcomes of the accompanying derivative actions, see Cornerstone Research's *Parallel Derivative Action Settlement Outcomes*.[13]

**Figure 10: Number of Settlements with an Accompanying Derivative Action**
2015–2024



- Settlements without an Accompanying Derivative Action
- Settlements with an Accompanying Derivative Action

CORNERSTONE RESEARCH REVIEW & ANALYSIS

## INSTITUTIONAL INVESTORS

As discussed in prior reports, increasing institutional investor participation as lead plaintiff in securities litigation was a focus of the Private Securities Litigation Reform Act of 1995 (Reform Act).[14] In the years following passage of the Reform Act, institutional investor involvement as lead plaintiff did increase, particularly in cases with higher plaintiff-style damages.

In 2024, however, only 39% of settlements involved an institutional investor serving as lead (or co-lead) plaintiff—the lowest rate since 2005. Of the 17 SPAC settlements in 2024, two included an institutional investor as a lead (or co-lead) plaintiff.

While fewer settlements had institutional investor participation as lead (or co-lead) plaintiff, the difference in median settlements for cases with and without such participation was $30 million—the largest dollar amount difference and the second-largest percentage gap since 2004.

**Figure 11: Median Settlement Amount by Institutional Investor Participation as Lead or Co-Lead Plaintiff**
2015–2024
(Dollars in millions)



Note: Settlement dollars are adjusted for inflation; 2024 dollar equivalent figures are presented.

**Figure 12: Median Statistics by Institutional Investor Participation as Lead or Co-Lead Plaintiff**
2024
(Dollars in millions)

| | With an Institutional Investor | Without an Institutional Investor |
|---|---|---|
| **Settlement Amount** | $37 | $7 |
| **Plaintiff-Style Damages** | $705 | $118 |
| **Settlement Amount as a % of Plaintiff-Style Damages** | 8.3% | 7.0% |
| **Total Assets** | $5,056 | $630 |

Note: Damages are estimated for cases alleging a claim under Rule 10b-5 (whether alone or in addition to other claims) and are adjusted for inflation based on class period end dates; 2024 dollar equivalent figures are presented.

# Time to Settlement and Case Complexity

The median duration from case filing to settlement hearing (3.2 years) declined 14% from the record peak observed in 2023 (3.7 years).

Despite the decline, the median time to settlement remains the third longest in the last decade. This finding is consistent with heightened case activity among 2024 settled cases, as measured by the number of docket entries—a proxy for the time and effort expended by the litigants and/or case complexity. In 2024, the median number of docket entries reached its highest level since 2010 (149).

**QUICK STATS**

## 3.2 years
2024 median time to settlement

## 149
Median number of docket entries for 2024 cases

**Figure 13: Median Settlement Amount by Duration from Filing Date to Settlement Hearing Date**
2015–2024
(Dollars in millions)



Note: "N" refers to the number of cases. Settlement dollars are adjusted for inflation; 2024 dollar equivalent figures are presented.

CORNERSTONE RESEARCH REVIEW & ANALYSIS

# Case Stage at the Time of Settlement

Using data obtained through collaboration with Stanford Securities Litigation Analytics (SSLA), this report analyzes settlements in relation to the stage in the litigation process at the time of settlement.

Cases with larger issuer defendant total assets and plaintiff-style damages tend to settle later in the litigation process.

For example, median issuer defendant total assets and median plaintiff-style damages for cases that settled in 2024 after the filing of a motion for class certification were substantially larger than for cases that settled prior to such a motion being filed.

In 2024, only two cases settled prior to the filing of a motion to dismiss, well below the 2015–2023 average of over seven cases per year.

**Figure 14: Median Settlement Dollars and Stage of Litigation at Time of Settlement**
2015–2024
(Dollars in millions)



Note: "N" refers to the number of cases. Settlement dollars are adjusted for inflation; 2024 dollar equivalent figures are presented. MTD refers to "motion to dismiss," MCC refers to "motion for class certification," and MSJ refers to "motion for summary judgment." This analysis is limited to cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

**Figure 15: 2024 Median Statistics for Cases Settled Prior to and After a Filing for MCC**
(Dollars in millions)

| | Settled Prior to MCC Filed | Settled After MCC Filed |
|---|---|---|
| **Settlement Amount** | $7 | $29 |
| **Plaintiff-Style Damages** | $118 | $567 |
| **Settlement Amount as a % of Plaintiff-Style Damages** | 8.2% | 6.1% |
| **Total Assets** | $506 | $1,864 |

Note: MCC refers to "motion for class certification." Damages are estimated for cases alleging a claim under Rule 10b-5 (whether alone or in addition to other claims) and are adjusted for inflation based on class period end dates; 2024 dollar equivalent figures are presented.

CORNERSTONE RESEARCH REVIEW & ANALYSIS

# Cornerstone Research's Settlement Analysis

This research examines the relationship between settlement outcomes and certain securities case characteristics. Regression analysis is employed to better understand the factors that inform case settlements given the characteristics of a particular securities class action.

## DETERMINANTS OF SETTLEMENT OUTCOMES

Based on regression analysis, important determinants of settlement amounts include the following:

- Plaintiff-style damages
- The most recently reported total assets prior to the settlement hearing date for the defendant issuer
- Whether there were accounting irregularities
- Whether there were criminal charges against the issuer, officers, directors, or other defendants with allegations similar to those included in the underlying class action complaint
- Whether there was a derivative action with allegations similar to those included in the underlying class action complaint

- Whether, in addition to Rule 10b-5 claims, Section 11 claims were alleged and were still active prior to settlement
- Whether the issuer has been delisted from a major exchange and/or has declared bankruptcy (i.e., whether the issuer was "distressed")
- Whether an institutional investor acted as lead plaintiff
- Whether securities other than common stock/ADR/ADS were included in the alleged class

Cornerstone Research analyses show that, all else being equal, settlement amounts tended to be higher in cases involving larger plaintiff-style damages, greater issuer defendant total assets, or cases in which Section 11 claims were alleged in addition to Rule 10b-5 claims.

Settlement amounts also tended to be higher in cases that involved accounting irregularities, criminal charges, an accompanying derivative action, an institutional investor lead plaintiff, or securities in addition to common stock/ADR/ADS included in the alleged class.

Settlement amounts tended to be lower if the issuer was distressed.

Collectively, the factors above explain more than 75% of the variation in settlement outcomes.

# Research Sample

The database compiled for this report is limited to cases alleging Rule 10b-5, Section 11, and/or Section 12(a)(2) claims brought by purchasers of a corporation's common stock. The sample contains only cases alleging fraudulent inflation in the price of a corporation's common stock.

Cases with alleged classes of only bondholders, preferred stockholders, etc.; cases alleging fraudulent depression in price; and mergers and acquisitions cases are excluded. These criteria are imposed to ensure data availability and to utilize a relatively homogeneous set of cases in terms of the nature of the allegations.

The database includes 2,270 securities class actions filed after passage of the Reform Act (1995) and settled from 1996 through 2024. These securities class actions correspond to approximately $148.5 billion in total settlement dollars, adjusted for inflation and expressed in 2024 dollars. These settlements are identified based on a review of case activity collected by Securities Class Action Services LLC (SCAS).[15]

The designated settlement year, for purposes of this report, corresponds to the year in which the hearing to approve the settlement was held.[16] Cases involving multiple settlements are reflected in the year of the most recent partial settlement, provided certain conditions are met.[17]

In addition to SCAS, data sources include Bloomberg, the Center for Research in Security Prices (CRSP) at University of Chicago Booth School of Business, LSEG Workspace, court filings and dockets, SEC registrant filings, SEC litigation releases and administrative proceedings, LexisNexis, Stanford Securities Litigation Analytics (SSLA), Securities Class Action Clearinghouse (SCAC), and public press.

# Endnotes

[1]  For purposes of our settlement research and modeling, we utilize a measure of potential investor losses that allows for consistency across a large volume of cases, thus enabling the identification and analysis of potential trends. This measure, "settlement model plaintiff-style damages" ("plaintiff-style damages" as referred to in this report), is estimated using a methodology that more closely aligns with approaches used by plaintiffs in the current securities class action litigation environment. See page 5 for more details.

[2]  Plaintiff-style damages are calculated for cases that settled in 2014 or later, and account for the U.S. Supreme Court's 2005 landmark decision in *Dura Pharmaceuticals Inc. v. Broudo*, 544 U.S. 336. Plaintiff-style damages are based on the stock-price movements associated with the alleged disclosure dates that are described in the settlement plan of allocation.

[3]  A SPAC is a shell company that raises capital through an initial public offering to later acquire an existing business. SPAC cases are classified as those with a defendant issuer that was a SPAC during any portion of the class period or that had a de-SPAC transaction within 180 days prior to the start of the class period.

[4]  Kevin LaCroix, "Record-Setting Settlements in Two SPAC-Related Securities Suits," The D&O Diary, January 13, 2025, https://www.dandodiary.com/2025/01/articles/securities-litigation/record-setting-settlements-in-two-spac-related-securities-suits/.

[5]  *Securities Class Action Settlements 2023 Review and Analysis*, Cornerstone Research (2024).

[6]  Catherine J. Galley, Nicholas D. Yavorsky, Filipe Lacerda, and Chady Gemayel, *Approved Claims Rates in Securities Class Actions: Evidence from 2015–2018 Rule 10b-5 Settlements*, Cornerstone Research (2020). Data on "plaintiff-estimated damages" are made available to Cornerstone Research through collaboration with Stanford Securities Litigation Analytics (SSLA). SSLA tracks and collects data on private shareholder securities litigation and public enforcements brought by the U.S. Securities and Exchange Commission (SEC) and the U.S. Department of Justice (DOJ). The SSLA dataset includes all traditional class actions, SEC actions, and DOJ criminal actions filed since 2000. Available on a subscription basis at https://sla.law.stanford.edu/.

[7]  Laarni T. Bulan, Ellen M. Ryan, and Laura E. Simmons, *Estimating Damages in Settlement Outcome Modeling*, Cornerstone Research (2017).

[8]  In the past, we presented "simplified statutory damages" as a measure of potential investor losses for cases with Section 11 claims but no Rule 10b-5 claims. In this report, we introduce a new measure: "statutory damages." Statutory damages are estimated using an approach that more closely aligns with approaches used by plaintiffs in the current securities class action litigation environment. For example, when estimating the number of shares eligible for damages, the new statutory damages approach adjusts for short interest positions. Statutory damages are calculated using data through the settlement hearing date.

[9]  As noted in prior reports, the March 2018 U.S. Supreme Court decision in *Cyan Inc. v. Beaver County Employees Retirement Fund* (*Cyan*) held that '33 Act claim securities class actions could be brought in state court. While '33 Act claim cases had often been brought in state courts before *Cyan*, filing rates in state courts increased substantially following this ruling. This trend reversed, however, following the March 2020 Delaware Supreme Court decision in *Salzberg v. Sciabacucchi* which upheld the validity of federal forum-selection provisions in corporate charters. See, for example, *Securities Class Action Filings—2021 Year in Review*, Cornerstone Research (2022).

[10]  The two subcategories of accounting issues analyzed in this report are (1) restatements—cases involving a restatement (or announcement of a restatement) of financial statements, and (2) accounting irregularities—cases in which the defendant has reported the occurrence of accounting irregularities (intentional misstatements or omissions) in its financial statements.

[11]  *Accounting Class Action Filings and Settlements—2024 Review and Analysis*, Cornerstone Research, forthcoming in spring 2025.

[12]  To be considered an accompanying (or parallel) derivative action, the derivative action must have underlying allegations that are similar or related to the underlying allegations of the securities class action and either be active or settling at the same time as the securities class action.

[13]  *Parallel Derivative Action Settlement Outcomes—2023 Review and Analysis*, Cornerstone Research (2024).

[14]  See, for example, *Securities Class Action Settlements—2006 Review and Analysis*, Cornerstone Research (2007); Michael A. Perino, "Have Institutional Fiduciaries Improved Securities Class Actions? A Review of the Empirical Literature on the PSLRA's Lead Plaintiff Provision," St. John's Legal Studies Research Paper No. 12-0021 (2013).

Endnotes (continued)

[15]   Available on a subscription basis. For further details, see https://www.issgovernance.com/securities-class-action-services/.

[16]   Movements of partial settlements between years can cause differences in amounts reported for prior years from those presented in earlier reports.

[17]   This categorization is based on the timing of the settlement hearing date. If a new partial settlement equals or exceeds 50% of the then-current settlement fund amount, the entirety of the settlement amount is recategorized to reflect the settlement hearing date of the most recent partial settlement. If a subsequent partial settlement is less than 50% of the then-current total, the partial settlement is added to the total settlement amount and the settlement hearing date is left unchanged.

CORNERSTONE RESEARCH REVIEW & ANALYSIS

# Appendices

## Appendix 1: Settlement Percentiles
(Dollars in millions)

| Year | Average | 10th | 25th | Median | 75th | 90th |
|------|---------|------|------|--------|------|------|
| 2015 | $54.2 | $1.8 | $2.8 | $8.9 | $22.2 | $131.0 |
| 2016 | $87.7 | $2.5 | $5.4 | $11.1 | $39.9 | $165.4 |
| 2017 | $24.1 | $1.9 | $3.4 | $7.3 | $20.2 | $47.6 |
| 2018 | $81.1 | $1.9 | $4.5 | $14.1 | $30.9 | $61.4 |
| 2019 | $34.6 | $1.8 | $6.9 | $13.5 | $24.5 | $61.4 |
| 2020 | $66.8 | $1.7 | $3.9 | $11.9 | $24.5 | $64.6 |
| 2021 | $23.9 | $2.0 | $3.6 | $9.1 | $20.9 | $68.6 |
| 2022 | $39.0 | $2.1 | $5.4 | $13.9 | $37.5 | $77.0 |
| 2023 | $48.7 | $3.1 | $5.1 | $15.4 | $34.2 | $104.0 |
| **2024** | **$42.4** | **$2.8** | **$4.5** | **$14.0** | **$36.6** | **$78.4** |

Note: Settlement dollars are adjusted for inflation; 2024 dollar equivalent figures are presented.

## Appendix 2: Settlements by Select Industry Sectors
2015–2024
(Dollars in millions)

| Industry | Number of Settlements | Median Settlement | Median Plaintiff-Style Damages | Median Settlement as a Percentage of Plaintiff-Style Damages |
|----------|----------------------|-------------------|-------------------------------|-------------------------------------------------------------|
| **Financial** | 90 | $19.6 | $267.2 | 8.8% |
| **Technology** | 111 | $12.0 | $299.7 | 6.2% |
| **Pharmaceuticals** | 125 | $9.8 | $161.5 | 6.4% |
| **Telecommunications** | 29 | $11.8 | $186.5 | 7.0% |
| **Retail** | 47 | $24.5 | $322.7 | 7.0% |
| **Healthcare** | 22 | $21.0 | $232.4 | 8.3% |

Note: Settlement dollars and plaintiff-style damages are adjusted for inflation; 2024 dollar equivalent figures are presented. This analysis is limited to cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

CORNERSTONE RESEARCH REVIEW & ANALYSIS

**Appendix 3: Settlements by Federal Circuit Court**
2015–2024
(Dollars in millions)

| Circuit | Number of Settlements | Median Settlement | Median Settlement as a Percentage of Plaintiff-Style Damages |
|---|---|---|---|
| First | 22 | $19.3 | 6.2% |
| Second | 211 | $9.3 | 7.0% |
| Third | 87 | $8.1 | 7.4% |
| Fourth | 25 | $28.9 | 4.9% |
| Fifth | 40 | $12.7 | 5.6% |
| Sixth | 33 | $17.3 | 9.8% |
| Seventh | 38 | $19.6 | 6.2% |
| Eighth | 13 | $51.3 | 5.6% |
| Ninth | 198 | $10.0 | 7.5% |
| Tenth | 19 | $13.4 | 9.1% |
| Eleventh | 37 | $12.7 | 8.2% |
| DC | 4 | $28.7 | 4.8% |

Note: Settlement dollars are adjusted for inflation; 2024 dollar equivalent figures are presented. This analysis is limited to cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

**Appendix 4: Mega Settlements**
2015–2024

■ Total Mega Settlement Dollars as a Percentage of All Settlement Dollars

■ Number of Mega Settlements as a Percentage of All Settlements



Note: Mega settlements are defined as total settlement funds of $100 million or greater.

CORNERSTONE RESEARCH REVIEW & ANALYSIS

CORNERSTONE RESEARCH REVIEW & ANALYSIS

**Appendix 5: Median and Average Settlements as a Percentage of Plaintiff-Style Damages**
2015–2024



Note: Plaintiff-style damages are calculated for cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

**Appendix 6: Median and Average Settlements as a Percentage of Statutory Damages**
2015–2024



Note: Statutory damages are calculated for cases alleging Section 11 ('33 Act) claims and no Rule 10b-5 claims.

# About the Authors

**Laarni T. Bulan**
*Vice President, Cornerstone Research*

Laarni Bulan has over a decade of experience consulting on complex litigation involving economic and financial issues. Dr. Bulan specializes in securities, mergers and acquisitions and other corporate transactions, firm valuation, risk management, executive compensation, and corporate governance matters.

Dr. Bulan serves as co-head of the firm's corporate governance practice. She is a member of the Advisory Board of the Institute for Law and Economics, University of Pennsylvania Carey Law School.

Dr. Bulan has published numerous articles in peer-reviewed journals, including *Financial Management*, the *Journal of Banking and Finance*, the *Journal of Economics and Business*, and the *Journal of Urban Economics*. Her research covers dividend policy, capital structure, executive compensation, corporate governance, and real options. Prior to joining Cornerstone Research, Dr. Bulan held a joint appointment at Brandeis University, where she served as an assistant professor of finance in the International Business School and also in the economics department.

**Eric Tam**
*Principal, Cornerstone Research*

Eric Tam specializes in securities litigation. Mr. Tam has more than 20 years of experience consulting to clients and addressing financial economics issues and class actions in federal and state courts, including the Delaware Court of Chancery. His experience spans all stages of the litigation process, including exposure analysis, class certification, expert support, summary judgment filings, mediation and settlement analysis, trial preparation, and regulatory proceedings.

Mr. Tam has extensive expertise with securities litigation involving alleged misrepresentations under Section 10(b) of the Exchange Act and Sections 11 and 12 of the Securities Act. He also addresses allegations of market manipulation under Sections 9 and 10(b) of the Exchange Act and claims under Section 14(a) of the Exchange Act.

Mr. Tam has analyzed class certification issues (market efficiency, price impact, and evaluation of damages methodologies in the context of *Comcast* standards), as well as loss causation, damages, and materiality in numerous securities class actions.

The views expressed herein are solely those of the authors and do not necessarily represent the views of Cornerstone Research.

# CORNERSTONE RESEARCH
Economic and Financial Consulting and Expert Testimony

The authors request that you reference Cornerstone Research in any reprint of the information or figures included in this report.

Please direct any questions to:

**Laarni Bulan**
617-927-3093
LBulan@cornerstone.com

**Eric Tam**
650-470-7071
ETam@cornerstone.com

**Cornerstone Research**

Cornerstone Research provides economic and financial consulting and expert testimony in all phases of complex disputes and regulatory investigations. The firm works with an extensive network of prominent academics and industry practitioners to identify the best-qualified expert for each assignment. With a reputation for high quality and effectiveness, Cornerstone Research has consistently delivered rigorous, state-of-the-art analysis since 1989. The firm has more than 1,000 professionals in nine offices across the United States, UK, and EU.

www.cornerstone.com

© 2025 by Cornerstone Research

All rights reserved. Cornerstone Research is a registered service mark of Cornerstone Research, Inc.
C and design is a registered trademark of Cornerstone Research, Inc.

# EXHIBIT 3

# The Expert's Corner

## ON PLAINTIFF "INCENTIVE" PAYMENTS
William B. Rubenstein*

In the January 2007 issue, *Class Action Attorney Fee Digest* reported an antitrust case in which the class representative received an incentive award of $1,250,000 for 415 hours of its staff's work, or about $3,000/hour. *Spartanburg Regional Health Services Dist., Inc. v. Hillenbrand Indus., Inc.*, No. 03-2141 (D.S.C. 2006) (1 CAAFD 5 (January 2007)). Good work if you can get it. But don't try too hard: in the March issue, the *Digest* reported a securities case in which the lead plaintiff was denied an $8,000 reimbursement for the 16 hours she spent on the case, billing these hours at her regular professional rate (as a CEO) of $500/hour. *See In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*, 2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. 2007) (1 CAAFD 84 (March 2007)).

What's going on here?

Well, for starters, I concede that I picked a rather extreme example, as the *Spartanburg* case is by far the largest incentive payment that I have ever seen a court award. Incentive payments[1] are neither automatic nor large. They are awarded in about 25% of class action cases, though that varies by field: a recent study documented incentive payments in about 50% of consumer and employment cases, roughly 25% of securities cases, and only about 10% of derivative and mass tort suits. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. REV. 1303 (2006). The average incentive award per class representative is about $16,000, while the median award per class representative is much lower (about $4,000), *id*. at 1308, so the *Spartanburg* award is truly an outlier.

The disparity I set up above is also attributable to the distinct statutory regimes governing the two cases. Congress' 1995 Private Securities Litigation Reform Act (PSLRA) contains a specific provision limiting payments to plaintiffs, beyond

> *Incentive payments are neither automatic nor large. They are awarded in about 25% of class action cases, though that varies by field [citing the Eisenberg & Miller study].*

their *pro rata* share of the settlement, to "reasonable costs and expenses (including lost wages) directly relating to the representation of the class." 15 U.S.C. § 77z-1(a)(4).[2] In the *Merrill Lynch* case, the court ruled that it was not enough for the plaintiff "to assert that she took time out of her workday;" rather, she had to demonstrate that she incurred actual expenses or gave up specific business opportunities as a consequence of serving as lead plaintiff. This ruling conceptualizes plaintiff payments under the PSLRA purely in terms of "reimbursement." By contrast, the plaintiff payment in the *Spartanburg* antitrust case was issued under the more general and lax approach of Rule 23, one that permits "incentive" payments that exceed simple reimbursement costs.[3]

That said, Rule 23 itself says nothing about incentive awards and the common law that has developed concerning these payments provides few guiding principles. How should courts think about them? Four issues present themselves: (1) Why provide incentive awards? (2) To whom? (3) In what circumstances? and (4) How much?

*Why Incentive Awards?* Courts award payments to class action plaintiffs for three functions that they perform. First, class representatives have *oversight and monitoring* responsibilities. They must watch class counsel so as to ensure these attorneys do not sell out the class for their own recovery. Class counsel must consult with the representatives, who must approve any important aspects of the litigation (including the settlement terms). Second, class representatives *serve as*

---

[1] I use the terms "incentive awards" or "incentive payments" generically, meaning it to encompass payments that simply reimburse the plaintiffs' costs (reimbursement payments) and those that actually provide plaintiffs money in recognition of the risks that they took and intangible services they provided (incentive awards).

*William B. Rubenstein, a law professor at UCLA School of Law, specializes in class action law; he has litigated, and regularly writes about, consults, and serves as an expert witness in class action cases, particularly on fee-related issues. Professor Rubenstein provides regular reporting on class action issues, including fees, at www.classactionprofessor. com. The opinions expressed in this article are solely those of the author.

---

[2] The PSLRA further requires that the lead plaintiff file a sworn certification stating that it "will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's *pro rata* share of any recovery, except as ordered or approved by the court in accordance with [the paragraph in the text above]." 15 U.S.C. § 78u-4(a)(2)(A)(vi).

[3] Courts are split on whether incentive payments, beyond pure compensation, are permissible in PSLRA cases. *Compare, e.g, Swack v. Credit Suisse First Boston, LLC,* 2006 U.S. Dist. LEXIS 75470 (D. Mass. Oct. 4, 2006) (incentive payments not permitted) (collecting cases) *with, e.g., In re Heritage Bond Litig.,* 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) (notwithstanding PSLRA, incentive payments permissible).

(continued on page 96)

COPYRIGHT © 2007 OCTAGON PUBLISHING, INC. REPRODUCTION STRICTLY PROHIBITED.

(continued from **Expert's Corner,** page 95)

*exemplary litigants*, subjecting themselves to depositions and other discovery, perhaps even having to testify in court. Thus, in the *Spartanburg* case, the named plaintiff "was called upon to provide documents and witnesses for various discovery issues . . . [and] spent significant amounts of time monitoring the litigation, discussing issues with counsel, and deciding what it thought was best for the class as a whole." Third, class representatives play a *gate-keeping function* in that their presence is a necessary predicate for the class suit and often determines issues such as what forum the case will be filed in. *See* Richard A. Nagareda, *Restitution, Rent Extraction, and Class Representatives: Implications of Incentive Awards*, 53 UCLA L. REV. 1483 (2006).[4]

The general theory behind incentive awards is that the monitoring, litigating, and gate-keeping functions serve important public goals. Incentive awards encourage plaintiffs to step forward and provide these public goods. The common arguments against incentive awards are those of intra-class equity and conflicts of interest. If representatives get awards, they will get more than their *pro rata* share of the settlement; the disparity may seem particularly egregious in cases in which class members gets coupons but the representatives get a cash incentive award. Indeed, one might worry that provided a high enough cash award, the class representative would agree to a settlement embodying a meaningless class-wide recovery, such as a negligible coupon. While courts must monitor such conflicts, the intra-class inequity – assuming it is not too extreme (see below) – can be justified by the fact that the representative is not similarly situated to other class members: she did something they did not and is rightly paid for stepping forward and working to safeguard the class's interests.

*Who Can Get An Award?* Generally, it is the named plaintiffs and/or class representatives who perform the functions that trigger an award. However, not all named plaintiffs do such

> The general theory behind incentive awards is that the monitoring, litigating, and gate-keeping functions serve important public goals. Incentive awards encourage plaintiffs to step forward and provide these public goods. The common arguments against incentive awards are those of intra-class equity and conflicts of interest.

work and, in particular cases, other class members who are not the class representatives might do work justifying an award. *See* Jocelyn D. Larkin, *Incentive Awards to Class Representatives in Class Action Settlements* 12-13 (available at http://www.impactfund.org/pdfs/Class%20Incentives%20 UPDATED.pdf). The best practice is that the named representatives should not automatically garner an award unless they did something to deserve it, and that other class members should not automatically be precluded from such an award if they did something to warrant one. The award should reward work done, not titles.

*When Provide An Award?* As noted, awards are not automatic. There is no statutory basis for them in general class actions, though in common fund cases, they are legitimated on the same restitutionary basis as the attorney's fee – the class representative's actions helped produce the common fund and hence the class would be unjustly enriched were the representative not compensated for this effort. *See In re Cont. Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (Posner, J.). In non-common fund cases, parties will often agree to incentive awards as part of a settlement and hence a court will be asked to accept or reject them in its normal fairness hearing inquiry. In the absence of a common fund or agreement, some courts have held that an incentive award is "plainly inappropriate." *Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003).

Where a common fund or agreement provides the context for an award, the award must still be justified. The Seventh Circuit once suggested that an "incentive award is appropriate if it is *necessary* to induce an individual to participate in the suit," *Cook v. Neidart*, 142 F.3d 1004, 1016 (7th Cir. 1988) (emphasis added), but courts generally do not require the parties to prove that the class representatives would not have participated *but for* the incentive award. Rather, courts ascertain the appropriateness of an award according to multi-factor tests examining such issues as: "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id. See also Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (articulating 5-factor test).

*How Much?* Perhaps the most peculiar feature of incentive awards is that there is no real method for quantifying them.

---

4        In *qui tam* cases, plaintiffs play a fourth function. The *qui tam* plaintiff is a government whistle blower who exposes corruption within the government and, through litigation, recoups the government's losses. She performs an invaluable *detection* function: because she works on the inside, she is particularly well-situated to see fraud when it occurs. At the same time, job security may make her loathe to step forward and report the fraud. The *qui tam* statute permits the plaintiff to retain a percentage of what she recovers for the government, thereby creating a significant incentive for her to play this detection function notwithstanding the risks involved.

(continued on page 97)

COPYRIGHT © 2007 OCTAGON PUBLISHING, INC. REPRODUCTION STRICTLY PROHIBITED.

(continued from **Expert's Corner,** page 96)

> *Given these principles,*
> *it seems clear that both Spartanburg and*
> *Merrill Lynch were wrongly decided.*

While attorney's fees are famously calculated according to either a lodestar or percentage method, neither of these is entirely relevant to incentive awards. Lodestar doesn't quite work because class representatives generally do not keep hours as attorneys do, nor are there readily ascertainable hourly billing rates for the functions they perform. The percentage method also is inapposite – except in *qui tam* cases where statutes permit the named plaintiff to retain a percentage of the recovery – because courts have no measuring stick (like the contingent fee percentage provides for attorney's fee) by which to set a proper percentage.

Absent these familiar measuring sticks, courts are generally guided by the actual amount of time or effort that can be shown to have been spent, with some acknowledgment of the risk that was taken, as well. Whatever award is thereby selected is then tested against the other class members' recoveries to ensure that it is not so out of line that it creates a conflict between the representatives and the class. Astute readers will note that this formulation feels familiar from attorney's fees law: incentive awards are calculated according to a rough lodestar analysis, with a risk multiplier, and then cross-checked by intra-class equity.

Given these principles, it seems clear that both *Spartanburg* and *Merrill Lynch* were wrongly decided. The class representative in *Spartanburg* should have received something – perhaps even something large, given that the case constituted a huge, nearly $500 million settlement – but nowhere near $1 million or $3,000/hour. I know of but a few services that might warrant an hourly wage of that magnitude and none are, to my knowledge, provided by a class representative. On the other hand, the class representative in *Merrill Lynch* should have been compensated for her time, even under the PSLRA's tough standard. It permits awards for reasonable costs and expenses, including lost wages; while the CEO might not literally have lost wages by working on the case, she spent professional time doing so and should be compensated for that. Attorneys are permitted to recover fees without demonstrating that they actually gave up other work to undertake the present case. Class representatives should not be put to a more stringent test. Congress did intend to reign in loose payments to professional class representatives via the PSLRA; however, seeking compensation for 16 hours of actually-expended time hardly falls into that category. Moreover, the PSLRA has encouraged institutional plaintiffs to come forward and direct securities cases. It would be perverse to simultaneously engender professional monitoring but then deny the super-monitors any money for their time.

Before 1990, court-approved payments to class action plaintiffs were rare. They now occur regularly, though not in a majority of cases. Despite the PSLRA's apparent limitations, plaintiff payments are more likely to continue to increase – in frequency and size – than they are to disappear. Ω

COPYRIGHT © 2007 OCTAGON PUBLISHING, INC. REPRODUCTION STRICTLY PROHIBITED.