UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MYO THANT, et al., | Case No.   23-cv-03518-EJD |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION FOR FINAL APPROVAL; GRANTING MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS AS MODIFIED** |
| RAIN ONCOLOGY INC., et al., | |
| Defendants. | Re: ECF. Nos. 88, 89 |

Before the Court are Plaintiffs' Motion for Final Approval of a Class Action Settlement and Motion for Attorney Fees, Expenses, and Service Awards.  ECF Nos. 88, 89.  The Court held a Fairness Hearing on April 2, 2026 ("the Hearing") where both parties were heard.

Having considered the motion briefing, the terms of the Settlement Agreement, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the Motion for Final Settlement Approval.  The Court finds the Settlement Agreement to be fair, adequate, and reasonable.  The Court also **GRANTS** Class Counsel's Motion for Attorneys' Fees and Expenses, and Service Awards, as modified at the Hearing.

I.      **BACKGROUND**

Plaintiffs allege that Defendants participated in a fraudulent scheme that deceived purchasers of Defendants' securities by disseminating materially false and misleading statements and/or concealing material adverse facts, causing Plaintiffs to pay more for the securities than they would have in the absence of Defendants' alleged conduct.  Defendants in this Settlement Agreement are the following entity and individuals: Rain Oncology, Inc., Franklin Berger, Aaron

Davis, Gorjan Hrustanovic, Tran Nguyen, Peter Radovich, and Stefani A. Wolff (collectively, "the Defendants").

The Parties participated in a full-day mediation session with Mr. Jed Melnick, Esq., on August 18, 2025. Apton Decl., ECF No. 88-1 ¶¶ 22, 23. Though the mediation session did not result in a settlement, the parties continued to negotiate in the subsequent weeks. *Id.* ¶ 23. On September 18, 2025, the parties agreed to a recommendation issued by Mr. Melnick on a double-blind basis to settle the matter for $7,250,000. *Id.* ¶ 24. On December 15, 2025, the Court granted preliminary approval of the Settlement Agreement and granted approval of a modified Notice Plan. ECF No. 87.

### A.    Tems of the Settlement Agreement

#### 1.    Class Definition

Under the Settlement Agreement, the Settlement Class is defined as:

> (i) all Persons who purchased Rain common stock between April 23, 2021 to May 19, 2023, inclusive, and were damaged thereby, and (ii) all Persons who purchased Rain common stock pursuant or traceable to Rain's registration statement filed in conjunction with Rain's initial public offering on April 23, 2021, and were damaged thereby.
> Excluded from the Class are: Rain, the Director Defendants, Dismissed Defendants, and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the Defendants or Dismissed Defendants have or had a controlling interest.

Settlement Agreement, ECF No. 83 ¶ I(H).

#### 2.    Class Relief

Defendants agree to a non-revisionary $7,250,000 common settlement fund to cover all costs associated with the Notice Plan, monetary benefits to Settlement Class Members, service awards for the Class Representatives, and Class Counsel's attorneys' fees and expenses. Notice of Pendency & Proposed Settlement of Class Action, ECF No. 83-2 12. If a balance remains at least six months after the initial distribution to the Settlement Class, it will be used to (1) first, pay for any amounts mistakenly omitted from the initial disbursement; (2) second, pay any additional fees,

Case No.: 23-cv-03518-EJD
ORDER GRANTING MOT. FOR FINAL SETTLEMENT APPROVAL; GRANTING MOT. FOR ATT'YS FEES, EXPENSES, AND SERVICE AWARDS AS MODIFIED

United States District Court
Northern District of California

costs, and expenses related to the settlement administration; and (3) third, pay a second distribution to Settlement Class Members who cashed their checks from the initial distribution, and who will receive at least ten dollars after payment of expected administration costs. *Id.* at 12–13.

### 3.　Releases and Dismissal of Action

In consideration of the Class Relief, the Settlement Class releases all claims against Defendants arising from this case. Settlement Agreement ¶¶ I(Y), I(BB), II(A). Claims relating to the enforcement of the Settlement and any claims from any person that has opted out of the Settlement are excluded from this release. *Id.* ¶ I(BB).

### 4.　Attorneys' Fees and Expenses

This Settlement Agreement provides that Class Counsel may be awarded 25% of the Settlement Amount, or $1,812,500, plus any interest accrued thereon, and reimbursement of expenses to Class Counsel in the amount of $72,819.51 plus any interest accrued thereon, all to be paid from the Settlement Fund. Mot. Att'ys. Fees, ECF No. 89 12.

### 5.　Class Notice and Claims Administration

The Settlement Agreement is being administered by Strategic Claims Services ("SCS"). Following the Court's Preliminary Approval Order, SCS implemented the Court-approved Notice Plan. The Notice Plan included email and postcard notice, publication over *Global Newswire*, a toll-free telephone number, and a settlement website. SCS received 132 claims as of the date of the Hearing. The Court-ordered deadline to opt out or object expired on March 5, 2026, and the claims deadline expired on April 20, 2026.

### 6.　Objections

There are no objections or requests for exclusion.

## II.　FINAL APPROVAL OF SETTLEMENT

### A.　Legal Standard

At final approval, the Court must first conduct a "rigorous" analysis to confirm that the

Case No.: 23-cv-03518-EJD
ORDER GRANTING MOT. FOR FINAL SETTLEMENT APPROVAL; GRANTING MOT.
FOR ATT'YS FEES, EXPENSES, AND SERVICE AWARDS AS MODIFIED

requirements for class certification under Rule 23(a) and 23(b)(3) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–22 (1997); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (citations omitted). A court may then approve a proposed class action settlement only "after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, courts generally must consider the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

Furthermore, class settlements reached prior to formal class certification require a "heightened fairness inquiry." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). When reviewing such a pre-certification settlement, the district court must not only explore the *Churchill* factors but also "look[ ] for and scrutinize[ ] any subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Id*. at 1043 (internal quotation marks omitted).

### B. Discussion

#### 1. Class Certification

This analysis begins with an examination of whether class treatment remains appropriate under Rule 23(a) and Rule 23(b)(3).

First, the Court finds that Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy remain satisfied. The Settlement Class includes purchasers of approximately eight million shares of Rain common stock, making it so numerous that joinder of all members is impracticable. The focus of this action—Defendants' alleged misrepresentations

Case No.: 23-cv-03518-EJD
ORDER GRANTING MOT. FOR FINAL SETTLEMENT APPROVAL; GRANTING MOT.
FOR ATT'YS FEES, EXPENSES, AND SERVICE AWARDS AS MODIFIED
4

United States District Court
Northern District of California

and omissions about the success of clinical trials of its cancer drug, milademetan—is common to all Class Members.  The Class Representatives are typical of the Settlement Class that they seek to represent because they purchased Rain common stock at inflated prices caused by Defendants' alleged misrepresentations.  Class Representatives and Class Counsel have fairly and adequately represented the interests of the Class.  No conflicts of interest appear as between Class Representatives and the Settlement Class Members, nor is there any evidence that Class Counsel have any conflicts of interests with Settlement Class Members.

Second, as to Rule 23(b)(3), common questions of law and fact predominate over any questions affecting individuals here because every Settlement Class Member has been subjected to the same alleged conduct which caused the same type of harm.  The class action mechanism is also superior here given the small amount in dispute for individual class members in comparison to the cost of individual litigation.  *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017).  The alternatives to class certification—potentially thousands of individual, geographically-dispersed, and time-consuming proceedings, or a complete abandonment of claims by a majority of class members—are not preferable.[1]

Therefore, the Court finds all factors have been met and the Class shall remain certified for the purposes of the Settlement Agreement.  The Court also reaffirms the appointment of Class Counsel and Class Representatives pursuant to Rule 23(g) for all the reasons identified in its Preliminary Approval Order.

### 2.    Adequacy of Notice

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688

---

[1] The potential number of proceedings is merely an estimated extrapolation based on the estimated number of shares of Rain common stock traded during the Class Period that may have been impacted.  Notice of Pendency & Proposed Settlement of Class Action 2.

Case No.: 23-cv-03518-EJD
ORDER GRANTING MOT. FOR FINAL SETTLEMENT APPROVAL; GRANTING MOT.
FOR ATT'YS FEES, EXPENSES, AND SERVICE AWARDS AS MODIFIED

F.2d 615, 624 (9th Cir. 1982). Adequate notice requires the best notice practicable, whereby the notice must be reasonably calculated to apprise the Settlement Class members of the proposed settlement and of their right to object or to exclude themselves; must constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and must meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The Notice Plan also must comply with the Private Securities Litigation Reform Act of 1995's ("PSLRA") requirement that it "provide a calculation of the amount of settlement proposed to be distributed on a per share basis." *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007).

The Court finds that the Notice Plan provided the best notice practicable. Pursuant to the procedures approved by the Court in its Preliminary Approval Order, SCS carried out the Notice Plan and sent out 15,790 notices. The notices included an estimated average recovery per share (approximately $0.91/share), consistent with the PSLRA's requirement. At the Hearing, Class Counsel noted that approximately sixty of the 132 claims received appeared valid, representing 140,000 damaged shares, or approximately 17.5% of the estimated eight million shares of Rain common stock traded and damaged.

The Notice Plan employed methods including email and postcard notice, publication over *Global Newswire*, a toll-free telephone number, and a settlement website. The settlement website address was prominently displayed in all notice documents. The settlement website also included relevant documents and information including the Class Notice, Complaint, Settlement Agreement, Preliminary Approval Order, and Motion for Attorneys' Fees, Expenses, and Service Awards. Given the lengths that SCS took to notify the Settlement Class, including skip tracing individual addressees, and the resulting expansive reach of the Class Notice, the Court finds that

United States District Court
Northern District of California

Case No.: 23-cv-03518-EJD
ORDER GRANTING MOT. FOR FINAL SETTLEMENT APPROVAL; GRANTING MOT.
FOR ATT'YS FEES, EXPENSES, AND SERVICE AWARDS AS MODIFIED

the Court-approved Notice Plan has been fully and properly implemented and the Settlement Class has been provided adequate notice of the pendency of this action and the opportunity to opt out or present their objections.

### 3.    Settlement is Fair, Adequate, and Reasonable

The Court finds that the Settlement Agreement is fair, adequate, and reasonable under the *Churchill* factors and Rule 23(e)(2).  The Court will analyze each relevant factor in turn.

### a.    Strength of the Case

To assess strength of the case, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Just.*, 688 F.2d at 625 (internal quotation marks omitted).  There is no "particular formula by which that outcome must be tested," *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009), and the district court is not required to render specific findings on the strength of all claims.  *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012).

The Court finds that the Settlement Agreement adequately reflects the strength of Plaintiffs' case, as well as Defendants' position.  The strengths of this case include the large number of potential class members and the evidence of events and transactions alleged in Plaintiffs' Amended Complaint.  However, this litigation presents significant hurdles that could weaken Plaintiffs' case, including potential challenges to class certification and the inherent difficulties to proving liability in securities class actions.  Here, Plaintiffs recognized the possibility that a jury would find Defendants not liable because their statements in Rain's initial public offering documents did not materially mislead investors about the risks concerning their clinical trial plan.  Plaintiffs also intended to renew Section 10(b) claims against two individual Defendants who were previously dismissed from the action, but Plaintiffs' ability to bring these claims was premised on receiving additional discovery from Defendants, who indicated that they did not intend to voluntarily produce it. Additionally, Defendants advanced several plausible arguments disputing both liability and damages.  The Court finds that the judicial policy favoring

United States District Court
Northern District of California

compromise and settlement of class action suits is applicable here.  *See Wilson v. Tesla, Inc.*, No. 17-cv-03763-JSC, 2019 WL 2929988, at *4 (N.D. Cal. Jul. 8, 2019) ("Judicial policy strongly favors settlement of class actions." (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992))).

### b.      Risk, Expense, Complexity, and Likely Duration of Further Litigation

The Settlement Agreement reflects a fair result considering the potential trial recovery, numerous dispositive risks, costs of continuing litigation, and delay in payment to the class.  The parties reached this Settlement Agreement while in the midst of discovery.  Beyond the risk of not prevailing at trial, risks include surviving class certification, summary judgment, a potential multi-year delay in relief, and risks relating to Defendants' financial condition and limited amount of remaining insurance to help fund any settlement.

### c.      Amount Offered

The Settlement Agreement provides significant monetary relief—a $7.25 million non-reversionary fund.  The Settlement Fund is approximately 13% of Plaintiffs' calculated potential damages.  "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."  *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2023 WL 3688452, at *9 (N.D. Cal. May 25, 2023).  Plaintiffs' recovery is consistent with recoveries approved in this district and is within the range that courts have deemed "fair and reasonable."  *See, e.g.*, *In re Splunk, Inc. Sec. Litig.*, No. 20-cv-08600-JST, 2024 WL 923777, at *6 (N.D. Cal. Mar. 4, 2024) (finding that a settlement amount between 5 and 20.5% of realistic maximum damages was fair and reasonable); *In re Aqua Metals, Inc. Sec. Litig.*, No. 17-cv-07142-HSG, 2022 WL 612804, at *6 (N.D. Cal. Mar. 2, 2022) (settlement offer constituting 7.3% of most likely recoverable damages in line with comparable class action settlements); *In re Lyft, Inc. Sec. Litig.*, No. 19-cv-02690-HSG, 2022 WL 17740302, at *6 (N.D. Cal. Dec. 16, 2022) (settlement amount was within range of possible approval when it was 3.2% to 4.7% of estimated maximum damages); *Hunt v. Bloom Energy*, No.

United States District Court
Northern District of California

19-cv-02935-HSG, 2023 WL 7167118, at *7 (N.D. Cal. Oct. 31, 2023) (approving settlement amount which was 5.2% of maximum estimated recovery).

The Court also notes that there is no reversion of unused funds to Defendants.  Should a balance remain after distribution to the Settlement Class, it will be used to (1) first, pay for any amounts mistakenly omitted from the initial disbursement, (2) second, pay any additional settlement administration fees, costs, and expenses, and (3) third, make a second distribution to claimants who cashed their checks from the initial distribution and who will receive at least $10.00 after payment of expected costs associated with administering the second distribution of the settlement fund.

### d.    Extent of Discovery

Prior to reaching the Settlement Agreement, the parties were actively engaged in discovery.  Class Counsel reviewed Securities and Exchange Commission filings, correspondence between the FDA and Rain as well as materials prepared for/by Rain's Board of Directors, and consulted with a damages expert.  The Court finds that the amount of investigation, discovery, and litigation reflects that the parties had thoroughly developed a perspective on the strengths and weaknesses of their respective cases to "make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

### e.    Reaction of Class Members

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citing *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528–29 (C.D. Cal. 2004)); *see also Churchill*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 settlement class members was proper).  Here, the complete absence of opt-outs and objections further supports approval of the Settlement

United States District Court
Northern District of California

Agreement.

#### f.    Equitable Plan of Allocation

The Court also approves the plan to distribute the proceeds of the settlement fund on a *pro rata* basis to Settlement Class Members.  A *pro rata* allocation treats all Settlement Class Members fairly because their recovery is tied to the number of shares of Rain common stock the Class Member held as of the close of trading on May 19, 2023.  *Pro rata* distribution is generally a reasonable and fair way to compensate classes.  *See, e.g.*, *Omnivision Techs.*, 559 F. Supp. 2d at 1045 (finding a plan of allocation that disbursed funds on a per-share basis was fair, reasonable, and adequate); *see also Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *14–15 (N.D. Cal. Feb. 11, 2016) (approving a plan of allocation that tied distribution to shares purchased during relevant time periods).  The Court finds the plan of allocation is fair to Settlement Class Members and supports a finding that the Settlement Agreement is fair, adequate, and reasonable.

#### 4.    Collusion

The Ninth Circuit has articulated the following "subtle signs" of collusion of which a court should be "particularly vigilant" when scrutinizing settlements achieved prior to class certification: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "clear sailing" arrangements; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotations and citations omitted).

The Court finds that there is no evidence of conflicts of interest nor are there "subtle signs" of collusion here.  After several years of litigation, during which time Class Counsel consulted with experts on issues pertaining to clinical trial procedures, loss causation, and damages, interviewed former employees, and drafted and filed an Amended Complaint, counsel for all Parties finally reached an agreement to resolve this matter after a full-day mediation and

Case No.: 23-cv-03518-EJD
ORDER GRANTING MOT. FOR FINAL SETTLEMENT APPROVAL; GRANTING MOT.
FOR ATT'YS FEES, EXPENSES, AND SERVICE AWARDS AS MODIFIED

10

United States District Court
Northern District of California

subsequent negotiations.  The mediation was conducted with an experienced and well-respected mediator, Mr. Jed Melnick, Esq.  The parties agreed to settle only after both sides accepted the mediator's recommendation.  Mr. Melnick's involvement and oversight are favorable factors to finding fairness and a lack of collusion between the parties.  *See Bluetooth*, 654 F.3d at 948 (participation of mediator is not dispositive but is "a factor weighing in favor of a finding of non-collusiveness").

### 5.    Objections

There have been no objections or opt-out requests.

## III.    ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

The Court now turns to Class Counsel's requests for attorneys' fees, expenses, and service awards.

### A.    Attorneys' Fees

Attorneys' fees may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h).  Such fees must be found "fair, reasonable, and adequate" to be approved.  Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton*, 327 F.3d. at 963.  "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

Courts analyze attorneys' fees requests based on either the "lodestar" method or the percentage-of-recovery method.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Where the court considers attorneys' fees based on the percentage of the fund, the Ninth Circuit encourages the lodestar method to be used as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *Bluetooth*, 654 F.3d at 944–45

Case No.: 23-cv-03518-EJD
ORDER GRANTING MOT. FOR FINAL SETTLEMENT APPROVAL; GRANTING MOT. FOR ATT'YS FEES, EXPENSES, AND SERVICE AWARDS AS MODIFIED

United States District Court
Northern District of California

(citing *Vizcaino*, 290 F.3d at 1050–51).

Here, Class Counsel seeks an award of attorneys' fees in the amount of 25% of the Settlement Amount, or $1,812,500, plus any interest accrued thereon to be paid from the Settlement Fund.

For the reasons explained below, the Court finds this request fair, adequate, and reasonable.

### 1.    Percentage of the Fund

Courts consider a number of factors when assessing a request for attorneys' fees that was calculated using the percentage-of-recovery method. These factors include the results achieved for the class, the risk for class counsel, class counsel's performance, the burdens class counsel faced while litigating the case, and whether class counsel handled the case on a contingency basis. *In re Online DVD-Rental Antitrust Litig.*, 779 F.32 934, 954–55 (9th Cir. 2015) (citing *Vizcaino*, 290 F.3d at 1047–50). "[T]he most critical factor [in determining appropriate attorneys' fees awards] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Under the percentage-of-recovery method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1302, 1311 (9th Cir. 1990)). The benchmark should be adjusted when "special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.

Nothing in this case requires departure from the 25% benchmark for a reasonable fee award. Here, the Court finds that the litigation lasted more than two years, obtained substantial success, and involved complicated factual and legal issues. *See id.*

### 2.    Lodestar

Under the lodestar approach, a court calculates the "lodestar figure" by multiplying the

Case No.: 23-cv-03518-EJD
ORDER GRANTING MOT. FOR FINAL SETTLEMENT APPROVAL; GRANTING MOT.
FOR ATT'YS FEES, EXPENSES, AND SERVICE AWARDS AS MODIFIED

number of hours reasonably expended on the litigation by a reasonable hourly rate. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). A reasonable hourly rate is typically the prevailing market rate in the relevant community. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). The lodestar method serves a cross-check of the percentage-of-recovery method; where lawyers' investment of time in the litigation is minimal, the lodestar calculation may "convince a court that a lower percentage is reasonable." *Vizcaino*, 290 F.3d at 1050. On the other hand, when lawyers invest significant amounts of time in protracted litigation, the lodestar may suggest that a higher percentage is reasonable. *Id.*

Here, Class Counsel calculates a lodestar figure of $1,040,810 for 1,582.10 hours of time worked. The requested 25% of the settlement ($1,812,500) reflects a multiplier of approximately 1.75x on the lodestar. Among the counsel and staff that worked on this matter, the blended average hourly rate is $658.

The Court finds that the number of hours attributed to this case are reasonable considering the efforts required to engage in the settlement process. For example, Lead Counsel spent 433.50 hours investigating, litigating, and ultimately reaching settlement in the case. The Court also finds that the blended rate of $658 is within the acceptable range of attorneys' fees in this district. *See, e.g.*, *Elder v. Hilton Worldwide Holdings, Inc.*, No. 16-cv-00278-JST, 2021 WL 4785936, at *9 (N.D. Cal. Feb. 4, 2021) (approving a $673 blended rate).

Finally, the Court finds that the requested fee of 25%, representing a multiplier of approximately 1.75 times Class Counsel's lodestar, is within the range of lodestar multipliers courts in this Circuit regularly approve. *See In re Capacitors Antitrust Litig.*, 3:14-cv-03264-JD, 2017 WL 9613950, at *6 (N.D. Cal. June 27, 2017) ("In the Ninth Circuit, a lodestar multiplier of around 4 times has frequently been awarded in common fund cases such as this."). The lodestar cross-check thus confirms that Counsel's $1,812,500 fee request is reasonable and should be awarded as requested.

Case No.: 23-cv-03518-EJD
ORDER GRANTING MOT. FOR FINAL SETTLEMENT APPROVAL; GRANTING MOT.
FOR ATT'YS FEES, EXPENSES, AND SERVICE AWARDS AS MODIFIED

United States District Court
Northern District of California

**B.    Expenses**

Class Counsel also requests repayment of litigation expenses in the amount of $72,819.51 from the Settlement Fund.  These expenses are associated with experts, investigators, mediation costs, economy-class travel, and legal and factual research, among other things.  "It is appropriate to reimburse attorneys prosecuting class claims on a contingent basis for 'reasonable expenses that would typically be billed to paying clients in non-contingency matters,' *i.e.*, costs 'incidental and necessary to the effective representation of the Class.'" *In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *6 (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) and *Omnivision Techs.*, 559 F. Supp. 2d at 1048).  Reasonable litigation costs include those for document production, experts, travel, computer research, and service of process, the same kinds of costs for which Class Counsel seeks reimbursement here.  Class Counsel also provides a chart documenting the expenses in the amount of $72,819.51.  The Court finds that Class Counsel's request is supported by the record and the amount sought is fair, adequate, and reasonable.

**C.    Service Awards**

Lastly, Lead Plaintiff and Additional Named Plaintiff request service awards for their representation of the Class and time spent on the case.  Although the PSLRA prohibits incentive awards, "courts may still award 'reasonable costs and expenses (including lost wages) directly relating to the representation of the class.'"  *In re Lyft, Inc. Sec. Litig.*, No. 19-cv-02690-HSG, 2023 WL 5068504, at *13 (N.D. Cal. Aug. 7, 2023) (quoting 15 U.S.C. § 78u-4(a)(4)).  Payments are "designed to 'compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'" *Fleming v. Impax Lab'ys Inc.*, No. 16-cv-06557-HSG, 2022 WL 2789496, at *10 (N.D. Cal. July 15, 2022) (citing *Rodriguez*, 563 F.3d at 963).  Courts evaluate evidence presented by plaintiffs reflecting the actual costs and expenses incurred directly as a result of the litigation in assessing whether to grant a service award.  *See id.* (citing *In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302, at *5); *see also Hunt*, 2023 WL 7167118, at *6.

Here, Lead Plaintiff Thant requests an award of $10,000 and Additional Named Plaintiff Branden Schenkhuizen requests an award of $5,000.  In his declaration, Mr. Thant states that he spent approximately fifty hours reviewing filings, providing documents, helping Class Counsel to identify false and/or materially misleading statements, and developing theories of liability to support the prosecution of the case since its inception.  Mr. Thant estimates that his professional time is worth approximately $250 per hour and that, although retired, he would have otherwise spent his time managing his personal investments.  Mr. Schenkhuizen also submitted a declaration seeking reimbursement for the time that he dedicated to the prosecution for this action—time that he would otherwise have dedicated to his job as an operations manager for his family-owned machine shop business.  Mr. Schenkhuizen estimates that he spent approximately thirty-five hours reviewing filings, providing documents to Class Counsel, and conferring with Class Counsel regarding mediation and settlement negotiations.  Based on his knowledge and experience, Mr. Schenkhuizen estimates that his professional time is worth approximately $150 per hour, supporting his request for an award of $5,000.

The Court finds that Mr. Schenkhuizen's requested award of $5,000 is reasonable.  The Court also finds that Lead Plaintiff added substantial value to this case, but that his time is more reasonably estimated to be worth $150 per hour.  Accordingly, the Court finds that a service award of $7,500 to Mr. Thant is reasonable to compensate him for his costs and expenses.

## IV.    CONCLUSION

Based on the preceding discussion, the Court finds that the terms of the Settlement Agreement are fair, adequate, and reasonable; that Federal Rule of Civil Procedure 23(e) and the fairness and adequacy factors are satisfied; and that the Settlement Agreement should be approved and implemented.  The Motion for Final Approval is accordingly **GRANTED**.

Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards is also **GRANTED AS MODIFIED**.  Class Counsel is awarded $1,812,500.00 in attorneys' fees and $72,918.50 in litigation expenses.  Lead Plaintiff Thant is granted a service award of $7,500 and

Additional Named Plaintiff Schenkhuizen is granted a service award of $5,000.

Without affecting the finality of this Order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of this Order and the Settlement Agreement.

The parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements within 21 days after the distribution of the settlement funds and payment of attorneys' fees.  The parties' statement shall include information regarding the number of claims SCS found fraudulent as of that date.

The Court sets a compliance deadline on December 17, 2026, on the Court's 9:00 a.m. calendar to verify timely filing of the post-distribution accounting.

**IT IS SO ORDERED.**

Dated: April 23, 2026

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

Case No.: 23-cv-03518-EJD
ORDER GRANTING MOT. FOR FINAL SETTLEMENT APPROVAL; GRANTING MOT.
FOR ATT'YS FEES, EXPENSES, AND SERVICE AWARDS AS MODIFIED
16